# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

WMCV PHASE 3, LLC,      )     Case No.: 2:10-cv-00661-GMN-RJJ
           )
        Plaintiff,     )     **ORDER**
    vs.           )
           )
SHUSHOK & MCCOY, INC., et al.,    )
           )
        Defendants.    )
_____ )

This case arises out of the failure of commercial tenants to pay rent and subsequent fraud by Plaintiff's former collection agency. Pending before the Court are Defendant's Motion to Dismiss or for Summary Judgment (ECF No. 9); Defendants' Motion to Dismiss (ECF No. 11); and Plaintiff's Counter-Motion for Summary Judgment (ECF No. 16). For the reasons given herein, the Court denies Defendant's Motion to Dismiss or for Summary Judgment (ECF No. 9), denies Defendants' Motion to Dismiss (ECF No. 11) in part and grants it in part, with leave to amend in part; and grants Plaintiff's Counter-Motion for Summary Judgment (ECF No. 16) in part and denies it in part.

## II.     FACTS AND PROCEDURAL HISTORY

### A.     The Leases

Plaintiff WMCV Phase 3, LLC ("WMCV") owns a parcel of property located at 455 S. Grand Central Pkwy. in Las Vegas, Nevada that makes up part of the World Market Center Las Vegas. (Compl. ¶¶ 9–10). On August 7, 2006, Plaintiff's predecessor-in-interest entered into a lease agreement ("the Global Accents Lease") with Defendant Global Accents, Inc. for the space designated as C-875, to commence on July 1, 2008. (*Id.* ¶¶ 11–12). The Global Accents Lease was later amended to change the leased space to C-775. (*Id.* ¶ 14). On or about August 1, 2008,

Global Accents failed to pay rent, despite several requests, and it was evicted on or about December 30, 2008, still owing Plaintiff $360,831. (*Id.* ¶¶ 16–19).  On May 21, 2007, Plaintiff entered into a lease agreement ("the Couture Lease") with Defendant Couture International, Inc. ("Couture") for the space designated as C-1164, to commence on July 1, 2008. (*Id.* ¶¶ 21–22). On or about August 1, 2008, Couture failed to pay rent, despite several requests, and it was evicted on or about December 31, 2008, still owing Plaintiff $695,500.32. (*Id.* ¶¶ 24–27). Plaintiff has been unable to lease either C-775 or C-1164 to new tenants. (*Id.* ¶¶ 20, 28).

### B.    The Fraud

In or about 2007, Plaintiff hired Defendant Shushok & McCoy, Inc. ("Shushok") as a commercial collection agent to recover past due amounts from tenants such as Global Accents and Couture. (*Id.* ¶ 29).  However, Shushok had no authority to enter into agreements with tenants on behalf of Plaintiff. (*Id.* ¶ 30).  In March and June of 2009, Plaintiff instructed Shushok to cease collection activities against Global Accents and Couture, respectively. (*Id.* ¶¶ 31–32). On or about June 26, 2009, both Nino Torres (Client Services Manager for Shushok) and Defendant Matthew J. Travis (President and CEO of Shushok) acknowledged in separate electronic writings that Shushok was no longer retained by Plaintiff. (*Id.* ¶¶ 33–34).

In or about July 2009, Defendant Richard Birdwell signed a "Lease Termination and Release Agreement" ("the Couture Release") on behalf of Shushok and falsely represented himself to be "Counsel" for "World Market Center Las Vegas, [Inc.]," purporting to release Couture from its liability under the Couture Lease in exchange for $20,000 to be paid--and which was paid--directly to Shushok. (*Id.* ¶¶ 35–43).  The Couture Release is falsely dated May 21, 2007, the same date Plaintiff and Couture entered into the Couture Lease. (*Id.* ¶ 38).  Birdwell was not Plaintiff's agent or employee of any sort, and neither he nor Shushok were authorized to enter into any agreement on behalf of Plaintiff. (*Id.* ¶¶ 44–46).  Plaintiff discovered the existence of the Couture Release when Couture contacted Plaintiff on or about January 9, 2010 to inform

Plaintiff that it had been released and believed there was no longer any dispute over the Couture Lease. (*Id.* ¶ 49). Defendant Matt Turner, on behalf of Shushok and falsely representing himself as the "Director" of "World Market Center Las Vegas, [Inc.]" entered into a similar "Lease Termination and Release Agreement" ("the Global Accents Release") with Global Accents in exchange for $8200 to be paid--and which was paid--directly to Shushok. (*Id.* ¶¶ 50–55). Turner was not Plaintiff's agent or employee of any sort, and neither he nor Shushok were authorized to enter into any agreement on behalf of Plaintiff. (*Id.* ¶¶ 57–59). Plaintiff has received no part of the funds paid in exchange for these purported releases and believes that Shushok continues to pursue collections from current and past WMCV tenants without authorization. (*Id.* ¶¶ 48, 60–61).

## C.    Procedural History

Plaintiff sued Defendants in state court on thirteen causes of action: (1) Injunctive Relief (Shushok, Travis, Turner, and Birdwell); (2) Intentional Misrepresentation; (3) Civil Conspiracy; (4) RICO Violations Under Nevada Revised Statutes ("NRS") § 207.470; (5) Conversion (Shushok, Travis, Turner, and Birdwell); (6) Intentional Interference with Contractual Relations (Shushok, Travis, Turner, and Birdwell); (7) Breach of Lease (Global Accents); (8) Breach of Lease (Couture); (9) Breach of Implied Covenant of Good Faith and Fair Dealing (Shushok, Global Accents, Couture); (10) Unjust Enrichment; (11) Declaratory Relief; (12) Special Damages, Attorney's Fees and Costs; and (13) Punitive Damages. Defendants removed pursuant to 28 U.S.C. § 1332. Plaintiff is a Delaware limited liability company. (ECF No. 1 ¶ 12). Defendant Shushok is a Texas corporation with its principal place of business in Texas, and Defendants Travis, Turner, and Birdwell are citizens of Texas. (*Id.* ¶¶ 13–16). Defendant Global Accents is a California corporation with its principal place of business in California. (*Id.* ¶ 17). Defendant Couture is a Quebec corporation with its principal place of business in Quebec, Canada. (*Id.* ¶ 18).

Three motions are pending before the Court. First, Global Accents has moved to dismiss or, in the alternative, for summary judgment, based purely on its contention that the Global Accents Release is valid and enforceable. Second, Plaintiff has moved for offensive summary judgment on its claim for declaratory relief, asking the Court to declare that the Global Accents Release is not valid against Plaintiff. Third, Defendants Shushok, Travis, Turner, and Birdwell ("the Texas Defendants") have moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rules 12(b)(6) and 9(b).

### III.    LEGAL STANDARDS

#### A.    Rule 12(b)(2)

Before answering, a defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Removal to federal court does not operate as a waiver of this defense. *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405, 409 (1929). Personal jurisdiction over a nonresident defendant is established where: (1) there is personal jurisdiction under the laws of the state where it is asserted; and (2) the exercise of jurisdiction satisfies due process. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994). Because Nevada's long arm statute by its terms extends personal jurisdiction over defendants to the limits of the state and federal constitutions, *see* Nev. Rev. Stat. § 14.065(1), and because the Nevada Constitution does not appear to impose any restrictions on the exercise of personal jurisdiction beyond those imposed by the Due Process Clause of the Fourteenth Amendment, *see* Nev. Const. art. 1, § 8, cl. 5, the test in Nevada is essentially a one-step test under the Due Process Clause of the Fourteenth Amendment, *see* U.S. Const. amend. XIV § 1.

For a non-resident defendant, the assertion of jurisdiction is constitutionally proper under the Due Process Clause of the Fourteenth Amendment only where there are continuous and systematic contacts with the forum state (general jurisdiction), *Bauman v. DaimlerChrysler Corp.*, 579 F.3d 1088, 1094 (9th Cir. 2009), or when there are sufficient minimal contacts with

the forum state such that the assertion of personal jurisdiction does not offend "traditional notions of fair play and substantial justice" (specific jurisdiction), *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The standard for specific jurisdiction has been restated using different verbiage. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (citing *Int'l Shoe Co.*, 326 U.S. at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (citing *Kulko v. Super. Ct. of Cal.*, 436 U.S. 84, 97–98 (1978))).

The Ninth Circuit has constructed a three-part test from these cases: (1) the defendant must have purposely availed itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim must arise out of that activity; and (3) the exercise of jurisdiction must be reasonable. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990).  The third prong is itself a seven-factor balancing test, under which the district court considers: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) judicial efficiency; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id.*

## B.      Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, a court takes all material allegations as true and construes them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to credit conclusory, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Also, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Finally, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### C.   Rule 9(b)

The misrepresentation element of a fraud claim must be pled with particularity.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988).  "When an entire complaint, or an entire claim within a complaint is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

With respect to claims of conspiracy, "[p]articipation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980).  Nevertheless, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).  "[T]he plaintiffs must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" *Id.* (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).  "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charge so that they can defend against the charge and not just deny

that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

### D.    Rule 56(c)

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

> In determining summary judgment, a court applies a burden-shifting analysis: When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party has failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.

*See Celotex*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## IV.    ANALYSIS

### A.    Global Accents' Motion to Dismiss or for Summary Judgment (ECF No. 9) and Plaintiff's Counter-Motion for Summary Judgment (ECF No. 16): Enforceability of the Global Accents Release

Global Accents argues that Shushok was Plaintiff's agent when it executed the Global Accents Release, making the release valid and enforceable against Plaintiff.  Global Accents argues that even if Shushok's actual authority had been revoked when it signed the release,

Shushok had apparent authority to bind Plaintiff, because Plaintiff had held Shushok out as its

agent and Global Accents had no notice that Shushok's agency had been revoked.  Global

Accents argues that any damages to Plaintiff resulting from Shushok's improper actions are the

result of fraud by Shushok, and that Global Accents cannot be held liable for Shushok's

wrongdoing or Plaintiff's failure to inform Global Accents of Shushok's termination as

Plaintiff's agent.  In response, Plaintiff argues that there is no genuine issue of material fact

about Shushok's lack of actual authority, and that reasonable reliance on apparent authority is a

question of fact under Nevada law.

There is no question of fact as to whether Shushok had actual authority to bind Plaintiff

when it entered into the Global Accents Release: it did not.  Although Plaintiff adduces no

evidence apart from the claim in the unverified Complaint that it terminated Shushok as its agent

before Shushok signed the release, it does provide such evidence in its response to the Texas

Defendants' motion to dismiss.  Electronic communications show that Shushok was terminated

as Plaintiff's agent before it entered into the releases. (*See* ECF No. 20, Ex. 1).

There is, however, a question of fact as to apparent authority.

A party claiming apparent authority of an agent as a basis for contract
formation must prove (1) that he subjectively believed that the agent had authority
to act for the principal and (2) that his subjective belief in the agent's authority
was objectively reasonable.  Apparent authority is, in essence, an application of
equitable estoppel, of which reasonable reliance is a necessary element.  As
previously noted by this court, "the party who claims reliance must not have
closed his eyes to warnings or inconsistent circumstances."  Apparent authority,
including a third party's reasonable reliance on such authority, is a question of
fact.

*Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 261 (Nev. 1997) (citations omitted).

Here, there is a question of fact as to whether it was reasonable for Global Accents to believe

that Shushok had the authority to enter into an agreement on behalf Plaintiff.  This is a material

fact, because without reliance that is reasonable, there can be no finding of apparent authority:

/ / /

> [T]he reliance must have been a reasonable one, consistent with the exercise of reasonable prudence, and the party who claims reliance must not have closed his eyes to warning or inconsistent circumstances.  Authority is not 'apparent' simply because the party claiming has acted upon his conclusions.  It is not 'apparent,' in contemplation of law, simply because it looked so to him.  It is not a situation where one may read while he runs.  It is only where a person of ordinary prudence, conversant with business usages and the nature of the particular business, acting in good faith, and giving heed not only to opposing inferences but also to all restrictions which are brought to his notice, would reasonably rely, that a case is presented within the operation of the rule.  If the inferences against the existence of the authority are just as reasonable as those in favor of it, there can be no reliance within this rule.

*Ellis v.* Nelson, 233 P.2d 1072, 1076 (Nev. 1951) (quoting 1 Meachem on Agency, *Liability by Estoppel* §§ 725–26, at 513 (2d ed.)).  Global Accents claims that Plaintiff had held Shushok out as its agent in the past.  Plaintiff does not deny this.  But there remains a question of fact regarding apparent authority.  Neither party has adduced evidence sufficient to meet its respective initial burden to demonstrate a lack of a genuine issue of material fact as to the reasonableness of Global Accents' reliance on Shushok's apparent authority.

Plaintiff also argues that an examination of the Global Accents Release attached to Global Accents' own motion, (*see* ECF No. 9, Ex. 1), reveals that Plaintiff is not a party to that release, so the Court should grant Plaintiff summary judgment on its declaratory relief claim that the release is not enforceable for that reason alone.  However, Plaintiff will not prevail on this argument.  Granted, the party identified on the Global Accents Release is "World Market Center Las Vegas, a [Nevada corporation] ('Landlord')," and not WMCV Phase 3, LLC, (*see id.*, Ex. 1, at 2), and, granted, the signatory on behalf of this corporation, "Matt Turner,"[1] signed as "Director" of the corporation, not as an "agent," which is suspect, but it is still possible that Global Accents reasonably believed that this was Plaintiff's formal corporate name and that

---

[1] It is possible that this signature, the surname of which is not entirely legible even where printed below the signature, is that of Matthew Travis, CEO of Shushok.  The name is not typed anywhere on the release.  Defendants appear to admit that Turner and Travis are different persons, however, and that they are both Texas residents. (*See* ECF No. 1 ¶¶ 14–15).

Turner was a director of the corporation.  Because there is no evidence in the record bearing on the reasonableness of such a belief, such as the circumstances or communications surrounding the negotiations, the Court finds that there is a question of fact as to whether the release bound Plaintiff.  Thus, the Court denies Global Accents' motion to dismiss or for summary judgment, and grants Plaintiff's motion in part, finding that Shushok had no actual authority to enter into the Global Accents Release, but denies the motion in part because a question of fact remains as to Shushok's apparent authority.

### B.    The Texas Defendants' Motion to Dismiss (ECF No. 11)

#### 1.    Personal Jurisdiction over the Texas Defendants

The Texas Defendants argue that, in this case, there is no personal jurisdiction over them in Nevada, either generally or specifically, and move to dismiss under Rule 12(b)(2).

##### a.    General Jurisdiction

There is no general jurisdiction over the Texas Defendants in Nevada because these Defendants have no continuous and systematic contacts with Nevada. *See Bauman*, 579 F.3d at 1094.  Travis attests that Shushok has no offices, employees, bank accounts, property, agent for service, or telephone listings in Nevada; is not registered to do business in Nevada; and has never directed any advertising, products, or services to Nevada. (ECF No. 11, Ex. B, at ¶¶ 15–23).  Travis himself has no employment, residence, property, licenses, bank accounts, or business relations in Nevada, and has only been to Nevada one time, for vacation. (*Id.*, Ex. B, at ¶¶ 5–11).  To his knowledge, no Shushok employee or agent travelled to Nevada or engaged in any collection activities in Nevada concerning the present matter. (*Id.*, Ex. B, at ¶ 25).  Turner and Birdwell attest similarly to their own lack of contacts with Nevada. (*See id.*, Exs. C–D).  Plaintiff responds with no evidence indicating continuous and systematic contacts.  The Court therefore finds that there is no general jurisdiction over the Texas Defendants in Nevada.

/ / /

b.      **Specific Jurisdiction**

This case arises out of the collection activities of the Texas Defendants against Global Accents and Couture on behalf of Plaintiff and the alleged fraud perpetrated against Plaintiff by the Texas Defendants.  The Ninth Circuit uses a three-part test to determine the constitutionality of asserting specific jurisdiction: (1) the defendant must have purposely availed itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim must arise out of that activity; and (3) the exercise of jurisdiction must be reasonable.  *Shute*, 897 F.2d at 381.  The first prong of the test does not require physical presence in the forum.  Although an act within the forum can be sufficient, it is not necessary:  "The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; ***or*** perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995) (quoting *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993)) (emphasis added).  The first disjunctive half of this test can be met by satisfying the "*Calder* effects test" from *Calder v. Jones*, 465 U.S. 783 (1984), under which purposeful availment is satisfied where a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).  As noted, *supra*, the reasonableness test is a seven-factor balancing test, under which the district court considers: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) judicial efficiency; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id.*

Plaintiff has sufficiently alleged an intentional act by the Texas Defendants: the

fraudulent procurement of money in exchange for a fraudulent release from Plaintiff's claims against Global Accents and Couture.  Plaintiff has also sufficiently alleged that the wrongful acts were expressly aimed at Nevada, because the Texas Defendants are "alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Menken*, 503 F.3d at 1059 (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  Finally, Plaintiff has sufficiently alleged that the wrongful acts caused harm that the Texas Defendants knew was likely to be suffered in Nevada.  The Texas Defendants knew that releases would impair the ability of Plaintiff to collect these debts, and that Plaintiff's harm would be felt in Nevada where the subject matter of the underlying contracts is sited and where Plaintiff does business.  Because Plaintiff has satisfied the *Calder* effects test, it has satisfied the first prong of the *Shute* test. *See id.*

Plaintiff has also satisfied the second prong of the *Shute* test, because the harm Plaintiff alleges arose out of the Texas Defendants' activity analyzed under the first prong.  But for the forum-related activity, the harm would not have come about.

Finally, Plaintiff has satisfied the third prong of the *Shute* test.  Here, the Texas Defendants did not go out of their way to interject themselves into Nevada's affairs.  Yet they did accept a Nevada client and are alleged to have engaged in wrongful behavior directed at that client and its interests in Nevada, knowing that the harm would be felt there.  Where the purposeful interjection into the forum state is neither particularly great nor *de minimis*, as here, the factor is neutral. *See id.* at 1060.  Next, the burden on the Texas Defendants of defending in Nevada is not great.  As an employee of Shushok notes, Shushok was "one of Forbes Magazine Top Ten Collection Professionals in 2009." (*See* ECF No. 20, Ex. 1).  Such a corporation will not be significantly burdened by defending in Nevada.  Next, the Texas Defendants do not argue there are conflicts of law between Texas and Nevada, and this Court is capable of sorting out choice-of-law issues and researching the law of Texas if necessary.  Next, the Texas Defendants

argue that Nevada has a minimal interest in adjudicating the dispute because Plaintiff is a Delaware corporation.  However, Nevada has been hit particularly hard by the recent economic recession, in large part due to the collapse of the real estate market.  Nevada in fact has a peculiarly strong interest in adjudicating alleged breaches of contract and fraud affecting commercial real estate located in Nevada.

Neither a Texas nor a Nevada court will be able to adjudicate this matter more efficiently than the other.  Both are capable of efficiently researching the law of the other forum, and the federal courts in Texas and Nevada are equally equipped to handle this litigation.  Although much information regarding the dispute is located in Texas, it can easily be reproduced physically or electronically in a Nevada courtroom via discovery.  The procurement of witnesses living in Texas will be more difficult in Nevada than it would be in Texas, but there are also witnesses who reside in Nevada.  Also, some witnesses reside in California, and these witnesses can more easily travel to Nevada than Texas.  Finally, some witnesses reside in Quebec and will have the same difficulties traveling to either forum.  This factor does not weigh in any party's favor.

Finally, Plaintiff's interest in convenient and effective relief favors Nevada, and the existence of an alternative forum in Texas favors the Texas Defendants.  On balance, then, the Court finds that it is reasonable to require the Texas Defendants to defend in Nevada.  The Court therefore denies the motion to dismiss for lack of personal jurisdiction.

## 2.     Sufficiency of the Complaint

The Texas Defendants also attack the sufficiency of the claims brought against them under Rules 12(b)(6) and 9(b).  They make a broad attack against the fraud, civil conspiracy, RICO, conversion, intentional interference with contractual relations, and unjust enrichment claims, arguing that because these claims are grounded in fraud but are not pled with the requisite particularity under Rule 9(b), they must be dismissed.  *See Vess*, 317 F.3d at 1107.

Although Plaintiff uses the word "fraud" often in the Complaint, these claims are not all grounded in fraud.  As seen in the analysis immediately below, the fraud claim itself fails under Rule 12(b)(6).  Plaintiff has alleged fraud as one theory, but it has pled other theories, as well, and neither the Complaint as a whole nor the other separate causes of action therein necessarily rely on a theory of fraud, except the RICO claim.  The Court will thus only hold Plaintiff to the heightened pleading standards of Rule 9(b) for the fraud and RICO causes of action.

### a.    Intentional Misrepresentation (Fraud)

The elements of intentional misrepresentation (common law fraud) in Nevada must be proven by clear and convincing evidence:

1. A false representation made by the defendant;

2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);

3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;

4. Plaintiff's justifiable reliance upon the misrepresentation; and

5. Damage to the plaintiff resulting from such reliance.

*Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992) (citing *Lubbe v. Barba*, 540 P.2d 115, 117 (1975)).  Under Rule 9(b), circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b).  This has been construed to require a plaintiff to "state precisely the time, place and nature of the misleading statements, misrepresentations and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994).  A plaintiff must plead facts such as "he bought a house from defendant, that the defendant assured him that it was in perfect shape, and that in fact the house turned out to be built on a landfill . . . ." *Warshaw v. Xoma Corp.*, 74 F.3d 955, 960 (9th Cir 1996) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).  The plaintiff must also "set forth an explanation as to why the

1  statement or omission complained of was false and misleading." *In re GlenFed Sec. Litig.*, 42

2  F.3d at 1548.

3         The Texas Defendants argue that Plaintiffs allege only that Shushok made fraudulent

4  representations (of its continuing agency) to Global Accents and Couture, but that Plaintiff

5  makes no allegations that Shushok made any fraudulent statements to Plaintiff, that Plaintiff

6  relied on such statements, or that Plaintiff was harmed by such statements.  The Texas

7  Defendants are correct.  This cause of action should be dismissed as against the Texas

8  Defendants, as it amounts to little more than the allegation that the Texas Defendants were not

9  Plaintiff's agents and that Global Accents and Couture knew it.  This potentially supports a civil

10  conspiracy claim, but it does not support a fraud claim.

11                     **b.       Civil Conspiracy**

12         "An actionable civil conspiracy is a combination of two or more persons who, by some

13  concerted action, intend to accomplish some unlawful objective for the purpose of harming

14  another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622

15  (Nev. 1983).  The Texas Defendants do not attack this cause of action except to argue that it is

16  grounded in fraud and is not pled with particularity.  The civil conspiracy claim alleges that the

17  Texas Defendants conspired with Global Accents and Couture to deprive Plaintiff of its

18  property--the debt owed to it by Global Accents and Couture--by entering into releases of

19  liability that the Texas Defendants, Global Accents, and Couture all knew Shushok had no

20  authority to enter into on behalf of Plaintiff.  This sufficiently pleads an agreement, an unlawful

21  objective, and damage (the loss of the ability to collect on the debt without litigating these

22  issues).  The Court will not dismiss this cause of action.

23                     **c.       RICO Under NRS § 207.470**

24         The Nevada Supreme Court requires a plaintiff bringing a civil RICO claim under state

25  law to articulate the factual allegations constituting the RICO claim directly under the portion of

the Complaint dedicated to the RICO claim:

> A civil RICO pleading must, in that portion of the pleading which describes the criminal acts that the defendant is charged to have committed, contain a sufficiently "plain, concise and definite" statement of the essential facts such that it would provide a person of ordinary understanding with notice of the charges.

*Hale v. Burkhardt*, 764 P.2d 866, 869–70 (Nev. 1988).  Because civil RICO claims are deemed to be "quasi-criminal" in nature, mere incorporation by reference is not enough. *Id.*  Plaintiff has failed to fulfill this pleading requirement; therefore, the Court will dismiss the RICO claim.  However, because the general allegations contained in the Complaint may well be sufficient to support a plausible RICO claim were they to be alleged directly under the RICO claim, the Court dismisses the RICO claim with leave to amend within thirty days of this order.

### d.    Conversion

"A conversion is defined as a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958). Plaintiff alleges the Texas Defendants converted its personal property (debt owed to Plaintiff by Global Accents and Couture) when it received funds from Global Accents and Couture based on its false representation that it could release those Defendants from the remainder of their debts to Plaintiff.  As the Texas Defendants point out, a cause of action for conversion does not lie against a debtor for refusing to repay his creditor. *See, e.g.*, *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo. 1981).  Although the question is close, the facts in the present case are different.  Plaintiff does not simply recast a breach of contract claim as "conversion" and bring the latter claim against its debtors, Global Accents and Couture, for failure to repay.  Plaintiff and the Texas Defendants are not in the position of debtor and creditor with respect to one another.  Plaintiff accuses the Texas Defendants of wrongfully exerting dominion over specific funds meant for

Plaintiff by wrongfully purporting to release Plaintiff's debtors from further indebtedness, without Plaintiff's knowledge or authority, in exchange for the payment of funds from Global Accents and Couture--funds that were meant for Plaintiff, but over which the Texas Defendants continue to exert wrongful dominion.  The Court finds that the conversion claim is sufficiently pled.

### e.   Intentional Interference with Contractual Relations

To make a prima facie case of intentional interference with contractual relations, a Plaintiff must allege: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).  The Court finds that Plaintiff has sufficiently pled this cause of action against the Texas Defendants.  Plaintiff has alleged the Global Accents Lease and the Couture Lease, the Texas Defendants' knowledge of these leases, acts by the Texas Defendants intended to disrupt this relationship (the entering into of the Global Accents Release and Couture Release on behalf of Plaintiffs, but without authority), disruption of the leases (Global Accents and Couture now allege they have been released from thousands of dollars in liability), and resulting damages (the inability to enforce the leases without litigation).

The Texas Defendants argue that Plaintiff has not alleged that they caused the breach of the contract as required by the fourth element of an intentional interference claim, and that where a contract is breached before the alleged interference, the claim for interference will not lie. *See Paul Steelman Ltd. v. HKS, Inc.*, No. 2:05-cv-01330-BES-RJJ, 2007 WL 295610, at *2 (D. Nev. Jan. 26, 2007).  Relying purely on the requirement of the existence of a contract stated in *Bennett*, the *HKS* court stated:

> A tortious interference claim presupposes the existence of a valid, enforceable contract at the time the alleged disruption of the contract occurs.  Where, as here, the contract has terminated or been breached before the alleged interference occurred, the plaintiff no longer possesses any contractual rights to be violated

and the defendant could not have had knowledge of an existing contract with which it interfered.

*Id.* A valid contract must exist at the time of interference, and the termination of a contract negates its continued existence, but it is incorrect that a party's rights under a contract evaporate upon breach. On the contrary, the right to sue upon a contract typically *requires* a breach (or anticipatory repudiation). In *HKS*, the contract alleged to have been interfered with had been properly terminated under its own terms prior to the alleged interference, and neither party disputed this. *See id.* at *1. There was nothing left to breach in that case. In the present case, however, even after the alleged breaches by Global Accents and Couture, the respective contracts are alleged to have remained in force--Plaintiff was attempting to collect under the contract without resorting to the courts--but are alleged to have been interfered with by the Texas Defendants via the wrongful procurement of releases for Global Accents and Couture, which documents have made it more difficult for Plaintiff to collect what it is owed under the contracts, whether in or out of court. These allegations can probably satisfy the fourth element of the interference claim. It is worth noting that the third element requires "intentional acts intended or designed to disrupt the *contractual relationship*," *see Bennett*, 71 P.3d at 1267 (emphasis added), not "intentional acts intended or designed to *cause a breach of contract*." Contractual relationships remain in place after a breach, and they can often--perhaps more often than not--be resolved without resorting to the courts, and the contract may then continue in force. The Court thus rules that an allegation of interference with the private resolution of a ripe claim for breach of contract can support a claim for intentional interference with contractual relations. The Court will not dismiss this cause of action.

### f.   Breach of the Implied Covenant of Good Faith and Fair Dealing

There is an implied covenant of good faith and fair dealing inherent in every contract whereby no party is allowed to do anything that will destroy or injure the right of another party

to receive the fruits of the contract. 17A Am. Jur. 2d *Contracts* § 370 (2009).  The Texas

Defendants argue that this cause of action cannot lie against them because they are not alleged to

have any contract with Plaintiff.  Plaintiff does allege that all Defendants entered into "the

above-referenced contracts with [Plaintiff] . . . ." (Compl. ¶ 134).  However, a search of the

preceding paragraphs of the Complaint reveals allegations of only two contracts:  the Global

Accents Lease and the Couture Lease.  Plaintiff alleges it "retained the services of Shushok . . . ."

(*Id.* ¶ 29).  But Plaintiff does not allege the existence of any enforceable contract with Shushok

anywhere in the Complaint.  The Court thus grants the motion to dismiss as to this cause of

action.

### g.   Unjust Enrichment

In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a

benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the

defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances

where it would be inequitable to retain the benefit without payment. *See Leasepartners Corp.,*

*Inc. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (quoting *Unionamerica Mortgage*

*& Equity Trust v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981) (quoting *Dass v. Epplen*, 424

P.2d 779, 780 (Colo. 1967))).  An indirect benefit will support an unjust enrichment claim. *Topaz*

*Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (recognizing an actionable unjust

enrichment claim where there was an indirect benefit conferred upon the defendant).  Unjust

enrichment is an equitable substitute for a contract, and an action for unjust enrichment therefore

cannot lie where there is an express written agreement. *See Leasepartners*, 942 P.2d at 187

(citing *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977); 66 Am. Jur. 2d *Restitution* §§ 6,

11 (1973)).

The Texas Defendants argue that the unjust enrichment claim should be dismissed against

Travis, Turner, and Birdwell, because the allegation that they retained monies due to WMCV is

conclusory.  This factual allegation draws no legal conclusion; however, neither does it support

an unjust enrichment claim.  Plaintiff fails to allege that the Texas Defendants have unjustly

retained any benefit that Plaintiff bestowed upon them, which is the first necessary element of an

unjust enrichment claim. *See id.*  Plaintiff alleges only that the Texas Defendants received a

benefit from their co-Defendants Global Accents and Couture.  For this reason, the Court

dismisses the unjust enrichment claim against the Texas Defendants.

        **h.**      **Injunctive Relief, Declaratory Relief, Special Damages, and Punitive Damages**

The Texas Defendants argue that these are remedies dependent on other causes of action,

not independently supportable causes of action in and of themselves.  They are correct.

However, they do not argue that these measures of relief should be unavailable in this case,

assuming some other causes of action survive the present motions.  The Court, therefore, does

not rule that these remedies are unavailable, but, rather, considers the relevant portions of the

Complaint to be part of Plaintiff's prayer for relief.

**<u>CONCLUSION</u>**

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss or for Summary

Judgment (ECF No. 9) is DENIED, as there is a question of fact as to whether Shushok had

apparent authority to enter into the Global Accents Release.

IT IS FURTHER ORDERED that Plaintiff's Counter-Motion for Summary Judgment

(ECF No. 16) is GRANTED in part and DENIED it in part.  Although there is a question of fact

as to whether Shushok had apparent authority to enter into the Global Accents Release, there is

no question that Shushok did not have actual authority to enter into the release.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (ECF No. 11) is

GRANTED in part and DENIED it in part.  This Court has personal jurisdiction over the Texas

Defendants, but the causes of action for intentional misrepresentation, RICO, breach

of the implied covenant of good faith and fair dealing, and unjust enrichment are dismissed as

against the Texas Defendants, with leave to amend within thirty days as to the RICO claim.

DATED this 5th day of October, 2010.

_____
Gloria M. Navarro
United States District Judge