MICHAEL B. LEE, ESQ.
Nevada State Bar No. 10122
MICHAEL B. LEE, P.C.
2000 S. Eastern Avenue
Las Vegas, Nevada 89104
Telephone:    (702) 477.7030
Facsimile:    (702) 477.0096
Attorneys for Defendant Global Accents

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| PLAINTIFF, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SHUSHOK & MCCOY, INC., a Texas corporation; MATTHEW J. TRAVIS, an individual; MATT TURNER, an individual; RICHARD BIRDWELL, an individual; GLOBAL ACCENTS, INC., a California corporation; COUTURE INTERNATIONAL, INC., a Quebec corporation; DOES I through X, inclusive; ROE ENTITIES I through X, inclusive,<br><br>Defendants. | Case No.:     2:10-cv-00661-RCJ-RJJ<br><br><u>**DEFENDANT GLOBAL ACCENTS, INC.'**<br>**TRIAL BRIEF**</u> |

Defendant Global Accents, Inc. ("Global Accents"), by and through its counsel of record at the law firm of MICHAEL B. LEE, P.C., hereby files this Trial Brief ("Brief") in the above matter.  Presently before this Honorable Court is Plaintiff's WMCV PHASE 3, LLC. ("Plaintiff" or "WMCV") action against Global Accents, SHUSHOK & MCCOY, INC. ("Shushok"), MATTHEW J. TRAVIS ("Travis"), MATT TURNER ("Turner"),[1] RICHARD BIRDWELL ("Birdwell") ("Shushok," "Travis," and "Birdwell" are collectively referred to as "Shushok Defendants"), and COUTURE INTERNATIONAL, INC. ("Couture").

////

////

_____

[1]       Mr. Travis filed a petition for Chapter 13 bankruptcy in Texas; therefore, this action is not proceeding against Turner.

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1                                          **PRELIMINARY STATEMENT**

2              Plaintiff filed an action against Defendants alleging some joint and some individual

3    claims against each.  Plaintiff retained Shushok as a commercial collection agent to collect debts

4    owed by defaulting tenants who leased space from it.  This retention included collecting debts

5    from Global Accents and Couture.  Shushok's collection methods would involve drafting and

6    negotiating lease termination and release agreements.  Plaintiff would review these agreements,

7    request edits, and finalize when it was satisfied with the language/format.  As to Global Accents,

8    Plaintiff directed Shushok to commence collection actions on or about January/February 2009.

9    Thereafter, Shoshok began negotiating with Parham Partielli aka Danny Partielli ("Partielli")

10   regarding settlement of the Global Accents lease dispute.  Sometime in June/July 2009, Plaintiff

11   terminated Shushok as its commercial collection agent.  However, neither Plaintiff nor Shushok

12   informed Global Accents of this termination, and Shushok continued with its collection efforts.

13   Sometime in July/August 2009, Shushok reached a lease termination and release agreement with

14   Global Accents ("Global Accents Release").  Global Accents funded the Global Accents Release

15   by paying consideration of $8,200.00 as called for in the agreement.  However, Plaintiff denies

16   that Shushok had either actual or apparent authority to do so, and seeks to prosecute claims for

17   breach of lease and other related claims against Global Accents, with additional claims for fraud

18   and civil conspiracy as to all Defendants.

19                                      **STATEMENT OF THE FACTS**

20             Some of the following facts are taken from the Pre-Trial Order (EFC No. 138) that were

21   agreed to by the Parties.  The uncited facts are facts that Global Accents will prove at the time of

22   trial.  Plaintiff owns real property located at 455 S. Grand Central Parkway in Las Vegas,

23   Nevada (the "Property").  ECF No. 138 at p. 4 ¶ 1.  On August 7, 2006, Plaintiff's predecessor-

24   in-interest, WMC I Associates, LLC, as landlord, entered into a lease agreement ("the Global

25   Accents Lease") with Global Accents as tenant, for space known as C-875 in the Property to

26   commence on July 1, 2008.  *Id.* at p. 4 ¶ 2.  On or about December 21, 2006, WMC I Associates,

27   LLC assigned the Global Accents Lease to Plaintiff.  *Id.* at p. 4 ¶ 3.

28   / / / /

**MICHAEL B. LEE, P.C.**
2000 So. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1      On April 2, 2007, Global Accents, as tenant, and Plaintiff, as landlord, executed the First

2 Amendment to the Global Accents Lease (the Global Accents Lease collectively with the First

3 Amendment shall be hereinafter referred to as the "Amended Global Accents Lease"), which

4 changed the space Global Accents leased from the 8th floor in space C-875 of the Property to the

5 7th floor in space C-775 of the Property (the "Global Accents Premises"). *Id.* at p. 5 ¶ 4. On or

6 about August 1, 2008, Global Accents failed to pay rent, despite several requests; Plaintiff

7 evicted Global Accents on or about December 30, 2008. *Id.* at p. 5 ¶ 5. The total remaining

8 value of the Global Accents Lease at the time of Global Accents' eviction was $360,831.00;

9 since evicting Global Accents, Plaintiff has been unable to re-lease the Global Accents Premises.

10 *Id.* at p. 5 ¶ 6.

11      In or about 2007, Plaintiff hired Shushok as a commercial collection agent for the

12 purpose of recovering past due amounts from tenants such as Global Accents and Couture. *Id.* at

13 p. 5 ¶ 10. Plaintiff held out Shushok as its collection agent to Global Accents, informing it that it

14 would need to resolve the Global Accents Lease issues with Shoshok. However, Shushok had no

15 actual authority to enter into agreements with tenants on behalf of Plaintiff. *Id.* Nevertheless,

16 Plaintiff held out Shushok to Global Accents as having authority to negotiate on its behalf. As

17 early as November, 2007, Plaintiff had actual knowledge that Shushok was negotiating lease

18 termination agreements on behalf of Plaintiff. This included authority to negotiate the terms of

19 the work out and release the delinquent tenant from liability. Jack Kashani ("Kashani") entered

20 into a "lease workout agreement" on behalf of WMCV Phase 2, LLC. for a debt owed by CSC

21 Enterprises, Corp. ("CSC Agreement"). As it pertains to this agreement, Shushok negotiated the

22 terms of the lease workout agreement and prepared the language of the agreement with the actual

23 knowledge of Plaintiff. The CSC Agreement was the prototypical work out agreement for lease

24 disputes negotiated by Shushok on behalf of Plaintiff.

25      Sometime in mid-November, 2008, Jonathan Leleu, Esq. ("Leleu"), Plaintiff's in house

26 counsel, reviewed a lease termination and release agreement between World Market Center Las

27 Vegas and Bluefish Home, LLC f/k/a Bluefish Trading, LLC. ("Bluefish Agreement") that

28 Shushok prepared. Mr. Leleu reviewed the agreement and revised it by changing "World Market

**MICHAEL B. LEE, P.C.**
2000 So. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1    Center Las Vegas" to "WMC I Associates, LLC" along with additional minor alterations.

2    Thereafter, he approved the agreement. The Bluefish Agreement followed the prototypical

3    format of the CSC Agreement.

4          Similarly, around late March, 2009, Mr. Leleu reviewed a lease termination and release

5    agreement between "World Market Center Las Vegas" and Yalu's Corporation ("Yalu's

6    Agreement") that Shushok prepared. After making an interlineated change by replacing "World

7    Market Center Las Vegas" with "WMCV," Robert Maricich signed it on behalf of Plaintiff.

8    Thereafter, Mr. Leleu transmitted it back to Esmeralda Dominguez ("Dominguez"), Plaintiff's

9    then-collections manage, who in turn, transmitted it to Shushok. The Yalu's Agreement

10   followed the prototypical format of the CSC Agreement and Bluefish Agreement. ("Yalu's

11   Agreement," "CSC Agreement," and "Bluefish Agreement" are collectively referred to as

12   "Prototypical Agreements").

13         As early as November, 2008, Shushok would engage in negotiations with tenants and

14   tenants' counsel for settlement amounts and release agreements. Plaintiff was acutely aware of

15   these types of negotiations, having been copied on negotiation communications. Plaintiff, by

16   way of Ms. Dominguez and Mr. Leleu would review the negotiations and comment on the terms.

17         In early 2009, Plaintiff assigned the collection of the Global Accents debt to Shushok.

18   Shushok would provide reports to Plaintiff regarding the status of these collection efforts. The

19   purpose of the collection efforts was to reach a work out agreement similar to the Prototypical

20   Agreements. Sometime in February, 2009, Mr. Birdwell, an employee of Shushok, contacted

21   Mr. Partielli regarding settlement of the Global Accents lease dispute. Mr. Birdwell represented

22   to Mr. Partielli that Plaintiff retained Shushok to resolve all disputes arising out of the lease with

23   full power and authority in this request. Mr. Partielli indicated that he had an issue with the

24   square footage specified in the lease. Mr. Birdwell referred Mr. Partielli to Ms. Dominguez

25   regarding the measurements. Thereafter, Mr. Partielli contacted Ms. Dominguez, but she

26   referred him back to Shushok to resolve the lease dispute. Based on that conversation, Mr.

27   Partielli understood that Shushok had complete authority on behalf of Plaintiff to negotiate the

28   lease dispute.

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1    On June 25, 2009, Plaintiff terminated Shushok's authority to conduct commercial

2    collections and recover past due debt and rent from tenants of the Property.  *Id.* at p. 5 ¶ 11.

3    Notably, Plaintiff did not notify Global Accents of the termination.  *Id.* at p. 7 ¶ 20.  After June

4    25, 2009, Shushok did not have actual authority to conduct commercial collections for Plaintiff

5    and recover past due debt and rent from tenants of the Property, including Global Accents.  *Id.*

6    Once again, this was never communicated to Global Accents.  *Id.*  Global Accents did not learn

7    from Plaintiff that it had terminated Shushok until after they already executed and funded their

8    respective releases with Shushok.  *Id.*

9    Sometime in late July, early August, 2009, Mr. Partielli received an offer to resolve the

10   Global Accents Lease dispute for $8,200.00.  He contacted Mr. Kashani, a family friend of Mr.

11   Partielli's, regarding the negotiation.  Mr. Kashani informed him that it was a good deal since

12   Plaintiff generally pursued all claims in full.  Once Mr. Partielli resolved the dispute, Mr.

13   Kashani informed him that he would put him in contact with a leasing agent to obtain new space.

14   Once again, Mr. Partielli understood that Shushok had complete authority to enter into and

15   negotiate a lease termination and release agreement on behalf of Plaintiff.  Although this was

16   after the termination of Shushok, neither Plaintiff nor Shushok ever informed Global Accents

17   that Plaintiff had terminated it.

18   On August 26, 2009, Mr. Partielli on behalf of Global Accents signed a Lease

19   Termination and Release Agreement ("Global Accents Release") which: (1) Global Accents

20   received from Shushok; (2) Mr. Turner, a principal and collection agent for Shushok, purportedly

21   signed on August 20, 2009 on behalf of Shushok, falsely representing himself to be "Director"

22   for "World Market Center Las Vegas, [Inc.], a [Nevada Corporation]"; and (3) Shushok

23   purported would release Global Accents from its liability under the Amended Global Accents

24   Lease in exchange for $8,200 to be paid directly to Shushok.  *Id.* at p. 6 ¶ 16.  Global Accents

25   paid $8,200 directly to Shushok after Global Accents executed the Global Accents Release.  *Id.*

26   at p. 6 ¶ 17.

27   / / / /

28   / / / /

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1.     The terms of the Global Accents Release specified that:

> 2. Termination of Lease. As of the Termination Date [August 7, 2011]. All parties to the Lease are fully and unconditionally released and discharged ((except as otherwise set out in this Agreement) from their respective obligations to perform each of the terms, covenants, and conditions set in the Lease and arising after the Termination Date.

> 5. Mutual Release . . . Landlord and Tenant hereby release and forever discharge each other, and their respective partners, officers, directors, agents, trustees, beneficiaries, and employees, of and from any and all claims, acts, damages, demands, rights of action, and causes of action which each party ever had, now has, or in the future may have, against the other, arising from, under or in any way connected with the Lease.

> 6. Compromise. . . This Agreement is made entirely as a compromise and for the purpose of terminating the Lease and settling and extinguishing the respective claims, acts, damages, demands, rights of action, or causes of action of the parties hereto, expect as otherwise stated or reserved hereunder.

After finalizing the Global Accents Release, Mr. Partielli contacted Plaintiff regarding leasing new space. However, Plaintiff informed him Shushok did not have authority to enter into it. This was the first time that Global Accents received notice that Shushok did not have authority to enter into negotiations for the Global Accents Release.

**STATEMENT OF THE CLAIMS**

Plaintiff filed the following claims against the Shushok Defendants: injunctive relief; civil conspiracy; civil RICO (against Shushok only); conversion; intentional interference with contracts; declaratory relief; special damages for attorney fees; and punitive damages. Default has previously been entered against the Shushok Defendants for various reasons.

Plaintiff filed the following claims against Global Accents: fraud; civil conspiracy; breach of lease; breach of implied covenant of good faith and fair dealing; unjust enrichment; declaratory relief; special damages for attorney fees; and punitive damages.

Global Accents filed the following counterclaims against Plaintiff: breach of contract; breach of the covenant of good faith and fair dealing; deceptive trade practices NRS 598.0915; and declaratory relief.

/ / / /

1      Global Accents filed the following crossclaims against the Shushok Defendants: implied

2   indemnity; equitable indemnity; apportionment; equitable estoppel; deceptive trade practices

3   NRS 598.0915; fraud; fraudulent misrepresentation; intentional misrepresentation; negligent

4   misrepresentation; and unjust enrichment.

5                                          **ARGUMENTS**

6        **A.      Plaintiff is Bound by the Global Release Agreement**

7      A principal is bound by the acts of its agent while acting in the course of his or her

8   employment, and a principal is liable for those acts within the scope of the agent's authority.

9   *Nevada Nat'l Bank v. Gold Star Meat Co.*, 89 Nev. 427, 429, 514 P.2d 651, 653 (1973).   An

10   agent's authority may be express, implied, or apparent.   *Dixon v. Thatcher*, 103 Nev. 414, 417,

11   742 P.2d 1029, 1031 (1987).   In Nevada, "apparent authority" is that authority which a principal

12   holds its agent out as possessing, or permits the agent to exercise or to represent him- or herself

13   as possessing, under such circumstances as to estop the principal from denying its existence.

14   *Dixon*, 103 Nev. at 417, 742 P.2d at 1031; *Myers v. Jones*, 99 Nev. 91, 93, 657 P.2d 1163, 1164

15   (1983); *Gold Star Meat*, 89 Nev. at 429, 514 P.2d at 653.

16      A principal may be bound by acts of its agent as to third parties who have no reason to

17   know of the agent's improper conduct even when the agent acts for his own motives and without

18   benefit to the principal.   *Homes Savings Assoc. v. General Electric Credit Corp.*, 101 Nev. 595,

19   600, 708 P.2d 280, 283 (1985).   In general, an agency relationship ends by: (1) agent's death; (2)

20   principal's death, cessation of existence, or suspension of power; (3) principal's loss of capacity;

21   (4) the conclusion of an agreement between the principal and agent where the agent should no

22   longer reasonably conclude that the principal would assent to the agent's taking action of the

23   principal's behalf; (5) a manifestation of revocation or a renunciation; or (6) the occurrence of a

24   circumstance described by statute.   Restatement (Third) of Agency § 3.06(1)-(6).   However, even

25   after a principal terminates an agent's actual authority, it does not end the apparent authority held

26   by the agent.   *Id.* at § 3.11(1).   The apparent authority only ends when "it is no longer reasonable

27   for the third party with whom an agent deals to believe that the agent continues to act with actual

28   authority."   *Id.* at § 3.11(2).   Otherwise, "[a]pparent authority protects third parties who interact

**MICHAEL B. LEE, P.C.**
2000 So. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

Page 7 of 20

1   with an agent on the basis of the principal's prior manifestation and who lack notice that the

2   agent's actual authority has terminated." *Id*. at § 3.11, comment c.

3   " '[A]n agency exists although the parties did not call it agency and did not intend the

4   legal consequences of the relation to follow.' " *Shaw v. Delta Airlines, Inc.*, 798 F.Supp. 1453,

5   1457 n.4 (D.Nev. 1992) (quoting *RHO Co., Inc. v. Dep't of Revenue*, 113 Wash.2d 561, 782 P.2d

6   986, 991 (1989) [quoting Restatement (Second) of Agency § 1, comment b]).  Even in the cases

7   where a party attempts to limit an agency relationship through a contract, a factual inquiry is still

8   necessary to determine if a principal-agent relationship existed.  *Id.*  " 'In this regard, agency is a

9   legal concept that depends on the manifest conduct of the parties; it 'does not depend upon the

10  intent of the parties to create it, nor their belief that they have done so . . . .' " *Id.* at 1457 n.4

11  (quoting Restatement (Second) of Agency § 1, comment b).

12  Here, Plaintiff retained Shushok to act as its commercial collection agent for the purposes

13  of recovering past due debt and rent from tenants that included the Global Accents account.  The

14  scope of this authority included negotiating lease termination agreements and other issues

15  beyond the scope of a normal collections agent.  Plaintiff held out Shushok as its commercial

16  collections agent to Global Accents on several occasions: Ms. Dominguez referred Mr. Partielli

17  to communicate with Shushok regarding negotiate of the lease dispute and Mr. Kashani

18  affirming that the $8,200 settlement offer was a good deal.  Furthermore, Shushok also

19  communicated to Global Accents that it was Plaintiff's commercial collection agent with full

20  power to negotiate lease disputes.  As such, Shushok was cloaked in apparent authority to

21  negotiate on behalf of Plaintiff with authority to negotiate work out agreements.

22  While Plaintiff alleged that it later rescinded Shushok's authority, this was nearly two

23  months after Shushok first began negotiating the Global Release with Global Accents.  Notably,

24  neither Plaintiff nor Shushok ever communicated to Global Accents that Shushok no longer had

25  authority to negotiate the Global Release on Plaintiff's behalf.  As such, Global Accents is

26  entitled to the negotiations it agreed to with Shushok, the apparent agent of Plaintiff.

27  Plaintiff is bound by the acts of Shushok, since the negotiation of the Global Release

28  occurred while the Shushok Defendants were acting in the course of their employment and

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1    within the scope of their authority. *Nevada Nat'l Bank v. Gold Star Meat Co.*, 89 Nev. 427, 429,

2    514 P.2d 651, 653 (1973). While Plaintiff denies that Shushok had express authority, no dispute

3    exists that Shushok had Plaintiff's apparent and/or implied authority. *Dixon v. Thatcher*, 103

4    Nev. 414, 417, 742 P.2d 1029, 1031 (1987). Plaintiff admitted that it held out Shushok to act as

5    its commercial collection agent for the purposes of recovering past due debt and rent from

6    Global Accents. As such, Plaintiff is legally estopped from denying the existence of an agency

7    relationship. *Dixon*, 103 Nev. at 417, 742 P.2d at 1031; *Myers v. Jones*, 99 Nev. 91, 93, 657

8    P.2d 1163, 1164 (1983); *Gold Star Meat*, 89 Nev. at 429, 514 P.2d at 653.

9        The allegation that Shushok did not have Plaintiff's actual authority is irrelevant. A

10   principal may be bound by acts of its agent as to third parties who have no reason to know of the

11   agent's improper conduct even when the agent acts for his own motives and without benefit to

12   the principal. *Homes Savings Assoc. v. General Electric Credit Corp.*, 101 Nev. 595, 600, 708

13   P.2d 280, 283 (1985). Plaintiff never communicated at any time to Global Accents that Shushok

14   no longer had authority to act on its behalf. Similarly, Shushok never communicated to Global

15   Accents that it no longer had authority to act on Plaintiff's behalf. Thus, as a matter of law,

16   Shushok had Plaintiff's apparent authority to bind Plaintiff to the Global Accents Release.

17       Plaintiff cannot prevail on an action for breach of lease nor breach of implied covenant of

18   good faith and fair dealing as it is bound by the Global Accents Release. The Global Accents

19   Release, under paragraphs 2, 5, and 6 explicitly released any and all claims under the Global

20   Accents Lease and/or the Amended Global Accents Lease. As such, Plaintiff, by way of the

21   apparent authority of Shushok, released any claims for breach of lease and breach of implied

22   covenant of good faith and fair dealing.

23       Furthermore, Plaintiff cannot maintain an action for unjust enrichment. Unjust

24   enrichment occurs whenever a person has and retains a benefit which in equity and good

25   conscious belongs to another. *Mainor v. Nault*, 120 Nev. 750, 763, 101 P.3d 308, 317 (2004).

26   "The doctrine of quantum meruit applies to actions for restitution involving work and labor

27   performed which is formed on oral promises on the part of the defendant to pay the plaintiff as

28   much as the plaintiff reasonably deserves for his labor in absence of an agreed upon amount."

**MICHAEL B. LEE, P.C.**
2000 So. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1  *Sack v. Tomlin*, 110 Nev. 204, 208, 871 P.2d 298, 302 (1994).  " 'The doctrine of unjust

2  enrichment or recovery in quasi contract applies to situations where there is no legal contract but

3  where the person sought to be charged is in possession of money or property which in good

4  conscience and justice he should not retain but should deliver to another [or should pay for].' "

5  *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 113 Nev. 747, 942 P.2d

6  182, 187 (1997) (quoting 66 Am.Jur.2d Restitution § 11 (1973)).  An unjust enrichment claim is

7  "not available when there is an express, written contract, because no agreement can be implied

8  when there is an express agreement." *Id.*

9  　　　　Here, the Global Accents Lease, the Amended Global Accents Lease, and the Global

10  Accents Release are express, written contracts.  As such, unjust enrichment is not available as a

11  claim for Plaintiff.  Therefore, Plaintiff cannot prevail on this claim.

12  　　　　**B.　　No Evidence of Fraud, Civil Conspiracy**

13  　　　　The moving party must prove fraud by clear and convincing evidence as to each of the

14  following elements: (1) a false representation made by the defendant; (2) defendant's knowledge

15  or belief that the representation is false (or insufficient basis for making the representation); (3)

16  defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the

17  misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage

18  to the plaintiff resulting from such reliance.  *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 111,

19  825 P.2d 588, 592 (1992).

20  　　　　Under Nevada law, to establish a civil conspiracy claim, a plaintiff must show (1) the

21  commission of an underlying tort; and (2) an agreement between the defendants to commit that

22  tort. *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 121 Nev. 44, 110 P.3d 30, 51

23  (2005) (per curiam) (stating that "an underlying cause of action for fraud is a necessary predicate

24  to a cause of action for conspiracy to defraud"), *abrogated on other grounds by Buzz Stew, LLC

25  v. City of N. Las Vegas*, —— Nev. ——, 181 P.3d 670, 672 n. 6 (Nev.2008); *GES, Inc. v. Corbitt*,

26  117 Nev. 265, 21 P.3d 11, 15 (2001).  However, Nevada has not stated that it would require each

27  conspirator to owe the duty that forms the predicate for the underlying tort.  Rather, Nevada has

28  indicated that a co-conspirator could be liable in tort where no such duty is owed. *Hilton Hotels*

1    *Corp. v. Butch Lewis Productions, Inc.*, 109 Nev. 1043, 862 P.2d 1207, 1210–11 (1993) ("If

2    Hilton is able to prove that the implied contractual covenant of good faith and fair dealing was

3    breached, the jury will then be free to also determine whether the breach resulted from tortious

4    acts of conspiracy and interference involving the other named defendants.").  "[I]t suffices under

5    Nevada law to allege that Defendants . . . owed a duty to Plaintiffs not to conspire with those

6    who do owe fiduciary duties to Plaintiffs to breach those duties."  *Boorman v. Nevada Memorial*

7    *Cremation Society, Inc.*, --- F.Supp.2d ----, 2011 WL 754950 * 6 (D.Nev. 2011).

8            Here, no clear and convincing evidence illustrates that Global Accents engaged in a civil

9    conspiracy to defraud Plaintiff.  Global Accents engaged in arms-length negotiation with

10   Shushok.  Plaintiff held out Shushok to Global Accents as its authorized agent to negotiate the

11   Global Accents Release.  Furthermore, Mr. Kashani responded to Mr. Partielli's inquiry about

12   the terms of the Global Accents Release as being fair in light of the aggressive nature of

13   Plaintiff's counsel.  In total, there is a lack of any evidence of either a civil conspiracy or the

14   engagement of fraud by Global Accents.  Therefore, Plaintiff cannot prevail on a claim for either.

15
16           **C.      No Award of Special Damages, Attorneys' Fees, or Punitive Damages for Plaintiff**

17           As Plaintiff failed to meet its burden to prove any of its claims, it is not entitled to any

18   damages.

19           **D.      This is a Frivolous Action Against Global Accents**

20           A frivolous claim is one that is "both baseless and made without a reasonable and

21   competent inquiry."  *Bergmann v. Boyce*, 109 Nev. 670, 676, 856 P.2d 560, 564 (1993) (quoting

22   *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990); *Golden Eagle*

23   *Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir.1986)).  A determination of

24   whether a claim is frivolous involves a two-pronged analysis: (1) the court must determine

25   whether the pleading is "well grounded in fact and is warranted by existing law or a good faith

26   argument for the extension, modification or reversal of existing law"; and (2) whether the

27   attorney made a reasonable and competent inquiry.  *Bergmann*, 109 Nev. at 676, 856 P.2d at 564.

28   A sanction imposed for violation of Rule 11 shall be limited to what is sufficient to deter

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1    repetition of such conduct or comparable conduct by others similarly situated.  *Id.* at 11(c)(2).

2         Furthermore, a court may award attorneys' fees to a prevailing party when it finds that

3    the claim was brought or maintained without reasonable ground or to harass the prevailing party.

4    Nev. Rev. Stat. § 18.010(2)(b).   "The court shall liberally construe the provisions of this

5    paragraph in favor of awarding attorney's fees in all appropriate situations." *Id.*

6              "It is the intent of the Legislature that the court award attorney's
              fees pursuant to this paragraph and impose sanctions pursuant to
7             Rule 11 of the Nevada Rules of Civil Procedure in all appropriate
              situations to punish for and deter frivolous or vexatious claims and
8             defenses because such claims and defenses overburden limited
              judicial resources, hinder the timely resolution of meritorious
9             claims and increase the costs of engaging in business and
              providing professional services to the public."

10

11   *Id.* "A claim is groundless if 'the allegations in the complaint . . . are not supported by any

12   credible evidence at trial.'"  *Barozzi v. Benna*, 112 Nev. 635, 639, 918 P.2d 301, 303 (1996)

13   (quoting *Western United Realty, Inc. v. Isaacs*, 679 P.2d 1063, 1069 (Colo.1984)).

14        Further, "'[u]nder the doctrine of judicial estoppel a party may be estopped merely by the

15   fact of having alleged or admitted in his pleadings in a former proceeding the contrary of the

16   assertion sought to be made.'"  *Sterling Builders, Inc. v. Fuhrman*, 80 Nev. 543, 549, 396 P.2d

17   850, 854 (1964) (quoting 31 C.J.S. Estoppel § 121 at 649).   Here, Plaintiff has made the

18   following admissions at one time or another during the course of this litigation:

19
| No. | Statement | Source |
|-----|-----------|--------|
| 1 | "In or about 2007, Plaintiff hired SMI as a commercial collection agent for the purpose of recovering past due amounts from tenants such as Global Accents and Couture." | Pre-Trial Order (EFC No. 138) at p. 5 ¶ 10; |
| 2 | "Global Accents and Couture did not learn from Plaintiff that it had terminated SMI until after they already executed and funded their respective releases with SMI." | Pre-Trial Order (EFC 138) at p. 5 ¶ 10. |
| 3 | "Global Accents paid $8,200 directly to SMI after Global Accents executed the Global Accents Release." | Pre-Trial Order (EFC 138) at p. 6 ¶ 17. |
| 4 | "Of the six elements outlined above needed to support a claim that a person or entity had apparent authority to bind a principle, Global's only satisfies one: Global claims it subjectively believed SM had authority to act on WMCV Phase 3 's behalf." | Pl.'s Opp'n to Global Accents' Mot. For Sum Judg. (EFC No. 90) at 21:11-13 |
| 5 | "During 2007 and 2008, SMI helped negotiate several collections and resolutions of debts.  In each case, WMCV executed the settlement documents and approved any final negotiations and payment.  See [Mot.,] **Exs. C, N and U**." | Rspn. (EFC No. 144) at 3:17-20 |

| 6 | Mot., Exs. C, F-L, M, N, P, Q, R, S and T concern "the negotiation of debt collections and releases with several companies" between Plaintiff and SMI. | Rspn. (EFC 144) at 3:4-5. |
| 7 | Mot., Exs. O, U and Z are "executed settlement agreements with other companies that had negotiated with SMI." | Rspn. (EFC 144) at 3:8-9. |
| 8 | Mot., Exs. D and E are evidence of "branding" of WMCV as "World Market Center Las Vegas" and WMCV's acceptance of checks from vendors on behalf of "World Market Center." | Rspn. (EFC 144) at 3:15-17. |

Plaintiff's admissions during the course of this litigation illustrates that Global Accents is entitled to Summary Judgment as a matter of law. As illustrated in the table above, Plaintiff held out Shushok as its commercial collection agent to collect past due amounts from Global Accents; however, Plaintiff never informed Global Accents that it terminated Shushok before the negotiation of the Global Accents Release. Based on arguments presented in the motion for summary judgment (EFC No. 80), Global Accents had a subjective belief that Shushok had authority to act for Plaintiff. Finally, the Subject Documents illustrate that Plaintiff had actual knowledge that Shushok was binding it to lease termination agreements, which was within the authority of Shushok has Plaintiff's commercial collection agent.

Plaintiff's shifting arguments are disappointing and demonstrate bad faith in continuing this action. First, Plaintiff previously disputed that it ever held out Shushok as its commercial collection agent by asserting, "WMCV Phase 3 never communicated to Global that SM was its agent and never held SM out to Global as its agent." Pl.'s Opp'n to Global Accents' Mot. For Sum Judg. (EFC No. 90) at 21:19-23. However, the Parties stipulated that Plaintiff in fact did hold out Shushok has its commercial collection agent to Global Accents in the pre-trial order. Pre-Trial Order (EFC No. 138) at p. 5 ¶ 10. In that light, Plaintiff is judicially estopped from denying that Shushok was its commercial collection agent for the purposes of collecting the past due amounts from Global Accents.

Furthermore, it is undisputed that Global Accents subjectively believed that Shushok had authority to negotiate the Global Accents Release. Previously, in opposition to Global Accents' motion for summary judgment (EFC No. 80), Plaintiff admitted that "[o]f the six elements outlined above needed to support a claim that a person or entity had apparent authority to bind a principle, Global's (sic) only satisfies one: Global claims it subjectively believed SM had

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1   authority to act on WMCV Phase 3's behalf."  Pl.'s Opp'n to Global Accents' Mot. For Sum

2   Judg. (EFC No. 90) at 21:11-13.  However, the Response to the Motion in Limine (EFC No. 144)

3   denied this prior assertion as it would cripple Plaintiff's case.  *Id.* at 6:1-4.  Similarly, the

4   declarations from the motion for summary judgment (EFC No. 80) showed the basis for the

5   subjective belief.  Mr. Kashani's declaration acknowledged that, on or about July/August 2009,

6   he told Mr. Partielli that he should accept $8,200 resolution as "our attorney was aggressive and

7   often pursued tenants who were evicted for the full value of their lease, and therefore $8,200

8   seemed like a good settlement because he would avoid the risk of paying the full value of the

9   lease."  Rpl'y (EFC No. 145), Ex. C at ¶¶ 4-6.  As such, Plaintiff should be judicially estopped

10  from denying that Global Accents had subjective belief in Shushok's authority to negotiate the

11  Global Accents Release.

12      Moreover, Shushok clearly had authority from Plaintiff to negotiate lease termination

13  agreements like the Global Accents Release.  However, during the briefing on the motion for

14  summary judgment (EFC No. 80), Plaintiff alleged that:

> Ordinary prudence, consistent with the nature of business, and
> good faith required Global to have the Alleged Global Release
> changed to reflect the terms and the meaning which Global wanted
> to have in the Alleged Global Release and to require satisfactory
> assurances that the party signing the Alleged Global Release
> indeed had authority to bind WMCV Phase 3, the party Global
> desired to bind through the Alleged Global Release.

19  Pl.'s Opp'n to Global Accents' Mot. For Sum Judg. (EFC No. 90) at 21:19-23.  Nevertheless, the

20  Response (EFC No. 144) admitted that their documents concerned the prior negotiation of debt

21  collections and prior executed settlement agreements with other companies negotiated by

22  Shushok on behalf of Plaintiff.  Rspn. (EFC No. 144) at 4:2-18.  Thus, it is undisputed that

23  Shushok had authority as collection agent, including the authority to negotiate on Plaintiff's

24  behalf and to represent Plaintiff's interests as it pertained to lease disputes, *see* Ord'r (EFC No.

25  122) at 8:2-14.  As this Honorable Court noted that this was an element of the reasonableness of

26  Global Accents' subjective belief, Plaintiff should be judicially estopped from denying that

27  Shushok's authority as a commercial collection agent included the ability to negotiate and

28  represent Plaintiff as it pertained to lease disputes.

**MICHAEL B. LEE, P.C.**
2000 So. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1          Finally, a critical argument to Plaintiff's case is the distinction between "World Market

2   Center Las Vegas" and WMCV.  In the response to the motion for summary judgment (EFC No.

3   90), Plaintiff contended that "World Market Center" and "WMCV" were distinct material terms.

4   *Id.* at 11:10-11, 13:25-27, 14:17-20, 15:1-3, 15:22-26, 22:10-12, 25:17-28.   However, the

5   Response (EFC No. 144) admitted that Plaintiff brands itself as "World Market Center Las

6   Vegas." Rspn. (EFC No. 144) at 4:2-18.  Therefore, Plaintiff should be judicially estopped from

7   denying that it holds itself out as "World Market Center Las Vegas" and has accepted benefits

8   under the name "World Market Center Las Vegas."

9          In total, judicial estoppel prevents Plaintiff from continuing to shift their bad faith factual

10  representations to fit whatever suits their argument.  Global Accents respectfully requests that

11  this Honorable Court judicially estopped Plaintiff from denying: (1) it held out Shushok as its

12  commercial collection agent to Global Accents; (2) Global Accents subjectively believed that

13  Shushok had authority to negotiate the Global Accents Release on behalf of Plaintiffs; (3) it

14  authorized and accepted prior benefits from similar lease termination agreements pre-dating the

15  Global Accents Release demonstrates the reasonable of Global Accents' subjective belief; and

16  (4) it acceptance of benefits under the name "World Market Center Las Vegas" and holds itself

17  out as such.  Additionally, Global Accents requests that this Court adopt those four areas as

18  undisputed facts for the upcoming trial.  The table above illustrates the statements, and the

19  sources of those statements, that establish the bad faith nature of this action.  Given the judicial

20  estoppel issues and prior prevarications of material facts, sanctions may be warranted pursuant to

21  Nevada law and the Federal Rules of Civil Procedure.

22          **E.      Plaintiff Breached the Global Accents Release**

23          In an action for breach of contract, plaintiff bears the burden to show she was damaged

24  and of proving the extent of those damages.  *Bergstrom v. Estate of DeVoe*, 109 Nev. 575, 578,

25  854 P.2d 860, 862 (1993).  Determining material breaches of contract depends on the nature and

26  effect of the violation in light of how and the particular contract was viewed, bargained for,

27  entered into, and performed by the parties.  *J.A. Jones Const. Co. v. Lehrer McGovern Bovis*,

28  *Inc.*, 120 Nev. 277, n.37 294, 89 P.3d 1009, 1020 (2004).

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1    The common law uses five factors to determine if a material breach has occurred.

2    Restatement (Second) of Contracts § 241 (1981).  These factors include: (1) the extent to which

3    the injured party will be deprived of the benefit which he reasonably expected; (2) the extent to

4    which the injured party can be adequately compensated for that part of the benefit of which he

5    will be deprived; (3) the extent to which the party failing to perform or to offer to perform will

6    suffer forfeiture; (4) the likelihood that the party failing to perform or to offer to perform will

7    cure his failure, taking into account of all the circumstances including any reasonable assurances;

8    and (5) the extent to which the behavior of the party failing to perform or to offer to perform

9    comports with the standards of good faith and fair dealing.  *Id.*

10    Furthermore, liability for breach of the implied covenant of good faith and fair dealings

11    arises "[w]here the terms of a contract are literally complied with but one party to the contract

12    deliberately countervenes the intention and spirit of the contract, that party can incur liability for

13    breach of the implied covenant of good faith and fair dealing."  *Hilton Hotels v. Butch Lewis*

14    *Productions*, 107 Nev. 226, 232, 808 P.2d 919, 922-23 (1991).  In such a situation, the non-

15    breaching party must prove that the other party acted "in a manner that is unfaithful to the

16    purpose of the contract [such that] the justified expectations' of the non-breaching party are

17    denied."  *Id.* at 234, 808 P.2d at 923.  "Whether the controlling party's actions fall outside the

18    reasonable expectations of the dependent party is determined by the various factors and special

19    circumstances that shape these expectations." *Id.* at 234, 808 P.2d 923-24.

20    Here, Plaintiff is in material breach of the Global Accents Release, including breach of

21    the implied covenant of good faith and fair dealing.  The plain language of that agreement

22    specified that Plaintiff unconditionally released and discharged Global Accents from its

23    respective obligations to perform each of the terms, covenants, and conditions set in the Global

24    Accents Lease and Amended Global Accents Lease in consideration for a payment of $8,200.00.

25    By bring a lawsuit for breach of the Global Accents Lease and the Amended Global Accents

26    Lease, Plaintiff materially breached paragraph 2 (Termination of Lease), 5 (Mutual Release), and

27    6 (Compromise).  As such, Global Accents is entitled to the benefits of the Global Accents

28    Release, which precludes the present action by Plaintiff.

1    Additionally, Global Accents is entitled to attorneys' fees and costs pursuant to paragraph

2    9(a) of the Global Accents Release: "If any suit is brought to enforce or interpret the terms of this

3    Agreement or any obligation set out in this Agreement, the prevailing party, either by way of

4    settlement or by final judgment, is entitled to recover its reasonable attorneys' fees, costs, and

5    expenses."  By the plain language of the agreement, Global Accents is entitled to its reasonable,

6    costs, and expenses attorneys' fees accrued as a result of this lawsuit.

7    **F.    Plaintiff is Liable for Deceptive Trade Practices in its Disparagement of
        Global Accents and Breach of the Global Accents Release**

8

9    Chapter 598 of the Nevada Revised Statutes provides the statutory basis for an action

10   involving deceptive trade practices.  If states that a person engages in a "deceptive trade

11   practice" if, in the course of business it: disparages the goods, services or business of another

12   person by false or misleading representation of fact; makes false or misleading statements of fact

13   concerning the sale or lease, or the reasons for, existence of or amounts of price reductions;

14   fraudulently alters any contract written statement of charges or other document in connection

15   with the sale or lease of goods or services; and/or knowingly makes any other false

16   representation in a transaction.  Nev. Rev. Stat. § 598.0915(8),(13),(14),(15).  Deceptive trade

17   practices, as defined under NRS Chapter 598, must only be proven by a preponderance of the

18   evidence. *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010).  As to damages, courts

19   may "require the natural person, firm, or officer or managing agent of the corporation or

20   association to pay to the aggrieved party damages on all profits derived from the knowing and

21   willful engagement in a deceptive trade practice and treble damages on all damages suffered by

22   reason of the deceptive trade practice." *Id.* at § 598.0999(3).

23   Here, Plaintiff disparaged Global Accents in bringing this action in bad faith despite

24   having actual knowledge that Shushok was utilizing lease termination and release agreements as

25   part of its scope of work.  Historically, Mr. Leleu reviewed and approved the use of these work

26   out agreements, and Mr. Kashani would execute them.  Furthermore, Plaintiff held out Shushok

27   as its commercial collection agent to Global Accents for the purpose of resolving the Global

28   Accents Lease dispute.  Despite later terminating Shushok, Plaintiff never informed Global

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1  Accents of this action. Questionably, despite authorizing Shushok to engage in work out

2  negotiations in the past, Plaintiff denied that it knew of this approval during the course of this

3  litigation. Furthermore, Plaintiff also admitted it never informed Global Accents of the Shushok

4  termination. Despite actual knowledge of these facts, Plaintiff continued with this action. This

5  constitutes bad faith. As such, Global Accents is entitled to Plaintiff's profits from the deceptive

6  action along with treble damages. The profits in this matter were the consideration for the

7  Global Accents Release, $8,200.00. The treble award is $24,600.00. The total award is

8  **$32,800.00.**

9  **G.      The Shushok Defendants[2] are Liable to Global Accents**

10  Default was entered against Shushok for failure to have representation by counsel, and

11  Mr. Turner and Mr. Birdwell's Answers were struck for failure to participate in the mandatory

12  settlement conference. As to the Shushok Defendants, Global Accents is entitled to judgment

13  against them for deceptive trade practices, fraud, fraudulent misrepresentation, intentional

14  misrepresentation, and negligent misrepresentation. The fraud involved moral turpitude and

15  intentional wrongdoing. There is a direct nexus between the Shushok Defendants and Global

16  Accents as it relates to reliance in the fraud, and the benefits induced by the Shushok Defendants

17  involved false pretenses, false representations, and actual fraud. As there is an agreement

18  between Global Accents and Shushok, no cause of action lies for unjust enrichment. As Plaintiff

19  did not prevail on its claims against Global Accents, implied indemnity, equitable indemnity,

20  apportionment, and equitable estoppel are moot. Global Accents is entitled to recovery of its

21  reasonable attorneys' fees, costs, and expenses as it relates to this action. Furthermore, it is also

22  entitled to damages of $8,200.00 for the deceptive trade practices, a treble award of $24,600.00.

23  Additionally, Global Accents is entitled to punitive damages for the fraud claims, for a total of

24  $200,000.00. In total, Global Accents is entitled to damages against the Shushok Defendants,

25  joint and severally, in the amount of **$238,000.00**.

26  / / / /

27

28

---
[2]      As noted earlier, Mr. Travis filed a petition for Chapter 13 bankruptcy in Texas, and this action is not proceeding against him.

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

**CONCLUSION**

Based on the foregoing, Global Accents respectfully request judgment as follows:

- Plaintiff takes nothing on the claims for fraud; civil conspiracy; breach of lease; breach of implied covenant of good faith and fair dealing; unjust enrichment; declaratory relief; special damages for attorney fees; and punitive damages as to Global Accents.

- Global Accents is the prevailing party under the Global Accents Release. It is entitled to reasonable attorneys' fees, costs, and expenses related to its defense of this action. Furthermore, it is also entitled to a judgment of **$32,800.00** under Chapter 598 of the Nevada Revised Statutes.

- Global Accents take judgment in the sum of **$238,200.00** against the Shushok Defendants, jointly and severally, for its claims of deceptive trade practices, fraud, fraudulent misrepresentation, intentional misrepresentation, and negligent misrepresentation.

- Global Accents may make a motion for attorneys' fees and demand costs under the Federal Rules of Civil Procedure, the Nevada Revised Statutes, and any other application rule, statute, or contract. Global Accents may seek recovery of these monies individually from Plaintiff. Plaintiff will need to subsequently seek contribution and/or apportionment for any mitigation of the fees for Shushok's portion.

Dated this 8 day of November, 2012.

MICHAEL B. LEE, P.C.


＿＿＿/s/  Michael Lee＿＿＿＿＿＿＿＿＿＿
MICHAEL B. LEE, ESQ. (NSB 10122)
2000 So. Eastern Avenue
Las Vegas, NV 89104
Tel – 702.477.7030
Fax – 702.477.0096
mike@mblnv.com
Attorneys for Defendant Global Accents, Inc.

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

In accordance with Fed. R. Civ. P. 5, I hereby certify that on the 8 day of November, 2012, a copy of the foregoing **DEFENDANT GLOBAL ACCENTS, INC.' TRIAL BRIEF** was served on the parties via CM-ECF filing:

Terry A. Coffing, Esq.
Matthew Cecil, Esq.
Marquis & Aurbach
10001 Park Run Drive
Las Vegas, NV 89145
*Attorneys for Plaintiff*

William Urga, Esq.
Jolley Urga Wirth Woodbury & Sandish
3800 Howard Hughes Pkwy., Suite 1600
Las Vegas, Nevada 89169
*Attorneys for Couture International, Inc*


_____ */s/ Michael B. Lee* _____
An employee of Michael B. Lee, P.C.