1 | **Marquis Aurbach Coffing**
Terry A. Coffing, Esq.
2 | Nevada Bar No. 4949
Jason M. Gerber, Esq.
3 | Nevada Bar No. 9812
Jack F. DeGree, Esq.
4 | Nevada Bar No. 11102
10001 Park Run Drive
5 | Las Vegas, Nevada 89145
Telephone: (702) 382-0711
6 | Facsimile: (702) 382-5816
tcoffing@maclaw.com
7 | jgerber@maclaw.com
jdegree@maclaw.com
8 |   Attorneys for WMCV Phase 3, LLC

9 | **UNITED STATES DISTRICT COURT**

10 | **DISTRICT OF NEVADA**

11 | WMCV PHASE 3, LLC, a Delaware limited
liability company,
12 |                                          Case No.:    2:10-cv-00661-GMN-RJJ

13 |                     Plaintiff,

14 |

15 |        vs.

16 | SHUSHOK & MCCOY, INC., a Texas
corporation; MATTHEW J. TRAVIS, an
17 | individual; MATT TURNER, an individual;
RICHARD BIRDWELL, an individual;
18 | GLOBAL ACCENTS, INC., a California
corporation; COUTURE INTERNATIONAL,
19 | INC., a Quebec corporation; DOES I through X,
inclusive; ROE ENTITIES I through X,
20 | inclusive,

21 |

22 |                    Defendants.

23 | AND RELATED MATTERS

24 | **PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

25 |      This matter having come on for trial before this Court commencing on November 20,

26 | 2012, Terry A. Coffing, Esq., Jason M. Gerber, Esq. and Jack F. DeGree, Esq., of the law firm of

27 | Marquis Aurbach Coffing appearing on behalf of the Plaintiff WMCV Phase 3, LLC

28 | ("WMCV"), Michael B. Lee, Esq. of the law firm of Michael B. Lee, P.C.  appearing on behalf

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

of Defendant Global Accents, Inc. ("GA") and William Urga, Esq. of the law firm of Jolley Urga Wirth Woodbury & Sandish appearing on behalf of Defendant Couture International, Inc. ("Couture"), the Court having conducted a bench trial, reviewed the evidence, pleadings and papers on file herein, being fully advised in the matter, and with good cause appearing therefore, hereby makes the following Findings of Fact, Conclusions of Law, and Order:

## I.       PROCEDURAL HISTORY.

1.       On March 26, 2010, WMCV filed its Complaint in the Eighth Judicial District Court, Clark County, Nevada (Case No. A612860) against Defendants GA, Couture, Shushok & McCoy, Inc. ("SMI"), Matthew J. Travis ("Travis"), Matt Turner ("Turner"), and Richard Birdwell ("Birdwell"), and asserting 13 causes of action: injunctive relief; intentional misrepresentation; civil conspiracy; RICO violations; conversion; intentional interference with contract; breach of lease; breach of the implied covenant of good faith and fair dealing; unjust enrichment; declaratory relief; special damages – attorneys fees and costs; and punitive damages.

2.       On May 6, 2010, the case was removed to federal court and assigned the above-referenced case number.

3.       On May 14, 2010, GA filed a Motion to dismiss or, in the alternative, motion for summary judgment (#9) against WMCV as to the enforceability of a release it had entered into (the "GA Release").

4.       On May 24, 2010, a Motion to dismiss (#11) was filed by SMI, Birdwell, Travis and Turner (collectively the "SMI Defendants") claiming a lack of personal jurisdiction.

5.       On May 28, 2010, WMCV filed its Opposition (#14) to GA's Motion and followed with its own Countermotion for summary judgment (#16) as to the enforceability of the GA Release on the same day.

6.       On June 7, 2010, GA filed its Reply brief (#17) to WMCV's Opposition.

7.       On June 18, 2010, WMCV filed its Opposition (#20) to the SMI Defendants' Motion.

8.       On June 29, 2010, WMCV filed a Reply (#23) in support of its Countermotion for summary judgment.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

9.	On July 6, 2010, the SMI Defendants filed a Reply brief (#24) in support of their jurisdictional Motion to dismiss.

10.	On October 5, 2010, the Court entered an Order (#25) which: (i) denied GA's Motion to dismiss or, in the alternative Motion for summary judgment in finding that there was a genuine issue of material fact as to SMI's apparent authority to enter into the GA Release on behalf of WMCV; (ii) granted WMCV's Countermotion for summary judgment in that there was no genuine issue of material fact that SMI did not have actual authority to act on behalf of WMCV in executing the GA Release; (iii) denied the SMI Defendants' Motion in that there was specific personal jurisdiction over each of them; and (iv) dismissing WMCV's intentional misrepresentation, RICO, breach of the implied covenant of good faith and fair dealing, and unjust enrichment claims as to the SMI Defendants, but granting WMCV leave to amend as to the civil RICO claim.

11.	On November 4, 2010, WMCV filed its First Amended Complaint (#33) which (i) dropped the intentional misrepresentation claim as to the SMI Defendants, (ii) left the civil RICO claim against only SMI, (iii) dropped the implied covenant of good faith and fair dealing claim and unjust enrichment claims against the SMI Defendants, leaving those claims against only GA and Couture, and (iv) left the remaining claims as originally pled.

12.	On November 22, 2010, GA filed its Answer (#35) and added counterclaims against WMCV for breach of contract, breach of the implied covenant of good faith and fair dealing, deceptive trade practices, and declaratory relief, in addition to cross-claims against the SMI Defendants.

13.	On December 2, 2010, the SMI Defendants filed their Answer (#40).

14.	On December 7, 2010, WMCV filed its Answer (#42) to GA's counterclaims.

15.	On January 14, 2011, the SMI Defendants filed their Answer (#48) to GA's cross-claims.

16.	On April 27, 2011, WMCV filed a Motion to strike (#56) the SMI Defendants' answer to counterclaims.

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

17.     On May 6, 2011, Couture filed its Answer (#62) and added cross-claims against the SMI Defendants.

18.     On or about May 19, 2011, Travis filed for bankruptcy and filed a Notice (#66) with this Court, though the Court entered a stay for both Travis and SMI the following day; the stay as to SMI was ultimately lifted on by this Court's Order (#73) on June 1, 2011.

19.     On June 21, 2011, WMCV filed its Answer (#77) to Couture's counterclaims.

20.     On August 15, 2011, GA filed another Motion (#80) for summary judgment seeking to dismiss all of the claims asserted against it by WMCV.

21.     On August 30, 2011, this Court entered a Default (#82) against SMI.

22.     On October 17, 2011, WMCV filed its Opposition (#90) to GA's Motion for summary judgment, and filed its own Countermotion (#95) for summary judgment on the same claims on the same day.

23.     On December 13, 2011, GA filed its Reply (#108) in support of its Motion for summary judgment, and also its Opposition (#110) to WMCV's Counterclaim.

24.     On January 16, 2012, WMCV filed its Reply (#118) in support of its Motion for summary judgment.

25.     On April 4, 2012, the Court entered an Order (#122) denying both summary judgment motions filed by WMCV and GA by concluding that there remained a genuine issue of material fact as to the reasonableness of GA's belief that SMI had the authority to negotiate a release on WMCV's behalf, not just to collect rent.

26.     The Court's Pre-Trial Order (#141) issued on July 26, 2012.

## II.     FINDINGS OF FACT.

1.     WMCV owns real property located at 455 S. Grand Central Parkway in Las Vegas, Nevada (the "Property").

/ / / /

/ / / /

/ / / /

Page 4 of 12

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**THE GA LEASE**

2.    On August 7, 2006, WMCV's predecessor-in-interest, WMCV Phase 3I Associates, LLC, as landlord, entered into a lease agreement (the "GA Lease") with Defendant GA, as tenant, for space known as C-875 in the Property to commence on July 1, 2008.

3.    On or about December 21, 2006,WMCV Phase 3I Associates, LLC assigned the GA Lease to WMCV.

4.    On April 2, 2007, GA, as tenant, and WMCV, as landlord, executed the First Amendment to the GA Lease (the Global Accents Lease collectively with the First Amendment shall be hereinafter referred to as the "Amended GA Lease"), which changed the space GA leased from the 8th floor in space C-875 of the Property to the 7th floor in space C-775 of the Property (the "GA Premises").   The GA Lease and the Amended GA Lease, collectively, are a valid and enforceable contract.

5.    On or about August 1, 2008, GA failed to pay rent, despite several requests; WMCV evicted GA on or about December 30, 2008.   WMCV performed all of its obligations pursuant to the GA Lease and the Amended GA Lease.

6.    The total remaining value of the GA Lease at the time of Global Accents' eviction was $360,831.00; since evicting GA, WMCV has attempted to mitigate its damages but has been unable to re-lease the GA Premises.

**THE COUTURE LEASE**

7.    On May 21, 2007, Couture, as Tenant, entered into a certain Lease Agreement (the "Couture Lease") with WMCV, as Landlord, for space known as C-1164 in the Property (the "Couture Premises") to commence on July 1, 2008.   The Couture lease is a valid and enforceable contract.

8.    On or about August 1, 2008, Couture failed to pay rent despite several requests; WMCV Phase 3 evicted Couture on or about December 31, 2008 WMCV performed all of its obligations pursuant to the Couture Lease.

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

9.      The total remaining value of the Couture Lease at the time of Couture's eviction was $695,500.32; since evicting Couture, WMCV has mitigated its damages but has been unable to re-lease the Couture Premises.

## SMI

10.     In or about 2007, WMCV hired SMI as a commercial collection agent for the purpose of recovering past due amounts from tenants like GA and Couture.  However, SMI had no actual authority to enter into agreements with tenants on behalf of WMCV.

11.     WMCV did not represent to GA and Couture that SMI had authority to settle or release claims WMCV's behalf. WMCV did not hold out SMI as its agent for the purposes of settling claims.  GA and Couture never contacted WMCV concerning SMI's scope of authority to negotiate, settle and/or resolve claims. No one authorized by WMCV ever represented to GA or Couture that SMI had authority to act for WMCV.

12.     On June 25, 2009, WMCV terminated SMI's authority to conduct commercial collections and recover past due debt and rent from tenants of the Property. (#25 at 10:10-14). After June 25, 2009, SMI did not have actual authority to conduct commercial collections for WMCV and recover past due debt and rent from tenants of the Property, including GA and Couture.

## THE COUTURE RELEASE

13.     On July 28, 2009, Andre LaFleur, on behalf of Couture signed a "Lease Termination and Release Agreement" (the "Couture Release") which: (i) Couture received from SMI; (ii) Birdwell, a collection agent for SMI, purportedly signed on July 8, 2009 on behalf of SMI, falsely representing himself to be "Counsel" for "World Market Center Las Vegas, [INC.] a [Nevada Corporation]"; and (iii) wherein SMI purportedly would release Couture from its liability under the Couture Lease in exchange for $20,000 to be paid directly to SMI.    The Couture Release expressly required all payments to be made to SMI.

14.     WMCV never represented to Couture that SMI had authority to negotiate and execute lease termination and release agreements on WMCV's behalf.

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

15.     Couture knew that Birdwell was an employee of SMI, and not an employee of WMCV. SMI and Birdwell never informed WMCV that they were drafting, negotiating or executing the Couture Release.

16.     There was no evidence or testimony adduced at trial to suggest that Couture knew SMI was involved in any manner in the negotiations and execution of settlement agreements with WMCV tenants. Couture's reliance, if subjective, was not objectively reasonable.

17.     The Couture Release is dated May 21, 2007, the same date WMCV and Couture entered into the Couture Lease.  The Couture Release was executed by Birdwell. The Couture Release stated that it was executed by "Yalu Corporation".  The Couture Release was executed by World Market Center [INC], [a Nevada Corporation] not WMCV. The Couture Release is not binding on WMCV.

18.     Couture paid $20,000 directly to SMI after executing the Couture Release. WMCV was unaware of the purported settlement and did not receive any of the funds paid by Couture.

19.     Birdwell was not WMCV's agent or employee of any sort, and neither he nor SMI were authorized to enter into any agreement on behalf of WMCV.  SMI never had actual or apparent authority to execute the Couture Release.

### THE GA RELEASE

20.     On August 26, 2009, Danny Partielli, on behalf of GA signed a Lease Termination and Release Agreement (the "GA Release") which: (i) GA received from SMI; (ii) Turner, a principal and collection agent for SMI, purportedly signed on August 20, 2009 on behalf of SMI, falsely representing himself to be "Director" for "World Market Center Las Vegas, [INC.], a [Nevada Corporation]"; and (iii) wherein SMI purportedly would release GA from its liability under the Amended GA Lease in exchange for $8,200 to be paid directly to SMI.  The GA Release specifically required all payments to be made to SMI alone.

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

21.     WMCV never represented to GA that SMI had authority to negotiate and execute lease termination and release agreements on WMCV's behalf. GA's reliance on SMI's authority, if subjective, was not objectively reasonable.

22.     GA paid $8,200 directly to SMI after executing the GA Release. Id. at 6:25. WMCV never received any of the funds GA paid to SMI.

23.     Turner was not WMCV's agent or employee of any sort, and neither he nor SMI was ever authorized to enter into any agreement on behalf of WMCV.

24.     SMI never had apparent authority to execute the GA Release. WMCV never represented to GA that SMI had the authority to settle any claims with GA or to excute a settlement and release.

25.     GA failed to take adequate  steps to confirm that SMI had been given authority to enter into any settlement or release. GA ignored errors in the GA Release that indicated it was not recieveing an appropriate release from WMCV. WMCV, in fact, was not a party to the GA Release. GA knew WMCV Phase 3, LLC was its landlord and had previously made payments to WMCV Phase 3, LLC. The GA Release also improperly identified the appropriate lease and lease space. These errors should have caused GA to question the validity of the lease. These errors contribute to this Court's finding that GA did not reasonably rely on SMI's alleged apparent authority.

26.     WMCV's retention of SMI to collect past due debts and rents is insufficient to estop WMCV from denying SMI had apparent authority to negotiate and execute the GA and/or Couture Releases because WMCV never held SMI out as having authority to settle any claims or execute a release of all claims.

27.     There is a significant distinction between WMCV representing that SMI has the authority to collect back rent and debt versus purportedly representing that SMI had the authority to negotiate and execute lease termination and release agreements.

28.     WMCV representing to Couture and/or GA that SMI has the authority to collect back rent and debt does not give rise to an implication that SMI has the authority to negotiate and execute lease termination and release agreements.

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

29.     WMCV has not received any of the funds GA and Couture paid to SMI in exchange for the purported Releases.  Id. at 7:4.

30.     GA and Couture were not reasonably prudent in signing the Releases and paying the $8,200 and $20,000, respectively, directly to SMI.

31.     GA and Couture closed their eyes to warnings and inconsistencies that should have put each of them on notice to look into and confirm whether or not SMI had the authority to negotiate and execute the G&I and Couture Releases on WMCV's behalf.

32.     Any inferences that SMI had apparent authority to negotiate and execute the GA and Couture Releases are heavily outweighed by the inferences that demonstrate apparent authority did not exist.

33.     GA and Couture did not learn from WMCV that SMI had been terminated until after they already executed and funded their respective releases with SMI.

34.     Nevertheless, GA and Couture could not have subjectively believed that SMI had authority to act on WMCV's behalf with respect to the GA and Couture Releases.

35.     Further, no WMCV agent/officer/managerial agents ever made any representation regarding SMI's apparent authority to negotiate and execute the GA and/or Couture Releases that either could have reasonably relied upon.

36.     As a whole, GA and/or Couture's supposed subjective belief that SMI had any apparent authority was, based on the facts and circumstances, objectively unreasonable.

## III.     CONCLUSIONS OF LAW.

1.     Under a claim for breach of contract, a party must prove a valid and existing contract, a meeting of the minds, performance, a breach, and damages as a result. Certified Fire Prot. Inc. v. Precision Constr., 128 Nev. Adv. Op. 35, 283 P.3d 250, 255 (2012).  WMCV must prove these same elements to succeed on its breach of lease claims against GA and Couture. Similarly, GA and Couture, respectively, must prove each of these elements to prevail on their breach of contract claims with respect to the GA and Couture Releases each entered into with WMCV.

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

2.      A party claiming apparent authority of an agent as a basis for contract formation must prove (i) that he subjectively believed that the agent had authority to act for the principal, and (ii) that his subjective belief in the agent's authority was objectively reasonable. Great Am. Ins. Co. v. Gen. Builders, Inc., 934 P.2d 257, 261 (Nev. 1997).

3.      In Ellis v. Nelson, 68 Nev. 410, 418, 233 P.2d 1072, 1076 (1951), the Court explained:

> [T]he reliance must have been a reasonable one, consistent with the exercise of reasonable prudence, and the party who claims reliance must not have closed his eyes to warning or inconsistent circumstances. Authority is not 'apparent' simply because the party claiming has acted upon his conclusions. It is not 'apparent,' in contemplation of law, simply because it looked so to him. It is not a situation where one may read while he runs. It is only where a person of ordinary prudence, conversant with business usages and the nature of the particular business, acting in good faith, and giving heed not only to opposing inferences but also to all restrictions which are brought to his notice, would reasonably rely, that a case is presented within operation of the rule. If the inferences against the existence of the authority are just as reasonable as those in favor of it, there can be no reliance within this rule.

4.      SMI did not have the apparent authority to execute the GA and/or Couture Releases on behalf of WMCV.

5.      Neither the GA Release nor the Couture Release is enforceable against WMCV; in turn, both GA and Couture are liable to WMCV for breach of the GA Lease and Couture Lease, respectively.

6.      The Lease between GA and WMCV was a valid and enforceable contract supported by adequate consideration. WMCV satisfied all conditions and performed pursuant to all terms of the GA Lease. GA breached its obligations and caused WMCV to suffer damages when it failed to pay rent and other expenses pursuant to the terms of the GA Lease. WMCV has attempted, unsuccessfully, to mitigate its damages. WMCV is entitled to recover $360,831.00 as the amount due and owing on the GA Lease at the time GA was evicted.

7.      The Lease between Couture and WMCV was a valid and enforceable contract supported by adequate consideration. WMCV satisfied all conditions and performed pursuant to all terms of the Couture Lease. Couture breached its obligations and caused WMCV to suffer damages when it failed to pay rent and other expenses pursuant to the terms of the Couture

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    Lease. WMCV has attempted, unsuccessfully, to mitigate its damages. WMCV is entitled to

2    recover $695,500.32 as the amount due and owing on the Couture Lease at the time Couture was

3    evicted.

4         8.    To prevail on its claim for breach of the implied covenant of good faith and fair

5    dealing against GA and Couture, WMCV must demonstrate that (i) it was parties to a contract

6    with GA and/or Couture, (ii) that GA and/or Couture owed a duty of good faith to WMCV that

7    was breached by performance in a manner that was unfaithful to the purpose of the contract, and

8    (iii) WMCV's justified expectations were denied under the contract.  Perry v. Jordan, 111 Nev.

9    943, 947, 900 P.2d 335, 338 (1995).  WMCV has proven that GA and Couture breached the

10   covenant of good faith and fair dealing based on their conduct with regard to the respective

11   Lease Agreements, their negotiations with SMI, their execution of the Release Agreements and

12   their conduct with regard to their obligations of Good Faith under the Lease Agreements.

13        9.    On its unjust enrichment claim against GA and Couture, WMCV must prove each

14   of them unjustly retained its money or property against the fundamental principles of justice or

15   equity and good conscience.  Asphalt Products v. All Star Ready Mix, 111 Nev. 799, 802, 898

16   P.2d 699, 701 (1995).  Since both the GA and Couture Releases are unenforceable, the GA and

17   Couture Leases are thus enforceable which moots WMCV's unjust enrichment claims since there

18   remains a valid contract between them.

19        10.   Under NRS 30.040, a party interested in a contract whose rights are affected may

20   have determined any question of construction or validity concerning the contract.  Further, a

21   contract in question may be construed before or after breach.  NRS 30.050.  WMCV filed claims

22   for declaratory relief concerning its rights under and/or the validity of the GA and Couture

23   Leases, the GA Release, and the Couture Release.   This court finds that the GA release and

24   Couture Releases are unenforceable against WMCV and do not impact any rights or claims

25   WMCV has against GA or Couture.

26        11.   WMCV is entitled to its attorneys fees and costs as special damages.

27        12.   GA failed to prove any of the causes of action it pled against WMCV.

28        13.   Couture failed to prove any of the causes of action it pled against WMCV.

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

1

**IV.    ORDER.**

2        1.      It is hereby ORDERED ADJUDGED AND DECREED that Judgment is entered

3   in favor of WMCV and against GA in the amount of $_____, which includes: special

4   damages in the form of attorneys fees and costs in the amount of $_____ and $_____,

5   respectively; punitive damages in the amount of $_____; pre-judgment interest in the amount

6   of $_____; and post-judgment interest accruing at the rate of ____%.

7        2.      It is further ORDERED ADJUDGED AND DECREED that Judgment is entered

8   in favor of WMCV and against Couture in the amount of $_____, which includes:

9   special damages in the form of attorneys fees and costs in the amount of $_____ and

10  $_____, respectively; punitive damages in the amount of $_____; pre-judgment interest

11  in the amount of $_____; and post-judgment interest accruing at the rate of ____%.

12       3.      It is further ORDERED ADJUDGED AND DECREED that any and all other

13  claims not specifically addressed herein are denied.

14       Dated this ____ day of _____, 2012.

15

16

17  MARQUIS AURBACH COFFING                                UNITED STATES DISTRICT JUDGE

18

19

20  By /s/ Jason M. Gerber, Esq._____
        Terry A. Coffing, Esq.
        Nevada Bar No. 4949
21      Jason M. Gerber, Esq.
        Nevada Bar No. 9812
22      Jack F. DeGree, Esq.
        Nevada Bar No. 11102
23      10001 Park Run Drive
        Las Vegas, Nevada  89145
24      Attorneys for WMCV Phase 3, LLC

25

26

27

28

MAC:11320-004 1824219_1 11/8/2012 3:49 PM

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816