**Marquis Aurbach Coffing**
Terry A. Coffing, Esq.
Nevada Bar No. 4949
Jason M. Gerber, Esq.
Nevada Bar No. 9812
Jack F. DeGree, Esq.
Nevada Bar No. 11102
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
tcoffing@maclaw.com
jgerber@maclaw.com
jdegree@maclaw.com
  Attorneys for WMCV Phase 3, LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WMCV PHASE 3, LLC, a Delaware limited liability company, | Case No.:      2:10-cv-00661-GMN-RJJ |
| Plaintiff, | |
| vs. | |
| SHUSHOK & MCCOY, INC., a Texas corporation; MATTHEW J. TRAVIS, an individual; MATT TURNER, an individual; RICHARD BIRDWELL, an individual; GLOBAL ACCENTS, INC., a California corporation; COUTURE INTERNATIONAL, INC., a Quebec corporation; DOES I through X, inclusive; ROE ENTITIES I through X, inclusive, | |
| Defendants. | |
| AND RELATED MATTERS | |

**PLAINTIFF'S TRIAL BRIEF**

Plaintiff, WMCV Phase 3, LLC, by and through its attorneys of record, the law firm of Marquis Aurbach Coffing, hereby submits its Trial Brief.

/ / / /

/ / / /

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

*MARQUIS AURBACH COFFING*
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION.

WMCV is entitled to judgments against Global Accents and Couture.  This Court has already found WMCV had valid leases with both Global Accents and Couture and that those leases were terminated as a result of nonpayment of rent.  Both Global Accents and Couture were evicted from WMCV's property and both owe hundreds of thousands in unpaid rent.  Further, Global Accents and Couture fail to provide any valid basis for the failure to perform under their Lease Agreements or a valid defense to WMCV's demands that they perform.

Instead, both Global Accents and Couture will rely on the argument that WMCV's former collection agency – Shushock & McCoy (SMI) - had apparent authority to fully resolve and entirely settle any claims against defaulting tenants.  Global Accents and Couture, furthermore, must rely in the collection agencies right to sign a full and final release on WMCV's behalf - *because WMCV never signed the release*.  This Court has already found, and is abundantly clear, that SMI did not have any actual authority to settle claims and certainly did not have authority to do anything after it was undisputedly terminated in June, 2009.  The focus, therefore, of this defense by Global Accents and Couture is that SMI had apparent authority to act as WMCV's agent to settle all claims.  The evidence on this point, however, is fatally weak.

Global Accents and Couture will not be in a position to present sufficient evidence that WMCV held SMI out with apparent authority.  The burden, on both Global Accents and Couture is to demonstrate WMCV provided some writing, made some statement or took some act that created a subjective and objective belief that SMI had authority to release all the claims.  At best, Global Accents will argue that it contacted WMCV, months before WMCV terminated SMI, concerning its SMI collections and WMCV directed those discussions to SMI.  Otherwise, there is little evidence any party can present indicating that WMCV held SMI out as its agent.  SMI was hired to assist in collections but there is no evidence that WMCV ever provided anything in writing, made any statements or took any actions to create the impression that SMI held ultimate settlement authority.

/ / / /

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

1    Most importantly, even if a subjective belief existed, that belief was not objectively

2  reasonable.  Global Accents and Couture never asked WMCV about the scope of SMI's and

3  relied only on what SMI represented.  The evidence will also demonstrate that Global Accents

4  and Couture knew their landlord was WMCV Phase 3, LLC and had no reasonable basis to

5  believe that "World Market Center, [INC.] [a Nevada corporation]" (the party executing the

6  releases) was their landlord.  The (admittedly fraudulent) releases prepared by SMI were riddled

7  with errors that should have caused Global Accents and Couture to question SMI's authority, the

8  claims actually being released and whether or not the claims by WMCV were included in the

9  release.  Further, both Global Accents and Couture settled for pennies on the dollar in

10  comparison to their total liability under the Lease.  Again, this low figure should have triggered

11  questions about SMI and the release.  Instead, Global Accents and Couture both went forward

12  and settled the claims with SMI.  This unreasonable and reckless disregard eliminates any basis

13  to claim a defense for reliance on apparent authority.

14    Given these facts and circumstances, WMCV is entitled to a judgment against both

15  Global Accents and Couture.  Further, WMCV is entitled to judgment in its favor on all of

16  Global Accents and Couture's counterclaims.  Each claim rises and falls in the determination on

17  apparent authority because there is no legitimate evidence that WMCV held out SMI as its

18  settlement agent and overwhelming evidence that Global Accents ignored indications that SMI

19  was not WMCV's agent, all of Global Accents claims fail.  Global Accents is left without a valid

20  basis for claiming breach and without a basis for any other claims concerning conduct by

21  WMCV.

22    Finally, based on the lease terms, WMCV is entitled to an award of its fees and costs

23  from Global Accents and Couture.  The clear and unambiguous language of the lease allows for

24  the prevailing party in any dispute to recover its fees and costs.  In this case, WMCV was forced

25  to evict Global Accents and Couture, pursue them for recovery and to litigate this matter through

26  trial.  If WMCV is the prevailing party, it respectfully requests leave to file a motion for fees and

27  costs and a bill of costs.

28  / / / /

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

## II.   **PROCEDURAL HISTORY.**

This litigation began in Nevada state court and was moved to Federal Court on May 6, 2010. (#1)  WMCV pursued claims against Global Accents, Couture, SMI and SMI's principals, Mathew Travis and Mathew Turner as well as its employee Richard Birdwell.  Prior to trial, this Court granted, in part, a motion for summary judgment on WMCV's behalf (#25) and denied motions for summary judgment by Global Accent and WMCV (#122).  The Pretrial Order was filed on July 26, 2012 (#141).  Therein, the parties stipulated to extensive facts that are admitted for the purposes of trial.  These facts are included in the statement of facts below.

### A.   PARTIES.

- WMCV Phase 3, LLC – Plaintiff.

- Global Accents, Inc. – Defendant.

- Couture International, Inc. – Defendant.

- Shushok and McCoy, Inc. – Defendant – on August 30, 2011, this Court granted a motion to strike SMI's pleadings and to enter default against SMI. (#82) SMI is no longer an active party in this litigation and it is not anticipated that it will have any representation or participation in the trial.

- Mathew Travis – Defendant – Mr. Travis settled his claims with WMCV and is no longer a party in this litigation and is not expected to be a participant in the trial.

- Mathew Turner – Defendant – on November 6, 2012 this Court granted a motion to strike Turner's pleadings and to enter default against Turner. (#146) Turner is no longer an active party in this litigation and it is not anticipated that he will have any representation or participation in the trial.

- Richard Birdwell – Defendant – on November 6, 2012 this Court granted a motion to strike Birdwell's pleadings and to enter default against Birdwell. (#146) Turner is no longer an active party in this litigation and it is not anticipated that he will have any representation or participation in the trial.

### B.   STATUS OF CLAIMS.

At this time, WMCV has claims against Global Accents and Couture for: (1) fraud; (2) civil conspiracy; (3) breach of lease; (4) breach of implied covenant of good faith and fair dealing; (5) unjust enrichment; (6) declaratory relief; and (7) special damages for attorneys' fees and costs.  WMCV, however, will abandon and will not pursue its fraud and civil conspiracy claims.  WMCV will pursue the remaining claims and believes it is entitled to a judgment and

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  damages on all remaining claims.

2       Global Accents is maintaining counterclaims for: (1) breach of the Global Accent release;

3  (2) breach of the covenant of good faith and fair dealing regarding the Global Accents release

4  and (3) deceptive trade practices pursuant to Nev.Rev.Stat. § 598.0915.

5       Couture is pursuing claims for: (1) breach of contract; (2) breach of the covenant of good

6  faith and fair dealing and (3) deceptive trade practices pursuant to Nev.Rev.Stat. § 598.0915.

7  **III.    STATEMENT OF FACTS.**

8       1.      WMCV Phase 3 ("WMCV") owns real property located at 455 S. Grand Central

9  Parkway in Las Vegas, Nevada (the "Property").

10      2.      This case arises from lease agreements between WMCV and two former tenants,

11  Global Accents, Inc. ("Global Accents") and Couture International, Inc. ("Couture"). Global

12  Accents and Couture both signed leases for space at the Property during WMCV's twice yearly

13  Trade Show Markets (the "Market").

14      3.      Eventually, both Global Accents and Couture breached their lease agreements and

15  left WMCV with hundreds of thousands of dollars in damages.

16      **A.    GLOBAL ACCENTS.**

17          **1.    The Lease and Breach.**

18      4.      On August 7, 2006, WMCV's predecessor-in-interest, WMCV Phase 3I

19  Associates, LLC, as landlord, entered into a lease agreement ("the Global Accents Lease") with

20  Global Accents s tenant, for space known as C-875 in the Property to commence on July 1, 2008.

21  On or about December 21, 2006, WMCV Phase 3I Associates, LLC assigned the Global Accents

22  Lease to WMCV Phase 3.

23      5.      On April 2, 2007, Global Accents, as tenant, and WMCV, as landlord, executed

24  the First Amendment to the Global Accents Lease (the Global Accents Lease collectively with

25  the First Amendment shall be hereinafter referred to as the "Global Accents Lease"), which

26  changed the space Global Accents leased from the 8th floor in space C-875 of the Property to the

27  7th floor in space C-775 of the Property (the "Global Accents Space").

28  / / / /

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

6. In July 2007, Global Accents made two initial payments (the only payments it ever made to WMCV) for first month's rent and a security deposit. Both payments were made to WMCV via check and both checks were made payable to "WMCV Phase 3, LLC."

7. On or about August 1, 2008, Global Accents failed to pay rent, despite several requests. WMCV sent Global Accents monthly statements identifying the amount due, the landlord entitled to receive the payment (WMCV Phase 3, LLC) and the address for the payment. After almost 6 months of non-payment, WMCV evicted Global Accents on or about December 30, 2008.

8. The total remaining value of the Global Accents Lease at the time of Global Accents' eviction was $360,831.00; since evicting Global Accents, WMCV has been unable to re-lease the Global Accents Space.

**B.     COUTURE.**

**1.     The Lease and Breach.**

9. On May 21, 2007, Couture, as Tenant, entered into a certain Lease Agreement (the "Couture Lease") with WMCV, as Landlord, for space known as C-1164 in the Property (the "Couture Space") to commence on July 1, 2008.

10. On or about August 1, 2008, Couture failed to pay rent despite several requests. WMCV sent Global Accents monthly statements identifying the amount due, the landlord entitled to receive the payment (WMCV Phase 3, LLC) and the address for the payment. After almost 6 months of non-payment, WMCV evicted Couture on or about December 31, 2008.

11. The total remaining value of the Couture Lease is at the time of Couture's eviction was $695,500.32; since evicting Couture, WMCV Phase 3 has been unable to re-lease the Couture Premises.

**C.     SHUSHOK & MCCOY, INC.**

12. In 2007, WMCV hired SMI as a commercial collection agent for the purpose of recovering past due amounts from tenants such as Global Accents and Couture. However, SMI had no actual authority to enter into agreements with tenants on behalf of WMCV. Further, SMI was never authorized to sign agreements for WMCV and was never authorized to unilaterally

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

1    release claims held by WMCV.

2         13.    In early 2009, WMCV retained SMI to collect past due rent from Global Accents

3    and Couture.  SMI's scope of work for these cases was no different from work it was authorized

4    to perform in other WMCV rent collection matters.   SMI was not authorized to execute

5    agreements on WMCV's behalf or release claims held by WMCV against Global Accents or

6    Couture.  Global Accents and Couture never contacted WMCV requesting information on the

7    scope of SMI's authority.

8         14.    On June 25, 2009, WMCV terminated SMI's authority to conduct commercial

9    collections and recover past due debt and rent from tenants of the Property.  After June 25, 2009,

10   SMI did not have actual authority to conduct commercial collections for WMCV and recover

11   past due debt and rent from tenants of the Property, including Global Accents and Couture.

12            **1.    Post Termination and the Purported Global Accents Release.**

13        15.    On August 26, 2009, Danny Partielli, on behalf of Global Accents signed a Lease

14   Termination and Release Agreement (hereinafter the "Global Accents Release") which: (1)

15   Global Accents received from SMI; (2) Defendant Matt Turner, a principal and collection agent

16   for SMI, signed on August 20, 2009 on behalf of SMI, falsely representing himself to be

17   "Director" for "World Market Center Las Vegas, [INC.], a [Nevada Corporation]"; and (3) SMI

18   purported would release Global Accents from its liability under the Amended Global Accents

19   Lease in exchange for $8,200 to be paid directly to SMI.  Global Accents paid $8,200 directly to

20   SMI after Global Accents executed the Global Accents Release.

21        16.    Turner was not WMCV Phase 3's agent or employee of any sort, and neither he

22   nor SMI were authorized to enter into any agreement on behalf of WMCV Phase 3.  Further,

23   SMI collection agent Richard Birdwell admitted that SMI knew it no longer had authority to

24   collect unpaid rent from Global Accents on WMCV's behalf.  Mr. Birdwell also admitted SMI

25   sought to settle the claims without notice to WMCV.  Mr. Birdwell admitted he knew these

26   actions were wrong.  WMCV was never a party to the Global Accents Release and never

27   received any of the settlements funds.

28   / / / /

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**2.** **Post Termination and Couture's Purported Settlement Agreement.**

17.     On July 28, 2009, Andre LaFleur, on behalf of Couture signed a "Lease Termination and Release Agreement" (hereinafter the "Couture Release") which: (1) Couture received from SMI; (2) Defendant Richard Birdwell, a collection agent for SMI, purportedly signed on July 8, 2009 on behalf of SMI, falsely representing himself to be "Counsel" for "World Market Center Las Vegas, [INC], a [Nevada Corporation]"; and (3) SMI purported would release Couture from its liability under the Couture Lease in exchange for $20,000 to be paid directly to SMI.  The Couture Release is dated as of May 21, 2007, the same date WMCV Phase 3 and Couture entered into the Couture Lease.

18.     Couture paid $20,000 directly to SMI after Couture executed the Couture Release. Birdwell was not WMCV's agent or employee of any sort, and neither he nor SMI were authorized to enter into any agreement on behalf of WMCV Phase 3.  Birdwell admitted that SMI knew it no longer had authority to collect unpaid rent from Couture on WMCV's behalf. Mr. Birdwell also admitted SMI sought to settle the claims without notice to WMCV.  Mr. Birdwell admitted he knew these actions were wrong.  WMCV was never a party to the Couture Release and never received any of the settlements funds.

**IV.** **WMCV IS ENTITLED TO A JUDGMENT ON ITS CONTRACT CLAIMS.**

   **A.** **LEGAL STANDARD APPLIED TO BREACH OF CONTRACT AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIMS.**

In Nevada the elements which support a claim for breach of contract are: (1) the existence of a valid contract, (2) failure of the breaching party to render performance under the contract when due, (3) the breaching party's failure was unexcused under the contract, (4) all conditions precedent to the non-breaching party's duty to perform were fulfilled or excused, (5) the non-breaching party sustained damages as a result, (6) the non-breaching party can prove its damages to a reasonable degree of certainty, and (7) the damages were a foreseeable consequence of a particular breach.  Dachner v. Union Lead Mining & Smelter Co., 65 Nev. 313, 315, 195 P.2d 208, 209 (1948).

/ / / /

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  Nevada also recognizes claims for the breach of the covenant of good faith and fair

2  dealing.  Every contract imposes upon the contracting parties a duty of good faith and fair

3  dealing.  Hilton Hotels Corp. v. Butch Lewis Productions, Inc., 109 Nev. 1043, 862 P.2d 1207

4  (1993).  A wrongful act which was committed during the course of a contractual relationship

5  may give rise to tort and contractual remedies.  Id.  A party, that is not in breach of any express

6  contract term, may nonetheless be held liable for breaching the implied covenant of good faith

7  and fair dealing.  "Where the terms of a contract are literally complied with but one party to the

8  contract deliberately contravenes the intention and spirit of the contract, that party can incur

9  liability for breach of the implied covenant of good faith and fair dealing. See Hilton Hotels Corp

10  v. Butch Lewis Productions, Inc., 109 Nev. 1043, 1048, 862 P.2d 1207, 1210 (1993).

11  **B.     GLOBAL ACCENTS.**

12      **1.     <u>Breach of contract.</u>**

13  This Court has already found, as a matter of law, the facts necessary to support WMCV's

14  breach of contract claim and WMCV is entitled to a judgment for breach of contract against

15  Global Accents.  WMCV entered into a valid lease and amendments with Global Accents in

16  2007.  Pursuant to that lease, Global Accents was required to pay rent and associated expenses

17  on a monthly basis to WMCV from 2008 through 2013.  In addition to the monthly rent, Global

18  Accents agreed to pay CAMs and other charges.  Global Accents has never disputed the terms of

19  the Lease or the amounts it was required to pay.  Further, Global Accents has never disputed that

20  it only made the initial rent and security deposit payments in July 2008.  Between August, 2008

21  and December 2008, Global Accents received notices from WMCV that rent and other charges

22  were due and that penalties were accruing.  Despite these notices, Global Accents refused to

23  comply with its allegations pursuant to the lease.  As a result, the Global Accents lease was

24  terminated and WMCV evicted Global Accents in December, 2008.  Global Accents failure to

25  pay rent and other charges is a breach of the Global Accents Lease and the basis for liability for

26  breach of contract.

27  / / / /

28  / / / /

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

**2.**     **Breach of the Covenant of Good Faith and Fair Dealing.**

Global Accents, furthermore, is liable for a judgment for breach of the covenant of good faith and fair dealing.  Global Accents was aware of the lease terms, aware of its obligations under the Lease and aware of multiple deadlines to pay rent before its eviction.  Further, even while Global Accents was in default, WMCV attempted to accommodate Global Accents' concerns with the Global Accents Space by providing options for new spaces at the Property. Global Accents, refusing to pay the rent it knew it owed, refused these accommodations as a way of avoid having to keep its long term commitment.  This refusal to work in good faith is a basis for WMCV's claims.

Then, Global Accents ignored obvious issues with the SMI's actions and executed the Global Accents Release.  If this court were to find the Global Accents Release valid and enforceable, Global Accents would have no further liability under the original lease.  However, WMCV believes that even though there would be a finding that Global Accents could no longer be pursued for the breach of an express term of the Lease Agreement, Global Accents would still be liable for breaching the covenant of good faith and fair dealing because of the manner in which the Global Accents Release was negotiated and executed.  Global Accents ignored numerous errors in the Release itself and agreed to language that did not even properly identify the Global Accents Lease or the parties.  Further, Global Accents settled for a fraction of the amount due under the terms of the Lease.  Taken together, these factors demonstrate Global Accents acted in bad faith and is liable for breach of the covenant of good faith and fair dealing.

**3.**     **Global Accents Has No Valid Defense to Its Refusal To Perform.**

Global Accents, furthermore, does not have a valid basis for its stark refusal to perform its obligations.  Global Accents has alleged the Global Accents Space was insufficient, there were insufficient rug dealers located in its area and that the foot traffic in the area was not what WMCV represented it would be.  However, none of these are valid basis for avoiding the responsibility to pay rent.

WMCV agreed to move Global Accents to a different space - a right WMCV held exclusively pursuant to the Global Accents Lease.  <u>See</u> Global Accents Lease, p. 19, Art. 27.

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    Global Accents refused to pay rent (as it was obligated) and refused to move to a new location

2    (pursuant to WMCV's absolute discretion).  Global Accents also cannot claim WMCV failed to

3    meet its obligations based on representations outside the terms of the Global Accents Lease.  The

4    Lease never contains any promises to provide a certain number of tenants or that specific types

5    of tenants will surround the space rented by Global Accents.  Global Accents, however, did agree

6    that the terms and conditions of the Lease were the entire agreement and that it did not rely on

7    any representations before executing the Lease. See Global Lease, p. 21, Sec. 31.12.   Global

8    Accents, therefore, has no valid claims that WMCV failed to perform and cannot justify its own

9    failure to perform.

10       **C.**    **COUTURE.**

11          **1.**      <u>**Breach of Contract.**</u>

12        Couture is responsible and liable for breach of its lease with WMCV.  This Court has

13   already found the facts essential to support WMCV's breach of contract claim as a matter of law.

14   WMCV has established that it had a valid contract with Couture to lease space at the Property.

15   Further, Couture has never disputed that it was required to pay the monthly rent, CAM charges

16   and other expenses pursuant to the express and unambiguous terms of the Lease.  Couture made

17   only one payment to WMCV and stopped paying rent in August 2008.   WMCV provided

18   monthly statements advising Couture on the amount that was due, the deadline for payment and

19   the charges accruing for the failure to properly perform.  As a result of non-payment and non-

20   performance, WMCV terminated the Couture Lease in December, 2008 and evicted Couture

21   from the Property.  Couture has never disputed the amounts owed under the terms of the lease

22   and has never claimed to have paid any of these amounts due. WMCV, therefore, is entitled to a

23   judgment against Couture for breach of contract based on its failure to pay rent.

24          **2.**      <u>**Breach of the Covenant of Good Faith and Fair Dealing.**</u>

25        Couture is also liable for its breach of the covenant of good faith and fair dealing.

26   Couture never provided a reason or a basis for its refusal to comply with its lease obligations.

27   WMCV sought to provide appropriate accommodations and work with Couture in order to

28   resolve Couture's failure to perform.  Couture never fairly or in good faith participated in these

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

1   efforts and never took any steps on its own to resolve the dispute in good faith.  As a result,

2   Couture is liable for the breach of covenant of good faith and fair dealing.

3              **3.       Couture Has No Valid Defense to its Refusal to Perform.**

4              Couture has never raised any valid defense or provided evidence of a basis for its refusal

5   to perform under the Couture Lease.  Couture has not provided any evidence that the space

6   provided was in adequate, that WMCV failed to satisfy all terms and conditions of the Lease or

7   that WMCV somehow violated a term of the Lease so severely that Couture was entitled to

8   terminate without notice and avoid all of its liability.  Further, pursuant to the Couture Lease,

9   Couture was required to provide written notice of any default before pursuing any claims:

> 26.01  In the event landlord fails or refuses to perform any of the covenants
> herein on Landlord's part to be performed, Tenant, ***prior to exercising any right
> or remedy*** Tenant may have against Landlord on account of such default, ***shall
> give written notice to Landlord*** of such default… and Landlord shall not be
> deemed in default is the same is cured within 30 days…  (Couture Lease, p.
> 8)(emphasis added)

13             Couture did not produce any documents during discovery and certainly provided no

14  evidence that (1) WMCV was ever in default or (2) that Couture provided written notice and an

15  opportunity to cure. With no evidence of a valid defense and no evidence it complied with the

16  terms of the Couture Lease, Couture cannot avoid its liability for breach.

17             **D.       NO REASONABLE RELIANCE ON SMI'S APPARENT AUTHORITY.**

18             Global Accents and Couture cannot satisfy their obligation to prove WMCV cloaked SMI

19  in settlement authority.  "To bind a principal, an agent must have actual authority, express or

20  implied, or apparent authority."  Dixon v. Thatcher, 103 Nev. 414, 417, 742 P.2d 1029, 1031

21  (1987) (citing Myers v. Jones, 99 Nev. 91, 93, 657 P.2d 1163, 1164 (1983)).  A party claiming

22  apparent authority of an agent as a basis for contract formation must prove (1) that he

23  subjectively believed that the agent had authority to act for the principal and (2) that his

24  subjective belief in the agent's authority was objectively reasonable.  Apparent authority is, in

25  essence, an application of equitable estoppel, of which reasonable reliance is a necessary

26  element. As previously noted by this court, "the party who claims reliance must not have closed

27  his eyes to warnings or inconsistent circumstances."   Apparent authority, including a third

28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

1    party's reasonable reliance on such authority, is a question of fact. <u>Great American Ins. Co. v.</u>

2    <u>General Builders, Inc.</u>, 113 Nev. 346, 352, 934 P.2d 257, 261 (1997).

3                  **1.**      <u>**No Evidence SMI Authorized to Settle Claims.**</u>

4          No evidence will be presented at trial indicating that SMI ever had authority to settle

5    claims without any authorization or involvement from WMCV. Global Accents is currently

6    seeking to admit evidence of negotiations and settlements between defaulting tenants, SMI and

7    WMCV. (# 143)  WMCV opposed the Motion in Limine and the admission of this evidence as it

8    is unrelated to any communications between WMCV, SMI and Global Accents and because

9    Global Accents cannot demonstrate that it relied at all on any of these communications in

10    forming its beliefs about SMI's authority. (#144, *generally*)  However, even if this evidence is

11    admitted, it does not further Global Accents' apparent authority defense.

12          Throughout the documents there are communications between SMI and WMCV

13    concerning proposed settlements and releases with former tenants. (#143, *generally*)  WMCV

14    approved any of these settlements and is always the party executing the settlement agreements.

15    WMCV also revised any settlement agreements to ensure that the proper entities are identified

16    and named in the release.  SMI never had any authority to agree to settlement, sign settlement

17    agreements or release claims on WMCV's behalf – and these documents support these

18    limitations.  Never once is there a settlement negotiated, executed and/or collected solely by

19    SMI.  Never once does SMI settle a claim without approval or authority from WMCV.  As such,

20    the documents do not show, and are not circumstantial evidence to demonstrate, WMCV cloaked

21    SMI and the ultimate authority to resolve cases.  Instead, even this documentation demonstrates

22    that SMI never had the authority Global Accents and Couture needed it to have in order to meet

23    their burden to support an apparent authority defense.

24          If the Court denies the Motion in Limine and refuses to admit the evidence, there will be

25    little or no testimony or documentation giving SMI this ultimate authority.  The Defendants

26    cannot demonstrate through any correspondence or communications that WMCV represented

27    SMI had full settlement and release authority.  In fact, in at least one occasion when there are

28    questions concerning the square footage of a new space Global Accent could be moved to at the

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

1    Market, SMI quickly punted the question to WMCV's representative but then returned to SMI

2    for issues related to collections.   These discussions should have caused Global Accents to

3    question SMI's authority and cannot serve as sufficient evidence that WMCV cloaked SMI in

4    ultimate authority.

5          Importantly, there will be no evidence that any WMCV representatives ever told Global

6    Accents or Couture that SMI had authority to settle claims.  Global Accents and Couture, in fact,

7    took no reasonable steps to even inquire about the authority to given to SMI.   In these

8    circumstances, there will be insufficient evidence presented at trial that SMI was ever had

9    apparent authority.

10          **2.      Reliance is Unreasonable Based on Errors in the Purported**
              **Settlement Agreement.**

11

12          Even if this court finds that apparent authority existed, it must also consider whether

13    reliance by Global Accents and Couture was objectively reasonable.

14          **a.      Global Accents.**

15          Global Accents ignored the warnings and facts which were inconsistent with the idea that

16    SMI could have authority to act for WMCV.  First, Global Accents took insufficient steps to

17    confirm SMI's actual authority.   Second, despite the fact that Global Accents' owner and

18    operator, Mr. Partielli, is a licensed attorney he completely ignored the fact that: (1) WMCV was

19    not a party to the Global Accent Release; (2) the lease referenced was not the lease Global

20    Accents entered with WMCV; and (3) the specific mutual release does not release WMCV's

21    claims against Global Accents.  Global Accents simply did not act with the ordinary prudence

22    that would be consistent with the nature of this industry or with a party seeking a release from

23    more than $300,000 in liability.  A reasonable actor would have questioned the multiple errors in

24    the terms of the release before relying on SMI's authority and the document it drafted.  Global

25    Accents should have taken steps to confirm SMI had actual authority and that the settlement

26    agreement would actually release the claims against Global Accents.  Instead, Global Accents

27    acted recklessly, signed the Global Accents Release without resolving questions of its validity

28    and cannot pin this reckless decision on WMCV.

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1

      **b.**  **Couture.**

2    Couture's reliance was also unreasonable. Like Global Accents, Couture has failed to

3 present evidence that it adequately sought to confirm SMI's authority.  The Couture Release also

4 suffers from similar errors and issues that should have raised suspicion.  For instance, the

5 Couture Release was entered on the 21st day of May, 2007 – the same day as the original

6 Couture Lease and years before the release allegedly occurred.  Further, the recitals state the

7 lease was amended twice, even though the Couture Lease was never amended.  The Release also

8 calls for all the monies to be paid to SMI with no reference to WMCV and improperly names

9 World Market Center of Las Vegas [INC.] a [Nevada corporation] as a landlord.  Finally, on the

10 signature page the tenant is "Yalu's Corporation, a California corporation" instead of Couture.

11 The landlord listed includes Shushok & McCoy, Inc., and is signed is by Richard Birdwell as

12 "counsel".   Couture, however, was certainly on notice that Birdwell was not "counsel" for

13 WMCV.

14    These errors should have provided notice to Couture that its reliance on SMI's authority

15 was suspect.  Further, Couture should have known it was not settling with WMCV because it

16 was not a party to the release agreement.  Finally, there is no evidence that Richard Birdwell was

17 held out as an employee of WMCV – he always maintained his position as an employee of SMI

18 during his communications with debtors.   Like Global Accents, Couture's conduct was

19 unreasonable and reckless. Therefore, Couture cannot reach its burden to prove the alleged

20 apparent authority was objectively reasonable.

21    **E.**  **DEFENDANTS HAVE BEEN UNJUSTLY ENRICHED.**

22    Unjust enrichment occurs whenever a person has and retains benefit which in equity and

23 good conscious belongs to another.  Lease Partners Corp. v. Robert L. Brooks Trust, 113 Nev.

24 747, 942 P.2d 182 (1997).  Unjust enrichment is the unjust retention of money or property of

25 another against fundamental principles of justice or equity and good conscious.   Asphalt

26 Products Corp. v. Allstar Ready Mix, Inc., 111 Nev. 799, 898 P.2d 699 (1995).  The unclean

27 hands doctrine generally bars a party from receiving equitable relief because of the party's own

28 inequitable conduct.  Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.,

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

1    182 P.3d 764 (2008).

2         Both Couture and Global Accents are liable for unjust enrichment.  First, both received

3    the benefit of their associations with the World Market Center and WMCV despite not

4    complying with the contractual terms of the Leases.   This benefit was bestowed without

5    corresponding obligation and both Global Accents and Couture seek the benefit for which they

6    did not pay.

7         Secondly, both Couture and Global Accents avoided hundreds of thousands of dollars in

8    liability on their Leases through back door deals with SMI.  Global Accents and Couture settled

9    their claims for pennies on the dollar without any notice to WMCV.  Both now seek to escape

10   that liability by claiming reliance on authority WMCV never bestowed on SMI.  However, if

11   Global Accents and Couture avoid liability under the Lease Agreements because of their

12   purported settlement agreements, they will both have enjoyed a significant and unjust windfall.

13   WMCV was unaware of SMI's actions and received no benefit from the settlement.  Therefore,

14   WMCV is left holding the bag – it has rights and remedies taken from it by SMI, Global Accents

15   and Couture, and Global Accents and Couture have both received this benefit unjustly.

16        **F.     DECLARATORY RELIEF.**

17        A declaratory judgment does not carry with it the element of coercion as to either party

18   and simply determines their legal rights without undertaking to compel either party to pay money

19   or take some other action. Aronoff v. Katleman, 75 Nev. 424, 345 P.2d 221 (1959).  WMCV is

20   entitled to a declaration concerning the rights and obligations of the parties related to the Lease

21   Agreements and the purported settlement agreements.  Global Accents and Couture both claim

22   an absolute defense based on their purported settlement agreements with SMI. In so doing, both

23   would like to avoid hundreds of thousands of dollars in damages to the detriment of WMCV –

24   ***who was not even a party to the settlement agreements***.   WMCV has rights and remedies

25   available under the only agreements – the Lease Agreements – that it actually executed with

26   Global Accents and Couture.  A declaration should be entered stating that the Global Accents

27   and Couture Releases are invalid as to WMCV and do not stand as a bar to any of WMCV's

28   rights and remedies under the Lease Agreements.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

G.      DAMAGES.

Damages need not be determined with mathematical certainty. Perry v. Jordan, 111 Nev. 943, 900 P.2d 335 (1995). Compensatory damages are awarded to make the aggrieved party whole, and, where contracts are involved, these damages should place the plaintiff in the position the plaintiff would have been in had the contract not been breached. Hornwood v. Smith's Food King I, 107 Nev. 80, 807 P.2d 208 (1991). The object of compensatory damages in an action for breach of contract is merely to place the injured party in a position that he would have been in had the contract not been breached. Dulton Properties, Inc. v. Jones, 100 Nev. 422, 683 P.2d 30 (1984). The district court is given wide discretion in calculating an award of damages. Diamond Enterprises, Inc. v. Lau, 113 Nev. 1376, 951 P.2d 73 (1997).

1.      **Actual Damages.**

Global Accents is responsible for more than $300,000 in damages. The last payment made to WMCV was in July, 2008. No further payments were made after that date. This court has already found that $360,831.00 was due and owing by Global Accents at the time of the breach. This Court has also found, and the parties have already stipulated that $695,500.32 was remaining on the Couture Lease when it was evicted. WMCV is entitled to a judgment for these damages.

2.      **Fees and Costs.**

WMCV will also be entitled to an award of its attorney fees and costs as a prevailing party. Parties are not entitled to an award of their attorney fees unless governed by an attorney fee provision in a contract or statute. See Frank Settelmeyer & Sons, Inc. v. Smith & Harmer, Ltd., 197 P.3d 1051 (2008); Barney v. Mt. Rose Heating & Air Conditioning, 192 Nev. 730 (2008) and Horgan v. Felton, 123 Nev. 577, 170 P.3d 982 (2007). A party can be a prevailing party if it succeeds on any significant issue in litigation which achieves some of the benefit it sought in bringing suit. Valley Electric Assoc. v. Overfield, 121 Nev. 7, 106 P.3d 1198 (2005). The judgment must be monetary in nature in order for a party to be a prevailing party under the attorney fee statute. Overfield, 121 Nev. at 10.

/ / / /

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

1    Both Lease Agreements allow the prevailing party to recover attorney fees and costs.

2    The Couture Lease states that the prevailing party may recover attorney fees and costs. <u>See</u>

3    Couture Lease, p. 9, Sec. 31.03.  The same provision exists in the Global Accents Lease. <u>See</u>

4    Global Accents Lease, p. 21, Sec. 31.06.  WMCV, therefore, respectfully requests the Court

5    allow it to file the appropriate motion for attorney fees and costs and a bill of costs if a judgment

6    is entered in its favor.

7              **3.      Interest.**

8    WMCV, as the prevailing party is entitled to interest on its damages, fees and costs from

9    the date the contracts were signed.  Parties may agree for the payment of any rate of interest on

10   money due or to become due on any contract, for the compounding of interest if they choose, and

11   for any other charges or fees. <u>See</u> NRS 99.050.  The parties shall specify in writing the rate upon

12   which they agree, that interest is to be compounded if so agreed, and any other charges or fees to

13   which they have agreed. <u>Id.</u>  The transactional date for the purposes of NRS 99is the date when

14   the contract is signed.  <u>Kerala Properties, Inc. v. Familian</u>, 122 Nev. 601, 605, 137 P.3d 1146

15   (2006).  Prejudgment interest is determined at the rate effective on the date when the contract

16   was signed and that rate is applied to attorney fees and expenses from the date when those

17   obligations become due.  <u>Id.</u>  Here, the parties agreed that interest would be charged at 18%. <u>See</u>

18   Global Accents Lease, p. 18, Sec. 23.02 (a) and Couture Lease, p. 7, Sec. 23.02 (a). WMCV,

19   therefore, is entitled to recover 18% interest on its damages, fees and costs and this calculation

20   runs from the date of the transactions (Global Accents – August 7, 2006/Couture – May 21,

21   2007).

22        **H.    DEFENDANTS HAVE NO RIGHT TO RECOVERY ON THEIR**
          **COUNTERCLAIMS.**

23
     Global Accents and Couture have raised identical counterclaims, all which must be
24
     disregarded.  The Defendants have no right to recovery against WMCV for breaching the Lease
25
     Agreements or the purported settlement agreements.  Importantly, neither Defendant can recover
26
     against WMCV based on the Lease Agreements because they have breached their obligations
27
     and have failed to provide an adequate basis for defending their failure to perform.  Further,
28

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

1  Defendants cannot maintain any claims based on the settlement agreements because WMCV is

2  not a party and never authorized SMI to settle these claims.  For the same reason, the breach of

3  good faith and fair dealing claims fail.  Finally, the deceptive trade practices claims also fail

4  because there is no evidence WMCV knew SMI was secretly and fraudulently settling claims.

5  Finally, there is no right to declaratory relief under either Defendants' claims.

6        **1.**      **No Right of Recovery Exists for Any of the Contract Counterclaims.**

7       The Defendants cannot recover under any contract claims.  Any affirmative tender of

8  performance is excused when performance has, in effect, been prevented by other party to

9  contract.  Cladianos v. Friedhoff, 69 Nev. 41, 45, 240 P.2d 208, 210 (1952).  A party who

10  commits the first breach of a contract cannot maintain an action against the other for a

11  subsequent failure to perform.  Bradley v. Nevada-California-Oregon Ry., 42 Nev. 411, 178 P.

12  906 (1919).  The Defendants do not have a right to enforce or seek damages under the lease

13  agreements as they have been in default since 2008 and do not have a valid basis or reason for

14  refusing to pay rent.  WMCV properly followed the lease termination requirements and properly

15  evicted both Defendants as a result of their failure to pay rent and other charges.  Therefore,

16  there is no enforceable right or damages available pursuant to the breach of contract claims.

17       Moreover, the Defendants cannot enforce the Releases fraudulently obtained by SMI.  It

18  is undisputed that WMCV is not a party to the settlement agreements.  Both agreements are

19  executed by the nonexistent entity "World Market Center – Las Vegas [INC.] a [Nevada

20  corporation]".  Further, it is undisputed that WMCV had no role in the negotiation of the

21  settlement agreements and that the settlement agreements are riddled with errors and

22  inconsistencies.  Defendants have failed to show any valid reason to hold WMCV to obligations

23  to which it never committed.

24       The Defendants, therefore, have no basis to recover on any of their contract claims.

25  There is no evidence that WMCV did anything but properly provide the lease space it offered

26  and agreed to provide in the lease agreements and there is no basis to hold WMCV to obligations

27  it never agreed to in the fraudulent release agreements.  Therefore, WMCV is entitled to a

28  judgment in its favor and a defense verdict on these counterclaims.

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

### 2.    <u>No Basis for the Deceptive Trade Practice Claims.</u>

WMCV, who never knew what SMI was doing, cannot be held liable for deceptive trade practices.  The Defendants have filed counterclaims based on NRS 598.0915, which provides an extensive list of actions defined by Nevada to be deceptive trade practices.  <u>See</u> NRS 598.0915. However, none of the alleged conduct against WMCV fits into the categories provided under the statute.    Moreover, the defining characteristics of a deceptive trade practice require the knowledge of the party acting in order to be liable.  <u>See</u> NRS 598.0915.1-.16.   Interpreting, Nevada's deceptive trade practice statute, the Ninth Circuit Court of Appeals has found that where a party disseminates information but has no control over how a third party advertises, it cannot be held liable for a deceptive trade practice.  <u>See</u> <u>Wilson v. Stratosphere Corp.</u>, 371 Fed. Appx. 810, 2010 WL1050142 (9th Cir).  In the <u>Wilson</u> case, the court found that plaintiff could not hold the Stratosphere liable for additional fees charged by hotels.com simply because the Stratosphere provided its room rates to the website.  <u>Id.</u> at 811.

SMI representatives admitted they acted without WMCV's knowledge.  Mr. Birdwell confirmed SMI knew it was settling claims without WMCV's authority and specifically did so in a manner that would ensure WMCV was left in the dark and would not receive any funds from the settlements.  Further, WMCV terminated SMI prior to the execution of the fraudulent release agreements and there is no evidence WMCV ever made representations, after that date, that SMI could settle these claims.   Therefore, there is no evidence of a fraudulent or intentional misrepresentation by WMCV and no evidence that its conduct and relation to SMI was in any way deceptive.   Further, SMI's intentional misconduct, admittedly done without WMCV's knowledge, cannot serve as a basis for a deceptive trade practices claim against WMCV.  In these circumstances, WMCV is entitled to a defense verdict on these claims.

### 3.    <u>No right to Declaratory Relief.</u>

WMCV is entitled to a judgment in its favor on the declaratory relief claims.  To obtain declaratory relief, a justiciable controversy must exist between persons whose interests are adverse, the plaintiff must have a legally protected interest in the controversy and the issue involved must be right for judicial determination.  <u>Knittle v. Progressive Cas. Ins. Co.</u>, 112 Nev.,

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   8, 10, 908 P.2d 724, 725 (1996).  A hypothetical speculative controversy is not sufficient to

2   warrant declaratory relief.  Id. at 11, 908 P.2d at 726.  Further, declaratory relief is "not intended

3   to furnish [a plaintiff] with a second cause of action for the determination of identical issues".

4   Josephsen v. EMC Mort. Corp., 2:10-cv-336-JCM-PAL, 2010 U.S. Dist. Lexus 128053, at *8

5   (D. Nev. Nov. 19, 2010).

6          Neither Global Accents nor Couture has ever defined their declaratory relief claims.

7   Both the counterclaims by Global Accents (#35) and Couture (#62) list declaratory relief as the

8   fourth claim for relief in the counterclaims.  However, neither defines what declaration they

9   seek, what issue the court must resolve or how the court is to determine what the appropriate

10  resolution.  Instead, it appears the declaratory relief claims have been added simply as a catchall.

11  This is an improper and unwarranted use of the cause of action and in all likelihood it will be

12  duplicative of any other decision made by the Court on the other direct claims by WMCV and/or

13  the counterclaims addressed above.

14         At best, Global Accents and Couture may be seeking a declaration that SMI had apparent

15  authority.  For all the reasons addressed above, neither Global Accents nor Couture can provide

16  sufficient evidence to demonstrate that WMCV held SMI out with the authority to fully

17  negotiate, settle and release claims on its own.  As such, Global Accents and Couture will not

18  have sufficient evidence to obtain a declaration from this Court that the apparent authority

19  existed, that they subjectively believed that it existed and that they reasonably relied on that

20  apparent authority.  Therefore, WMCV is entitled to a judgment in its favor on this claim.

21  **V.**     **CONCLUSION.**

22         WMCV is entitled to a judgment and damages in its favor.   There is overwhelming

23  evidence that both Global Accents and Couture breached their Lease obligations without any

24  valid defenses.  Further, there will be insufficient evidence presented that WMCV cloaked SMI

25  in the authority to fully resolve and settle claims without any input from WMCV.  Even if such

26  apparent authority existed, the Defendants reliance on that authority was unreasonable.  Both

27  Defendants resolved their cases through purported settlement and release agreements riddled

28  with errors that should have called into question the validity of the release and the validity of

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC:11320-004 1817970_1 11/8/2012 3:31 PM

1   SMI's authority.  Because both Defendants turned a blind eye to these issues, they cannot seek

2   any benefit from the release agreements.  For these same reasons, all of the Defendants'

3   counterclaims fail.  WMCV, therefore, is entitled to its damages, already established by this

4   Court, its attorney's fees and costs and interest based on the Lease Agreements.

5          Dated this <u>8th</u> day of November, 2012.

6

7                                          MARQUIS AURBACH COFFING

8

9                                          By /s/ Jason M. Gerber, Esq.
                                              Terry A. Coffing, Esq.
10                                            Nevada Bar No. 4949
                                              Jason M. Gerber, Esq.
11                                            Nevada Bar No. 9812
                                              Jack F. DeGree, Esq.
12                                            Nevada Bar No. 11102
                                              10001 Park Run Drive
13                                            Las Vegas, Nevada  89145
                                              Attorney(s) for WMCV Phase 3, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC:11320-004 1817970_1 11/8/2012 3:31 PM