MICHAEL B. LEE, ESQ.
Nevada State Bar No. 10122
MICHAEL B. LEE, P.C.
2000 S. Eastern Avenue
Las Vegas, Nevada 89104
Telephone:     (702) 477.7030
Facsimile:      (702) 477.0096
Attorneys for Defendant Global Accents

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WMCV PHASE 3, LLC, a Delaware limited liability company,<br><br>                    Plaintiff,<br><br>vs.<br><br>SHUSHOK & MCCOY, INC., a Texas corporation; MATTHEW J. TRAVIS, an individual; MATT TURNER, an individual; RICHARD BIRDWELL, an individual; GLOBAL ACCENTS, INC., a California corporation; COUTURE INTERNATIONAL, INC., a Quebec corporation; DOES I through X, inclusive; ROE ENTITIES I through X, inclusive,<br><br>                    Defendants. | Case No.:        2:10-cv-00661-RCJ-RJJ<br><br>**DEFENDANT GLOBAL ACCENTS, INC.'<br>CLOSING BRIEF** |

Defendant Global Accents, Inc. ("Global Accents"), by and through its counsel of record at the law firm of MICHAEL B. LEE, P.C., hereby files this Closing Brief ("Brief") in the above matter.  Presently before this Honorable Court is Plaintiff's WMCV PHASE 3, LLC. ("Plaintiff," "WMCV," or "World Market Center") action against Global Accents, SHUSHOK & MCCOY, INC. ("SMI"), MATTHEW J. TRAVIS ("Travis"), MATT TURNER ("Turner"),[1] RICHARD BIRDWELL ("Birdwell") ("SMI," "Travis," and "Birdwell" are collectively referred to as "SMI Defendants"), and COUTURE INTERNATIONAL, INC. ("Couture").

/ / / /

/ / / /

---

[1]       Mr. Travis filed a petition for Chapter 13 bankruptcy in Texas; therefore, this action is not proceeding against Turner.

MICHAEL B. LEE, P.C.<br>2000 So. EASTERN AVENUE<br>LAS VEGAS, NEVADA 89104<br>TEL – (702) 477.7030; FAX – (702) 477.0096

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

## I.    INTRODUCTION

### A.    <u>Overview</u>

Three separate companies believed that SMI had the authority to negotiate lease termination and release agreements on behalf of World Market Center.  Three.  Two companies, Global Accents and Couture, actually entered into agreements and funded them, and the third, had negotiated its release agreement before World Market Center finally intervened.  Three companies subjectively believed that SMI had the authority to enter into lease termination agreements.  Three different companies believing, independently, that SMI had the authority to negotiate and enter into a release agreement demonstrates that their subjective was objectively reasonable.  For, as we know from this trial, World Market Center would represent to defaulting tenants that SMI had full and final authority to resolve lease disputes.  In total, World Market Center cloaked SMI in the full and final apparent authority to resolve lease disputes.

Global Accents opening statement promised that the evidence would show that:

(1)    World Market Center told Global Accents to negotiate with SMI;

(2)    Esmeralda Dominguez, the collection manager for World Market Center,[2] said that SMI had full and final authority to resolve the lease dispute;

(3)    SMI said that it had full and final authority to resolve the lease dispute;

(4)    World Market Center rebuffed Global Accents when it attempted to discuss the lease dispute, with World Market Center pushing Global Accents back to SMI;

(5)    Jack Kashani ("Kashani"), the co-manager/owner of World Market Center, told Danny Partielli ("Partielli"), the president of Global Accents, that he should accept the offer from SMI;[3]

---

[2]    Ms. Dominguez did not appear as a witness in this matter.  The only person with personal knowledge of conversations with between her and Mr. Partielli was Mr. Partielli.  No evidence at trial contradicted Mr. Partielli's testimony regarding these conversations.

[3]    Initially, Mr. Kashani perjured himself on direct examination when he denied that Mr. Partielli told him of the settlement offer for $8,200; asked for help in reducing or eliminating the dispute; and he responded that it seemed like a good settlement since Global Accents avoided the risk of paying the full value of the lease.  Global Accents impeached Mr. Kashani with his declaration, prepared by World Market Center's counsel, that this Honorable Court admitted as Trial Exhibit 534.  Notably, Trial Exhibit 534 was utilized as an exhibit initially by World Market Center in support of its Opposition to Global Accents' Motion for

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL. – (702) 477.7030; FAX – (702) 477.0096

(6)     World Market Center never informed Global Accents that it terminated SMI during the negotiation period;

(7)     the evidence would show that Global Accents subjectively believed that SMI had apparent authority to negotiate into the Global Accents Release; and

(8)     the evidence would show that Global Accents subjective belief was objectively reasonable.

Global Accents proved each and every one of these promises from the opening statement. In fact, Global Accents provided supporting documentary evidence support each and every one of these claims.  Incredibly, all of Global Accents' evidence was undisputed.  World Market Center never presented any evidence to dispute that Ms. Dominguez told Mr. Partielli on several occasions that only SMI had the authority to resolve the lease dispute.  Similarly, even Aaron Birdwell ("Birdwell"), the collection agent from SMI, confirmed that he made these representations as well.  Finally, World Market Center volunteered that three separate companies independently had agreed to settlements with SMI after being directed by World Market Center to do so.  In total, it is undisputed that Global Accents subjectively, and objectively, believed that SMI had the authority to negotiate the Global Accents Release.  This illustrates that Global Accents is entitled to prevail on its claims, and World Market Center's case lacks merit.

**B.     Summary of the Undisputed Facts**

The following facts as based on the admitted evidence, testimony of Jonathan Leleu ("Leleu"), Mr. Kashani, and Mr. Partielli.  The space Global Accents received never comported to the promises made by World Market Center, since it was: (1) smaller than represented; (2) not located near other floor-covering vendors; and (3) in a "dead space" unlikely to attract causal buyers.  Joint Exhibits 20, 29, 533.  After paying for the space during the time it occupied it, Global Accents tendered possession back to World Market Center in an effort to work out new

Summary Judgment (EFC No. 90) as Exhibit 2.  Later, shortly before the original trial date, Global Accents utilized this declaration in its Motion in Limine to Judicially Estop Plaintiff From Denying Prior Admissions and/or Benefits Received From SMI Defendants (EFC No. 169) as Exhibit D.  World Market Center filed its Response to Global Accent's Motion in Limine to Judicially Estop Plaintiff from Denying Prior Admissions and/or Benefits Received from SMI Defendant (EFC No. 171) that specifically mentioned Mr. Kashani's declaration.  EFC No. 171 at 7:23-24.

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1    space.  *Id.*  Nevertheless, World Market Center evicted Global Accents.  Joint Exhibit 17.

2    During all times, Plaintiff held itself out as "World Market Center Las Vegas."  Joint Exhibits 1-

3    3, 9-11, 17-18, 23, 527-30, 533.

4         Initially, World Market Center contacted Global Accents, by way of Mr. Partielli,

5    regarding the eviction and lease dispute in late 2008.  Joint Exhibits 17, 530.  World Market

6    Center advised Mr. Partielli to contact Ms. Dominguez to resolve the dispute.  Exhibit 530.  On

7    or about January 6, 2009, Julia Jesinger ("Jesinger"), the Tenant Affairs Manager for WMCV,

8    sent an e-mail to Mr. Partielli, the President of Global Accents, notice and order for summary

9    eviction.  Trial Exhibit 17.  On the same day, Ms. Jesinger sent Global Accents a fax with notice

10    to remove its property from the Premises.  *Id*.  Mr. Partielli replied that the space had been

11    vacated and tendered to WMCV with its keys at the end of the first show when Global Accents

12    occupied C-775.

13    In mid-to-late January, 2009, Mr. Partielli, on behalf of Global Accents, contacted Ms.

14    Dominguez to discuss resolving and settling any Global Accents debt to World Market Center

15    and to discuss leasing a suitable space at World Market Center.  However, Ms. Dominguez

16    informed Mr. Partielli that she could not speak with him about the eviction issue, or any debt of

17    Global Accents to World Market Center, and represented to Mr. Partielli, on behalf of World

18    Market Center, that the Global Accents debt and all matters relating to any amounts owed from

19    Global Accents to World Market Center has been referred and assigned to SMI for collection and

20    settlement,  that only SMI could discuss and settle any Global Accents debt to World Market

21    Center, and  that SMI had full and final authority for World Market Center to resolve any debt of

22    Global Accents to World Market Center.  She instructed Mr. Partielli to discuss, negotiate, and

23    settle any Global Accents debt with SMI only and to pay SMI upon reaching resolution.  She

24    further told Mr. Partielli that after Mr. Partielli resolved the past debt with SMI, he could contact

25    World Market Center to lease new space.  From this conversation, Mr. Partielli understood that

26    SMI had full and final authority to discuss, negotiate, settle and receive payment for any debt of

27    Global Accents to World Market Center and settle any Global Accents debt to World Market

28    Center and enter into a release agreement with Global Accents on behalf of World Market

Center.

Shortly thereafter, Mr. Partielli received a phone call from Aaron/Richard Birdwell ("Birdwell") who informed Mr. Partielli that he had full and final authority for World Market Center to discuss, negotiate, resolve, and settle any debt of Global Accents to World Market Center on behalf of World Market Center. Joint Exhibits 19, 31-33. Around January 19, 2009, Mr. Birdwell sent an e-mail to Mr. Partielli that requested a settlement of $28,114.73 to settle the lease dispute with mutual releases for both World Market Center and Global Accents. Trial Exhibit 19. Notably, despite the alleged $360,831.00 in unpaid past and future rent, the negotiations for settlement involved the unpaid rent only. No evidence appears that Global Accents, SMI, or World Market Center ever negotiated against the $360,831.00 figure.

In response, Mr. Partielli explained that Global Accents had only occupied the space for five day, which it had paid for, and noted the other issues with the square footage, surrounding vacancies, and lack of proximity to other floor-covering vendors. Joint Exhibits 20-22, 29, 533. Additionally, he also explained that Global Accents had already paid for the space during the time it actually possessed the area and tendered the key back to World Market Center at the end of the first show by Global Accents. *Id.*

On or about February 2, 2009, Mr. Partielli contacted Mr. Birdwell to meet at the Property during the upcoming winter tradeshow so that Mr. Partielli could demonstrate in person to Mr. Birdwell the issues with the space mentioned and to measure the prior showroom with Mr. Birdwell, and to discuss issues with the Amended Global Accents Lease. Joint Exhibit 21. However, Mr. Birdwell indicated that he was not attending, and that Mr. Partielli would need to contact Ms. Dominguez to meet her while Mr. Partielli would be in Las Vegas to speak about those issues. *Id.* Thereafter, Mr. Partielli contacted Ms. Dominguez requesting to meet her in person while Mr. Partielli would be in Las Vegas, but she referred him back to SMI to resolve the lease dispute and any debt owed by Global Accents to World Market Center.

Once again, Ms. Dominguez specified that SMI had full and final authority for World Market Center to discuss, negotiate, settle, and receive payment for any debt of Global Accents to World Market Center, and he would have to negotiate exclusive with them. This lead Mr.

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1  Partielli to believe that SMI  had full and final authority to discuss, negotiate, settle and receive

2  payment for any debt of Global Accents to World Market Center including negotiating release

3  agreements.  Ms. Dominguez represented to Mr. Partielli that once he resolved the debt issue

4  with SMI, World Market Center would discuss leasing new space to Global Accents.  Based on

5  that conversation, Mr. Partielli understood that SMI had complete authority on behalf of World

6  Market Center to discuss, negotiate, settle, and receive payment for any debt of Global Accents

7  to World Market Center and to negotiate the lease dispute.

8          Sometime in March 2009, World Market Center removed the Global Accents account

9  from SMI.  Joint Exhibit 23.  However, World Market Center never notified Global Accents of

10  this action.  SMI never informed Global Accents that the Global Accents account was removed

11  from SMI by World Market Center.  Similarly, Global Accents never received any notice from

12  any successor collection agents for World Market Center that any Global Accents debt to World

13  Market Center had been assigned to such successor collection agents.  Incredibly, World Market

14  Center also failed to provide at least two other companies with notice of this termination.  This

15  failure lead to these two other companies reaching similar agreements like the Global Accents

16  Release with World Market Center by way of its agent, SMI.

17          On or about May 11, 2009, Mr. Partielli, on behalf of Global Accents, communicated

18  with Mr. Birdwell to present a settlement offer.  Trial Exhibit 22.  As World Market Center's

19  summer tradeshow was approaching, Global Accents was interested in presenting there.  As

20  such, Mr. Partielli offered to either (1) maintain the security deposit plus Global Accents'

21  payment of two months of rent or (2) Global Accents payment of $28,000 less security deposit

22  and the ability to present at another show at no additional rental cost.  *Id.*  The overall goal was

23  to pay approximately $8,200.00 after the offsets.  As before, Mr. Partielli noted the issues with

24  the Amended Global Accents lease.  *Id.*  Mr. Birdwell contacted Ms. Dominguez and relayed the

25  offer.  Joint Exhibit 33 at p. 3 lls. 44:4-22.

26          On June 25, 2009, World Market Center terminated SMI's authority to conduct

27  commercial collections and recover past due debt and rent from tenants of the Property by way

28  of an e-mail.  Joint Exhibit 23.  Unbelievably, World Market Center was aware that the SMI

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

Defendants had continued to work on the Global Accents account despite the removal of the file back in March. *Id.* Once again, World Market Center never informed Global Accents that it had terminated SMI as its collection agent. Sometime thereafter, World Market Center retained a new collection agency and assigned the Global Accents account to them. However, neither the new collection agency nor World Market Center notified Global Accents that World Market Center had reassigned its file to a new collection agency. Similarly, neither World Market Center nor the new collection agency informed Global Accents that World Market Center had terminated SMI, and SMI never communicated to Global Accents that it did not have authority from World Market Center to continue with collection efforts with Global Accents. Nevertheless, SMI continued to work on the collection of the Global Accents account.

Sometime in late July, early August, 2009, Mr. Partielli received an offer from SMI to resolve the Global Accents Lease dispute for $8,200.00 to settle any debts owed by Global Accents to World Market Center. Prior to responding to this offer, Mr. Partielli, on behalf of Global Accents, contacted Mr. Kashani regarding the negotiation and settlement. Exhibit 534. Prior to this contact, Mr. Kashani received weekly reports regarding defaulting tenants, which included the collection efforts against Global Accents. Thus, Mr. Kashani had either actual or constructive knowledge regarding the collection efforts against Global Accents. During that conversation, Mr. Partielli told Mr. Kashani that Global Accents had recently received an offer from SMI to settle any debts of Global Accents to World Market Center for $8,200. However, Mr. Partielli explained that he did not think the settlement was fair because the Amended Global Lease did not meet his expectations based upon what was represented to him. *Id.* Mr. Partielli asked Mr. Kashani if he could help him reduce the settlement or eliminate the dispute. *Id.* In response, Mr. Kashani informed Mr. Partielli that it was a good deal and for Global Accents to go forward with it since World Market Center generally pursued all claims in full. *Id.* Mr. Kashani also informed Mr. Partielli that once the proposed settlement was done and Global Accents had paid the $8,200.00 settlement, Mr. Kashani would put him in contact with a leasing agent to obtain new space.

/ / / /

After this conversation with Mr. Kashani, Mr. Partielli believed that SMI had full, complete, and final authority for World Market Center to settle any debt of Global Accents with World Market Center and to enter into and negotiate a lease termination and release agreement on behalf of World Market Center with Global Accents.  The term of the settlement was consistent with the prior settlement offer that Mr. Partielli had made in May, and represented two months of rent.  In turn, after the conversation with Mr. Kashani, Mr. Partielli contacted SMI and agreed to the settlement of any and all Global Accents debt to World Market Center for $8,200.00.  Global Accents wire transferred and paid such $8,200.00 within a few days after Mr. Partielli's conversation with Mr. Kashani to go forward with the settlement.  Joint Exhibits 24, 27.  This settlement payment was made to SMI on behalf of World Market Center according to the payment instructions received by Global Accents from SMI.

On August 26, 2009, Mr. Partielli, on behalf of Global Accents signed a Lease Termination and Release Agreement ( "Global Accents Release") which: (1) Global Accents received from SMI; (2) Matthew Turner, a principal and collection agent for SMI, signed as a "Director" on behalf of World Market Center Las Vegas, Inc.; and (3) releasing Global Accents from its liability under the Amended Global Accents Lease in exchange for $8,200 to be paid directly to World Market Center.  Joint Exhibit 26.  Mr. Partielli believed that World Market Center had drafted the Global Accents Release, approved it, and transmitted it to SMI to finalize with Mr. Partielli's signature.  He also understood that it was non-negotiable, and that he could not change any of the terms.

After finalizing the Global Accents Release, sometime in late 2009, Mr. Partielli contacted World Market Center regarding leasing new space.  Trial Exhibit 533.  However, World Market Center informed him SMI did not have authority to enter into the Global Accents Release.  *Id.*  This was the first time that Global Accents received notice that SMI did not have authority to negotiate the Global Accents Release, and that World Market Center did not enter into it.  Mr. Partielli explained that SMI negotiated the deal, and Mr. Kashani had advised him to proceed with it, so he was surprised that the debt was still open.  *Id.*  Nevertheless, World Market Center denied that there was a settlement and initiated this lawsuit.  Mr. Partielli's conduct after

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

the settlement, specifically contacting World Market Center for leasing new space, was in conformity with discussions of Mr. Partielli with Mr. Kashani and Ms. Dominguez to contact World Market Center for leasing new space after settlement Global Accents debt to World Market Center through SMI, and was initiated voluntarily by Mr. Partielli.

## II.  DISCUSSION

SMI was the agent of World Market Center with the apparent authority to negotiate the Global Accents Release.  World Market Center's lawsuit lacks any merit, and judgment should be awarded to Global Accents on all its claims, and against World Market Center as to its claims. In support, this Discussion is organized into seven Parts.  Part A sets forth that the fallacy that "World Market Center" and WMCV Phase 3 are distinct entities is meritless.  Part B illustrates that World Market Center cloaked SMI in apparent authority to negotiate the Global Accents Release.  Part C demonstrates that the Global Accents Release is an accord and satisfaction of the First Amended Global Accents Lease, resolve any and all disputes arising therein.  Part D asserts that World Market Center's conduct is marred with unclean hands as a result of its failure to notify Global Accents, let alone anyone, of the SMI termination.  Part E addresses Global Accents' counter claim for breach of contract, and how World Market Center materially breached that agreement through this litigation.  Part F argues that World Market Center prosecuted this matter in bad faith.  Finally, Part G seeks judgment against the SMI Defendants on all of Global Accents' claims against it.

### A.    World Market Center and World Market Center Are Understandably Same Entity

Global Accents' belief that World Market Center Las Vegas, Inc. and World Market Center were the same entity was reasonable.  *See Collins v. Burns*, 103 Nev. 394, 397, 741 P.2d 819, 821 (1987) (citing *Sippy v. Cristich*, 4 Kan.App.2d 511, 609 P.2d 204, 208 (1980)) (justifiable reliance must be reasonable).  The terms "World Market Center Phase 3, LLC," "World Market Center," and "World Market Center Las Vegas" were used interchangeably by World Market Center and World Market Center Las Vegas' directors, staff, employees, and leasing agents. "World Market Center" is the name appearing on the facade of the World Market

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

Center Las Vegas building. "World Market Center Las Vegas" appeared on various business cards of the directors, staff, employees, and leasing agents of World Market Center Las Vegas.

Similarly, "World Market Center' and 'World Market Center Las Vegas" appeared on various email communications of World Market Center Las Vegas personnel to Global Accents. World Market Center's policy required its vendors to refer to it as "World Market Center Las Vegas," and it also had this placement on all of its correspondence and communications to the outside world. Furthermore, Global Accents only had one lease agreement with World Market Center, so no confusion as to the distinction between World Market Center Las Vegas and World Market Center was present. Global Accents had no independent knowledge of the corporate structure and/or legal names of owners of the Property. In that light, Global Accents' reliance that World Market Center Las Vegas, Inc. was the same as World Market Center Las Vegas and/or World Market Center was reasonable under these circumstances.

### B. SMI Had Apparent Authority to Negotiate Global Accents Release

#### 1. *Legal Standard for Apparent Authority*

The undisputed facts show that World Market Center cloaked SMI in apparent authority to negotiate the Global Accents Release. A principal is bound by the acts of its agent while acting in the course of his or her employment, and a principal is liable for those acts within the scope of the agent's authority. *Nevada Nat'l Bank v. Gold Star Meat Co.*, 89 Nev. 427, 429, 514 P.2d 651, 653 (1973). An agent's authority may be express, implied, or apparent. *Dixon v. Thatcher*, 103 Nev. 414, 417, 742 P.2d 1029, 1031 (1987). In Nevada, "apparent authority" is that authority which a principal holds its agent out as possessing, or permits the agent to exercise or to represent him- or herself as possessing, under such circumstances as to estop the principal from denying its existence. *Dixon*, 103 Nev. at 417, 742 P.2d at 1031; *Myers v. Jones*, 99 Nev. 91, 93, 657 P.2d 1163, 1164 (1983); *Gold Star Meat*, 89 Nev. at 429, 514 P.2d at 653.

Furthermore, World Market Center is bound by SMI's fraud related to the Global Accents Release. A principal may be bound by acts of its agent as to third parties who have no reason to know of the agent's improper conduct even when the agent acts for his own motives and without benefit to the principal. *Homes Savings Assoc. v. General Electric Credit Corp.*,

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1   101 Nev. 595, 600, 708 P.2d 280, 283 (1985).  In general, an agency relationship ends by: (1)

2   agent's death; (2) principal's death, cessation of existence, or suspension of power; (3)

3   principal's loss of capacity; (4) the conclusion of an agreement between the principal and agent

4   where the agent should no longer reasonably conclude that the principal would assent to the

5   agent's taking action of the principal's behalf; (5) a manifestation of revocation or a

6   renunciation; or (6) the occurrence of a circumstance described by statute.  Restatement (Third)

7   of Agency § 3.06(1)-(6).  However, even after a principal terminates an agent's actual authority,

8   it does not end the apparent authority held by the agent.  *Id.* at § 3.11(1).  The apparent authority

9   only ends when "it is no longer reasonable for the third party with whom an agent deals to

10  believe that the agent continues to act with actual authority."  *Id.* at § 3.11(2).  Otherwise,

11  "[a]pparent authority protects third parties who interact with an agent on the basis of the

12  principal's prior manifestation and who lack notice that the agent's actual authority has

13  terminated."  *Id.* at § 3.11, comment c.

14         Global Accents proved, by undisputed evidence, that it had subjective and reasonably

15  objective belief that SMI was the agent for World Market Center.  A party claiming apparent

16  authority of an agent as a basis for contract formation must prove (1) that he subjectively

17  believed that the agent had authority to act for the principal and (2) that his subjective belief in

18  the agent's authority was objectively reasonable. *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 113

19  Nev. 346, 352, 934 P.2d 257, 261 (1997) (citing *Smith v. Hansen, Hansen & Johnson*, 63

20  Wash.App. 355, 818 P.2d 1127, 1135 (1991)).  Apparent authority is, in essence, an application

21  of equitable estoppel, of which reasonable reliance is a necessary element. *Id.* (citing *Ellis v.*

22  *Nelson*, 68 Nev. 410, 418, 233 P.2d 1072, 1076 (1951) (additional citation omitted).  "The party

23  who claims reliance must not have closed his eyes to warnings or inconsistent circumstances."

24  *Tsouras v. Southwest Plumbing and Heating*, 94 Nev. 748, 751, 587 P.2d 1321, 1322 (1978).

25  Apparent authority, including a third party's reasonable reliance on such authority, is a question

26  of fact. *Gen. Builders, Inc.*, 113 Nev. at 352, 934 P.2d at 261 (citing *Smith*, 818 P.2d at 1133).

27  / / / /

28  / / / /

2.   *Undisputed Facts Illustrating Apparent Authority*

a.   Three Separate Companies Believed SMI had Authority to Resolve Lease Disputes Based on World Market Center's Conduct

Three separate companies believed that SMI had the authority to negotiate lease termination and release agreements on behalf of World Market Center. Three. Two companies, Global Accents and Couture, actually entered into agreements and funded them, and the third, had negotiated its release agreement before World Market Center finally intervened. Three companies subjectively believed that SMI had the authority to enter into lease termination agreements. Three different companies believing, independently, that SMI had the authority to negotiate and enter into a release agreement demonstrates that their subjective was objectively reasonable. For, as we know from this trial, World Market Center would represent to defaulting tenants that SMI had full and final authority to resolve lease disputes. In total, World Market Center cloaked SMI in the full and final apparent authority to resolve lease disputes.

b.   Ms. Dominguez Held out SMI as Agent

World Market Center cloaked SMI in apparent authority to enter into the Global Accents Release. It is undisputed that World Market Center retained SMI to act as its commercial collection agent for the Global Accents account, that Ms. Dominguez represented to Mr. Partielli that SMI had full and final authority of World Market Center to negotiate a settlement on at least 2 occasions, and that Mr. Birdwell represented to Mr. Partielli that he had full and final authority on behalf of World Market Center to negotiate a settlement. Notably, when Mr. Partielli would contact Ms. Dominguez during the negotiation period, she would refer him back to SMI and specify that they had full and final authority of World Market Center to resolve the lease dispute. Ms. Dominguez never made any limitation on this authority, and specifically stated that Mr. Partielli needed to negotiate with SMI to resolve the lease dispute before he could obtain new space. In fact, Ms. Dominguez informed Mr. Partielli that she could not speak with him about the eviction issue, or any debt of Global Accents to World Market Center, and represented to Mr. Partielli on behalf of World Market Center that the Global Accents debt and all matters relating to any amounts owed from Global Accents to World Market Center has been referred and

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

assigned to SMI for collection and settlement,  that only SMI could discuss and settle any Global Accents debt to World Market Center, and  that SMI had full and final authority for World Market Center to resolve any debt of Global Accents to World Market Center, and instructed Mr. Partielli to discuss, negotiate, and settle any Global Accents debt with SMI only and to pay SMI upon reaching resolution.

> c.     <u>Mr. Kashani Induced Global Accents Into Accepting Global Accents Release</u>

Furthermore, Mr. Kashani also cloaked SMI with apparent authority to negotiate the Amended Global Accents Lease dispute for $8,200.  When Mr. Partielli called and explained that he had an offer from SMI, Mr. Kashani stated it was a good deal and that Mr. Partielli should accept it.  As Mr. Kashani was the Co-Manager of World Market Center and received weekly status reports regarding delinquent tenants, including Global Accents, he had some knowledge, actual or imputed, regarding the collection amounts and efforts.  This knowledge and his statements to Mr. Partielli to go forward with the settlement cloaked SMI in apparent authority to enter into the Global Accents Release.  Further, Mr. Kashani did not warn or inform Mr. Partielli that SMI had been terminated or that the settlement amount of $8,200 was shockingly low – rather, he told Mr. Partielli to go forward with it.

> d.     <u>Totality of Evidence Illustrates Subjective Belief</u>

Global Accents' subjective belief that SMI had the apparent authority to enter into the Global Accents Release was reasonable.  Mr. Partielli subjectively believed in this authority based on the multiple statements by Ms. Dominguez that SMI and full and final authority of World Market Center to resolve the lease dispute.  He also had a subjective belief based on the statements of Mr. Birdwell, which were consistent with Ms. Dominguez's statements.  Finally, he specifically mentioned SMI while speaking with Mr. Kashani, whom never denied that SMI had such authority.

Moreover, Global Accents belief that SMI had authority to enter into the Global Accents Release was objectively reasonable.  Almost immediately after receiving communications from Mr. Maricich and Ms. Jesinger regarding the eviction, Trial Exhibit 530, and his conversation

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1    with Ms. Dominguez, Mr. Birdwell contacted Mr. Partielli.  Trial Exhibit 19.  Furthermore, after

2    Mr. Birdwell referred Mr. Partielli to Ms. Dominguez to discuss the lease issue, Joint Exhibit 21,

3    she immediately referred him back to Mr. Birdwell and reiterated that SMI had full and final

4    authority of World Market Center to resolve the lease dispute.    Finally, Mr. Partielli's

5    conversation with Mr. Kashani in July or August 2009 also reiterated that SMI had authority to

6    resolve the lease dispute.  Trial Exhibit 534.

7         $8,200 was objectively reasonable consideration for the Global Accents Release.  The

8    initial settlement offer by SMI was $28,114.73.  Trial Exhibit 19.  However, Global Accents'

9    position related to the surrender of the space after only occupying it for five days along with the

10   payment for that use of approximately $8,000 provided a reasonable basis to dispute why the

11   demand was too high.  *Id.*  The ultimate settlement offer reflected payment for one additional

12   month of rent, which was a fair resolution in light of the square footage, location, and other

13   issues.  In total, Global Accents had reasonable reliance in SMI's authority to enter into the

14   Global Accents Release on behalf of World Market Center.

15        World Market Center is bound by the Global Accents Release despite not knowing of

16   SMI's improper and self-motivated conduct.  *Homes Savings Assoc. v. General Electric Credit*

17   *Corp.*, 101 Nev. 595, 600, 708 P.2d 280, 283 (1985).  World Market Center admitted that it held

18   out SMI as its commercial collection agent to Global Accents in January 2009.  It also admitted

19   that it knew, in June 2009, that SMI continued to work on the Global Accents account despite the

20   removal of that file from it in March 2009.  Similarly, despite having actual knowledge the

21   SMI's continued collection activities, World Market Center never notified Global Accents that

22   SMI did not have the authority to continue with the negotiations.  As such, it was reasonable for

23   Global Accents to believe that SMI continued to act with actual authority.  Restatement §

24   3.11(2).  This apparent authority protected Global Accents on the basis of the World Market

25   Center's prior manifestation and who lack notice that the agent's authority had terminated.  *Id.* at

26   § 3.11, comment c.  While World Market Center denies that SMI had express authority, no

27   dispute exists that SMI had World Market Center's apparent and/or implied authority.  *Dixon v.*

28   *Thatcher*, 103 Nev. 414, 417, 742 P.2d 1029, 1031 (1987).  As such, World Market Center is

legally estopped from denying the existence of an agency relationship.  *Dixon*, 103 Nev. at 417, 742 P.2d at 1031; *Myers v. Jones*, 99 Nev. 91, 93, 657 P.2d 1163, 1164 (1983); *Gold Star Meat*, 89 Nev. at 429, 514 P.2d at 653.  Therefore, World Market Center is bound by the Global Accents Release.

## C.  The Global Accents Release was an Accord and Satisfaction

The Global Accents Release was an accord and satisfaction of any damages arising under the First Amended Global Accents Lease.  To successfully establish the fact of an accord and satisfaction with regard to an unliquidated claim, the general rule is that a litigant must satisfy three elements, to wit: (1) a bona fide dispute over an unliquidated amount; (2) a payment tendered in full settlement of the entire dispute; and (3) an understanding by the creditor of the transaction as such, and acceptance of the payment.  *Pierce Lathing Co. v. ISEC, Inc.*, 114 Nev. 291, 297, 956 P.2d 93, 97 (1998) (citing *Thompson v. Thompson*, 41 Cal.App.4th 1049, 48 Cal.Rptr.2d 882 (1996).  Central to the issue, however, is that a meeting of minds with regard to a resolution of the claim be proved.  *Id.*  While certain conduct by a creditor may imply an accord and satisfaction as a matter of law, the intent of the parties to make a settlement is generally a question of fact.  *Id.* (citing Thompson, 48 Cal.Rptr.2d at 882).  "[A] prerequisite for the finding of an accord and satisfaction is a clearly established meeting of the minds."  *Matthews v. Collman*, 110 Nev. 940, 947, 878 P.2d 971, 976 (1994).

Here, it is undisputed that the Global Accents Release was an accord and satisfaction for any damages arising out of the First Amended Global Accents Lease.  As plead as Global Accents' fifth affirmative defense, World Market Center's claims are barred by the doctrine of accord and satisfaction.  The evidence showed that the damages arising out of the eviction for the First Amended Global Accents Lease was an unliquidated claim.  Furthermore, it showed that Global Accents had a bona fide dispute over the unliquidated amount based on the square footage, location, and previously paid compensation.  Similarly, it also showed that Global Accents tendered the $8,200 payment in full settlement of the entire dispute.  Finally, it proved that the Global Accents Release was an understanding by World Market Center, by way of its agent, SMI, of the transaction and acceptance of the payment to resolve the lease dispute.

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

**MICHAEL B. LEE, P.C.**
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1    In an action for breach of contract, plaintiff bears the burden to show she was damaged

2    and of proving the extent of those damages. *Bergstrom v. Estate of DeVoe*, 109 Nev. 575, 578,

3    854 P.2d 860, 862 (1993). Determining material breaches of contract depends on the nature and

4    effect of the violation in light of how and the particular contract was viewed, bargained for,

5    entered into, and performed by the parties. *J.A. Jones Const. Co. v. Lehrer McGovern Bovis*,

6    *Inc.*, 120 Nev. 277, n.37 294, 89 P.3d 1009, 1020 (2004). The common law uses five factors to

7    determine if a material breach has occurred. Restatement (Second) of Contracts § 241 (1981).

8    These factors include: (1) the extent to which the injured party will be deprived of the benefit

9    which he reasonably expected; (2) the extent to which the injured party can be adequately

10   compensated for that part of the benefit of which he will be deprived; (3) the extent to which the

11   party failing to perform or to offer to perform will suffer forfeiture; (4) the likelihood that the

12   party failing to perform or to offer to perform will cure his failure, taking into account of all the

13   circumstances including any reasonable assurances; and (5) the extent to which the behavior of

14   the party failing to perform or to offer to perform comports with the standards of good faith and

15   fair dealing. *Id.*

16   Furthermore, liability for breach of the implied covenant of good faith and fair dealings

17   arises "[w]here the terms of a contract are literally complied with but one party to the contract

18   deliberately countervenes the intention and spirit of the contract, that party can incur liability for

19   breach of the implied covenant of good faith and fair dealing." *Hilton Hotels v. Butch Lewis*

20   *Productions*, 107 Nev. 226, 232, 808 P.2d 919, 922-23 (1991). In such a situation, the non-

21   breaching party must prove that the other party acted "in a manner that is unfaithful to the

22   purpose of the contract [such that] the justified expectations' of the non-breaching party are

23   denied." *Id.* at 234, 808 P.2d at 923. "Whether the controlling party's actions fall outside the

24   reasonable expectations of the dependent party is determined by the various factors and special

25   circumstances that shape these expectations." *Id.* at 234, 808 P.2d 923-24.

26   Here, as explained in further detail below, World Market Center cannot prevail on its

27   cause for breach of lease and/or breach of the implied covenant of good faith and fair dealing as

28   World Market Center, by way of its agent with apparent authority, agreed to the Global Accents

Release.  "[A] settlement agreement is a contract, its construction and enforcement are governed by principles of contract law.  *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005) (citing *Reichelt v. Urban Inv. & Dev. Co.*, 611 F.Supp. 952, 954 (N.D.Ill.1985)).  Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration.  *Keddie v. Beneficial Insurance, Inc.*, 94 Nev. 418, 421, 580 P.2d 955, 956 (1978).  A contract can be formed when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later.  *Matter of the Estate of Kern*, 107 Nev. 988, 991, 823 P.2d 275, 277 (1991).  In the case of a settlement agreement, a court can compel compliance when material terms are certain.  *May*, 121 Nev. at 672, 119 P.3d at 1257 (citations omitted).

The terms of the Global Accents Release specified that:

> 2.  Termination of Lease.  As of the Termination Date, all parties to the Lease are fully and unconditionally released and discharged ((except as otherwise set out in this Agreement) from their respective obligations to perform each of the terms, covenants, and conditions set in the Lease and arising after the Termination Date.
>
> 5.  Mutual Release . . . Landlord and Tenant hereby release and forever discharge each other, and their respective partners, officers, directors, agents, trustees, beneficiaries, and employees, of and from any and all claims, acts, damages, demands, rights of action, and causes of action which each party ever had, now has, or in the future may have, against the other, arising from, under or in any way connected with the Lease.
>
> 6.  Compromise. . . This Agreement is made entirely as a compromise and for the purpose of terminating the Lease and settling and extinguishing the respective claims, acts, damages, demands, rights of action, or causes of action of the parties hereto, expect as otherwise stated or reserved hereunder.

The plain language of the Global Accents release terminated the Amended Global Accents Lease.  Similarly, it also released any claim for damages and causes of actions arising out of the Amended Global Accents Release.  Under the plain language of that agreement, World Market Center cannot prevail in this action as a matter of law.

Furthermore, even without the validation of the Global Accents Release, any and all debts of Global Accents to World Market Center were settled and extinguished, when with apparent authority to fully settle any Global Accents debt to World Market Center, SMI offered

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1    to settle any and all Global Accents debt to World Market Center for $8,200, and Global

2    Accents' acceptance and consideration of that agreement.

3        **D.    World Market Center is Marred With Unclean Hands**

4        Global Accents' fourteenth affirmative defense specified that World Market Center's

5    claims were is educed, modified and/or barred by the Doctrine of Unclean Hands.  The unclean

6    hands doctrine "bars a party from receiving equitable relief because of that party's own

7    inequitable conduct." *Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Records, Inc.*,

8    182 P.3d 764, 766 (Nev. 2008) (quoting *Food Lion, Inc. S.L. Nusbaum Ins. Agency, Inc.*, 202

9    F.3d 223, 228 (4th Cir. 2000)).  The unclean hands doctrine precludes a party from attaining an

10   equitable remedy when that party's "connection with the subject-matter or transaction in

11   litigation has been unconscientious, unjust, or marked by the want of good faith." *Id.* (quotation

12   omitted).  Litigants seeking equity must come with "clean hands." *Tracy v. Capozzi*, 98 Nev.

13   120, 122, 642 P.2d 591, 593 (1982).

14       Here, World Market Center is barred from making a claim for unjust enrichment because

15   of the existence of the Amended Global Accents Lease and the Global Accents Release, and its

16   unclean hands arising from its failure to notify Global Accents of the SMI termination despite its

17   numerous representations that SMI had full, final, and complete authority to negotiate any and all

18   debt.  World Market Center knew, on June 26, 2009 or sooner, that SMI continued working on

19   the Global Accents account despite being terminated in March 2009.  Nevertheless, World

20   Market Center never informed Global Accents that SMI was not authorized to do so.  World

21   Market Center's failure to notify Global Accents until months after the settlement of the SMI

22   termination despite having actual knowledge of the continued collection efforts marred World

23   Market Center with unclean hands.

24       **E.    World Market Center Breached the Global Accents Release**

25       World Market Center is in material breach of the Global Accents Release, including

26   breach of the implied covenant of good faith and fair dealing.  The plain language of that

27   agreement specified that World Market Center unconditionally released and discharged Global

28   Accents from its respective obligations to perform each of the terms, covenants, and conditions

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL. – (702) 477.7030; FAX – (702) 477.0096

set in the Global Accents Lease and Amended Global Accents Lease in consideration for a payment of $8,200.00. By bringing a lawsuit for breach of the Global Accents Lease and the Amended Global Accents Lease, World Market Center materially breached paragraph 2 (Termination of Lease), 5 (Mutual Release), and 6 (Compromise). As such, Global Accents is entitled to the benefits of the Global Accents Release, which precludes the present action by World Market Center and an award of attorneys' fees in favor of Global Accents.

Paragraph 9(a) of the Global Accent Release specifies that "[i]f any is brought to enforce or interpret the terms of this Agreement or any obligations set out in this Agreement, the prevailing party, either by way of settlement or by final judgment, is entitled to recover its reasonable attorneys' fees, costs, and expenses." Trial Exhibit 26. Global Accents is the prevailing party in this lawsuit on its claim for breach of contract and breach of the implied covenant of good faith and fair dealing. As such, it is entitled to recover its reasonable attorneys' fees, costs, and expenses.

### F.   World Market Center Prosecuted This Matter in Bad Faith

Defendant is informed and believes and thereon alleges that Plaintiff's Complaint is wholly insubstantial, frivolous, and not advanced in good faith. The undisputed evidence illustrated as much. It is unclear why World Market Center continued with this frivolous litigation, other than to unfairly extort a potential settlement from Global Accents. This justifies an award of sanctions against World Market Center.

### G.   SMI is Liable to Global Accents on all Claims

Default was entered against SMI for failure to have representation by counsel, and Mr. Turner and Mr. Birdwell's Answers were struck for failure to participate in the mandatory settlement conference. As to the SMI Defendants, Global Accents is entitled to judgment against them for deceptive trade practices, fraud, fraudulent misrepresentation, intentional misrepresentation, and negligent misrepresentation. The fraud involved moral turpitude and intentional wrongdoing. There is a direct nexus between the SMI Defendants and Global Accents as it relates to reliance in the fraud, and the benefits induced by the SMI Defendants involved false pretenses, false representations, and actual fraud. As to these damages, World

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

Market Center should be liable for them as SMI was World Market Center's agent.  Thus, any judgment should be joint and several, with Global Accents having the option to collection from World Market Center.

**III.    CONCLUSION**

Based on the foregoing, Global Accents respectfully requests that this Honorable Court grant it judgment on all of its claims against World Market Center and the SMI Defendants, with joint and several liability as to both, permitting Global Accents to collect all its damages from World Market Center.  Additionally, Global Accents respectfully requests for judgment in its favor on World Market Center's claims.  Finally, Global Accents respectfully requests for attorneys' fees, costs, and any other applicable sanction for the misconduct of World Market Center in prosecuting this frivolous action.

Dated this 10 day of July, 2013.

MICHAEL B. LEE, P.C.


____/s/  Michael Lee_____
MICHAEL B. LEE, ESQ. (NSB 10122)
2000 So. Eastern Avenue
Las Vegas, NV 89104
Tel – 702.477.7030
Fax – 702.477.0096
mike@mblnv.com
Attorneys for Defendant Global Accents, Inc.

MICHAEL B. LEE, P.C.
2000 SO. EASTERN AVENUE
LAS VEGAS, NEVADA 89104
TEL – (702) 477.7030; FAX – (702) 477.0096

1

## <u>CERTIFICATE OF SERVICE</u>

2      In accordance with Fed. R. Civ. P. 5, I hereby certify that on the 10 day of July, 2013, a

3   copy of the foregoing **<u>DEFENDANT GLOBAL ACCENTS, INC.' CLOSING BRIEF</u>** was

4   served on the parties via CM-ECF filing:

5

6   Terry A. Coffing, Esq.
    Matthew Cecil, Esq.

7   Marquis & Aurbach
    10001 Park Run Drive

8   Las Vegas, NV 89145
    *Attorneys for Plaintiff*

9

10                              _____*/s/ Michael B. Lee*_____

11                              An employee of Michael B. Lee, P.C.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Michael B. Lee, P.C.**
2000 So. Eastern Avenue
Las Vegas, Nevada 89104
Tel. – (702) 477.7030; Fax – (702) 477.0096