1  **Marquis Aurbach Coffing**
Terry A. Coffing, Esq.
2  Nevada Bar No. 4949
Jason M. Gerber, Esq.
3  Nevada Bar No. 9812
Jack F. DeGree, Esq.
4  Nevada Bar No. 11102
10001 Park Run Drive
5  Las Vegas, Nevada 89145
Telephone: (702) 382-0711
6  Facsimile: (702) 382-5816
tcoffing@maclaw.com
7  jgerber@maclaw.com
jdegree@maclaw.com
8  *Attorneys for WMCV Phase 3, LLC*

9  

**UNITED STATES DISTRICT COURT**

10  **DISTRICT OF NEVADA**

11  WMCV PHASE 3, LLC, a Delaware limited
liability company,
12                                                    Case No.:       2:10-cv-00661-GMN-RJJ

13                   Plaintiff,

          vs.
14
SHUSHOK & MCCOY, INC., a Texas             **PLAINTIFF'S CLOSING BRIEF**
15  corporation; MATTHEW J. TRAVIS, an
individual; MATT TURNER, an individual;
16  RICHARD BIRDWELL, an individual;
GLOBAL ACCENTS, INC., a California
17  corporation; COUTURE INTERNATIONAL,
INC., a Quebec corporation; DOES I through X,
18  inclusive; ROE ENTITIES I through X,
inclusive,
19
                 Defendants.
20  ─────────────────────────────
AND RELATED MATTERS
21
          Plaintiff, WMCV Phase 3, LLC ("WMCV"), by and through its attorneys of record, the law
22
firm of Marquis Aurbach Coffing, hereby submits its Closing Brief.
23

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**TABLE OF CONTENTS**

**PLAINTIFF'S CLOSING BRIEF** ...............................................................................1

I.   WMCV'S CLAIMS AND DAMAGES...........................................................1

    A.    BREACH OF CONTRACT...................................................................1

        1.    No dispute Global Breached without Justification. ....................2

        2.    Global Accents Cannot Avoid or Ignore the Defined Terms. ...........3

            a.    "Landlord" is a defined, unambiguous, term. .......................4

            b.    The Name Game is inconsistent, unreliable and irrelevant. .................5

            c.    No legal theory supports the Name Game. .............................7

    B.    BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING. ..........8

    C.    UNJUST ENRICHMENT. ..................................................................9

    D.    DAMAGES.......................................................................................10

II.   APPARENT AUTHORITY PROVIDES NO DEFENSE.......................................11

    A.    RELIANCE ON APPARENT AUTHORITY WAS NOT REASONABLE. ............11

        1.    Global Accents Did Nothing to Verify SMI's Authority................12

        2.    Reasonable Reliance Cannot be Based on Ignoring what Global Accents Actually Knew. ..................................................................14

        3.    Partielli is Too Sophisticated to Simply Ignore or Assume............................17

    B.    THERE IS NO CREDIBLE EVIDENCE OF REPRESENTATIONS REGARDING SMI'S AUTHORITY. .........................................................18

        1.    WMCV never allowed SMI to Settle Claims on Its Own.............................18

        2.    No Credible Evidence and Representations Were Actually Made. ................19

            a.    No credible evidence of representations. .............................19

            b.    Partielli knew the left hand did not always talk to the right. ...............23

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

-i-

c.    In order to prevail, the Court would need to rely on Mr. Partielli's words alone.............................................................................23

III.   GLOBAL ACCENTS' COUNTERCLAIMS ALL FAIL. .......................................26

1.    All the Counterclaims Must Fail Because Global Accents Did Not Present Any Evidence of Damages.................................................26

2.    The Contract Claims All Fail.......................................................27

3.    Global Accents Has No Right to Recover For Deceptive Trade Practices. ................................................................................28

4.    Declaratory Relief Claim is Unsupported......................................29

IV.    CONCLUSION...............................................................................30

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

-ii-

**TABLE OF AUTHORITIES**

**CASES**

Asphalt Products Corp. v. Allstar Ready Mix, Inc., 111 Nev. 799, 898 P.2d 699 (1995).....................9

Baroi v. Platinum Condo. Dev., LLC, 2012 WL 2860655 (D. Nev. July 11, 2012) .........................27

Campanelli v. Conservas Altamira, 86 Nev. 838, 841, 477 P.2d 870, 872 (1970)..............................4

Canfora v. Coast Hotels & Casinos, Inc., 121 Nev. 771, 776, 121 P.3d 599, 603 (2005)....................3

Chicago Title Agency of Las Vegas, Inc. v. Schwartz, 109 Nev. 415, 418, 851 P.2d 419, 421 (1993) ..................................................................................................................................................26

Chwialkowski v. Sachs, 108 Nev. 404, 406, 834 P.2d 405, 406 (1992)................................................3

Clark Cnty. Sch. Dist. v. Richardson Const., Inc., 123 Nev. 382, 397, 168 P.3d 87, 97 (2007)........26

Dachner v. Union Lead Mining and Smelter Co., 65 Nev. 313, 195 P.2d 208 (1948).......................1

Diamond Enterprises, Inc. v. Lau, 113 Nev. 1376, 951 P.2d 73 (1997)..............................................10

Dulton Properties, Inc. v. Jones, 100 Nev. 422, 683 P.2d 30 (1984)..................................................10

Ellis v. Nelson, 68 Nev. 410, 419, 233 P.2d 1072, 1076 (1951) ...........................................13, 14, 17

Fireman's Fund Indem. Co. v. Longshore Beach & Country Club, Inc., 127 Conn. 493, 497, 18 A.2d 347, 349 (1941) ..............................................................................................................14

Frantz v. Johnson, 116 Nev. 455, 469, 999 P.2d 351, 360 (2000)......................................................26

Freda v. Gold Star Realty, Inc., 2010 WL 4342197 (Nev. 2010)......................................................27

Gaines v. Kelly, 235 S.W.3d 179, 182 (Tex. 2007)(emphasis added)................................................14

Galardi v. Naples Polaris, LLC, 301 P.3d 364, 366 (Nev. 2013) .......................................................3

Goldstein v. Hanna, 97 Nev. 559, 563, 635 P.2d 290, 293 (1981)(emphasis added)........................13

Great Am. Ins. Co. v. Gen. Builders, Inc., 113 Nev. 346, 352, 934 P.2d 257, 261 (1997)(emphasis added) ..........................................................................................................11

Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 109 Nev. 1043, 1046, 862 P.2d 1207, 1209 (1993) ....................................................................................................................................8

-iii-

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Hornwood v. Smith's Food King I, 107 Nev. 80, 807 P.2d 208 (1991)............................................ 10

Josephsen v. EMC Mort. Corp., 2:10-cv-336-JCM-PAL, 2010 U.S. Dist. Lexus 128053, at *8
    (D. Nev. Nov. 19, 2010)........................................................................................................ 29

Knittle v. Progressive Cas. Ins. Co., 112 Nev., 8, 10, 908 P.2d 724, 725 (1996)............................... 29

Lease Partners Corp. v. Robert L. Brooks Trust, 113 Nev. 747, 942 P.2d 182 (1997) ...................... 9

LFC Marketing Group, Inc. v. Loomis, 116 Nev. 896, 904, 8 P.3d 841, 846 (2000) .......................... 7

Limestone Realty Co. v. Town & Country Fine Furniture & Carpeting, Inc., 256 A.2d 676,
    678-79 (Del. Ch. 1969)............................................................................................. 15, 17

Mohr Park Manor, Inc. v. Mohr, 83 Nev. 107, 112, 424 P. 2d 101, 104 (1967) (citation
    omitted) ..................................................................................................................... 3

Mueller v. Payroll Solutions, Inc., 2012 WL 1911871 (Nev. May 23, 2012) ..................................... 11

Nevada Power Co. v. Eight Judicial Dist. Ct., 120 Nev. 948, 959-960, 102 P.3d 578, 586
    (2004) ....................................................................................................................... 29

Perry v. Jordan, 111 Nev. 943, 900 P.2d 335 (1995)............................................................... 10

Renshaw v. Renshaw, 96 Nev. 541, 543, 611 P.2d 1070, 1071 (1980)................................................ 3

Seigworth v. State, 91 Nev. 536, 538, 539 P.2d 464, 465 (1975)................................................. 11

Sw. Title Ins. Co. v. Northland Bldg. Corp., 552 S.W.2d 425, 428 (Tex.1977) ................................ 14

Vill. Pointe, LLC v. Resort Funding, LLC, 2011 WL 5844289 (Nev. Nov. 18, 2011)...................... 27

Wilson v. Stratosphere Corp., 371 Fed. Appx. 810, 2010 WL1050142 (9th Cir. 2010) .................... 29

**STATUTES**

NRS 41.600.......................................................................................................... 28

NRS 598.............................................................................................................. 28

NRS 598.0915.1-.16 ................................................................................................ 29

NRS 598.096.......................................................................................................... 28

NRS 598.0963........................................................................................................ 28

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

-iv-

NRS 598.0999.................................................................................................................28

NRS 99.050....................................................................................................................10

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**PLAINTIFF'S CLOSING BRIEF**

**I.     WMCV'S CLAIMS AND DAMAGES.**

WMCV is entitled to a judgment, damages and the dismissal of all Global Accents' counter-claims.  There is no evidence disputing the underlying basis for WMCV's breach of contract and breach of good faith and fair dealing claims; that Global Accents, Inc ("Global Accents") breached the Lease has never been disputed. Indeed, Global Accents stipulated to all the facts supporting the contract claims.  Global Accents, furthermore, did not reasonably rely on Shushok & McCoy, Inc.'s ("SMI") alleged apparent authority and cannot avoid liability. Global Accents ignored information in its possession, ignored its own prior course of conduct and ignored defined terms in the Lease, conduct unreasonable in the circumstances and conduct eliminating any apparent authority defense. Even if apparent authority existed, WMCV would still be entitled to a judgment because Global has been unjustly enriched through its own inequitable and unreasonable conduct.  WMCV, therefore, is entitled to damages, interest, attorney fees and costs.

**A.     BREACH OF CONTRACT.**

In Nevada a party must prove seven essential elements to establish a breach of contract claim: (1) the existence of a valid contract; (2) a breach of contract (a failure to render performance of obligations when due); (3) that the breach, of any, did not excuse performance by the other party; (4) that the alleged breach was not the result of the party's failure to perform as the condition precedent; (5) damages; (6) the amount of damages can be proved to a reasonable degree of certainty; and (7) the damages were a foreseeable consequence of the particular breach. Dachner v. Union Lead Mining and Smelter Co., 65 Nev. 313, 195 P.2d 208 (1948).

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

### 1.   No dispute Global Breached without Justification.

The parties stipulated to all of the facts supporting Global Accents' breach of the Lease. [1] WMCV and Global Accents entered into a binding contract supported by consideration.[2] Global Accents was required to pay rent and perform other obligations pursuant to the terms of the Lease.[3] WMCV complied with its obligations pursuant to the Lease.[4] Global Accents did not present any evidence supporting any allegation that the space was inadequate since the Lease specifically states the square footage is an approximation and will be subject to change and the usable and rentable areas could differ.[5] Further, Global Accents specifically agreed that WMCV was not representing  ac certain number or type of tenant would surround Global Accents' space.[6] Global Accents failed to pay rent as required by the Lease and was evicted from the premises.[7] WMCV was damaged by Global Accents failure to perform.[8]

Further, the SMI Release does not provide any basis to avoid the Lease obligations. In fact, all of the relevant agreements in this case (the Lease, the Lease Amendment and fraudulent settlement agreement ("the SMI Release")) have unambiguously defined the term "Landlord".  Global Accents

---

[1] See Dkt. No. 141, 5:1-12.

[2] See **Exs. 1** and **2**.

[3] See **Ex. 1**, *generally*.

[4] See **Ex. 1**.

[5] See **Ex. 1**, GLOB 0004, Sec. 3.02 and 3.04.

[6] See Ex. 1, GLOB 0022, Sec. 31.07.

[7] See **Exs. 13-15** and **18**.

[8] See Dkt. No. 141, 5:1-12.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

cannot ignore these defined terms, alter the terms of the unambiguous agreements or avoid liability by playing a poorly supported and irrelevant name game (the "Name Game").

### 2.    Global Accents Cannot Avoid or Ignore the Defined Terms.

"An unambiguous contract is construed from the language of the document."  Chwialkowski v. Sachs, 108 Nev. 404, 406, 834 P.2d 405, 406 (1992). An ambiguous contract is an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning. Galardi v. Naples Polaris, LLC, 301 P.3d 364, 366 (Nev. 2013). "In interpreting an agreement a court may not modify it or create a new or different one." Mohr Park Manor, Inc. v. Mohr, 83 Nev. 107, 112, 424 P. 2d 101, 104 (1967) (citation omitted).  When a contract is clear on its face, it "will be construed from the written language and enforced as written." Canfora v. Coast Hotels & Casinos, Inc., 121 Nev. 771, 776, 121 P.3d 599, 603 (2005). The court has no authority to alter the terms of an unambiguous contract. Renshaw v. Renshaw, 96 Nev. 541, 543, 611 P.2d 1070, 1071 (1980).

Before this Court need entertain Global Accents' "apparent authority" defense, Global Accent must first argue the Lease and the SMI Release were ambiguous because each of those agreements contain material, *different*, defined terms.  Global Accents has produced neither evidence nor argument tending to establish ambiguity in any of the relevant agreements.  Indeed, the Record reflects the word "ambiguous" was never mentioned at trial.[9] Accordingly, the Court's analysis should end here.  A court is not at liberty to revise an agreement while professing to construe it." See Mohr, 83 Nev. at 107.  Should the Court delve further into the issue, the facts introduced at trial belie any finding of ambiguity.

---

[9] See Tuesday June 11, 2013 Trial Transcript ("Day 1"), *generally* and Wednesday June 12, 2013 Trial Transcript ("Day 2"), *generally*.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

### a.      **"Landlord" is a defined, unambiguous, term.**

Originally, Global Accent's "Landlord" was WMC 1 Associates, LLC.[10] When the Lease was amended, Global Accent's Landlord was once again defined – this time as WMCV Phase 3, LLC.[11] When Global Accents and WMCV negotiated a possible second amendment, the Landlord was again defined as "WMCV Phase 3, LLC".[12] The only evidence presented, repeatedly and undisputedly, is that the Lease defined the term "Landlord" and that definition is unambiguous and unalterable.

Global Accents' defense, however, is based on altering the interpretation of the unambiguous, defined, terms of the Lease Agreement by playing the Name Game. Global Accents executed the SMI Release with an entity that does not exist – "World Market Center Las Vegas, [INC.] a [Nevada corporation]".[13]  Further, the SMI Release defined the "Landlord" as "World Market Center Las Vegas, a [Nevada corporation]."[14]

Global Accents is seeking to alter the defined and unambiguous terms of the Lease and the SMI Release. Parties to a written contract are bound by its terms regardless of their subjective beliefs at the time the agreement was signed. <u>Campanelli v. Conservas Altamira</u>, 86 Nev. 838, 841, 477 P.2d 870, 872 (1970). Vaguely claiming that WMCV "held itself out" as World Market Center is not a sufficient basis to alter the terms of the Lease.[15] Even if Global Accents subjectively believed "World Market Center" was its Landlord, this subjective belief is not sufficient to alter the terms of the

---

[10] <u>See</u> **Ex. 1**, GLOB 0002.

[11] <u>See</u> **Ex. 2**, GLOB 00043.

[12] <u>See</u> **Ex. 9**, GLOB 00075.

[13] <u>See</u> **Ex. 26**, GLOB 00144.

[14] <u>See</u> **Ex. 26**, GLOB 00142.

[15] <u>See</u> Day 1, 176:3-9.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  Lease.[16] Global Accents' Name Game cannot change the "Landlord" entitled to pursue and release

2  claims pursuant to the Lease. Global Accents' Name Game cannot make WMCV the "Landlord"

3  defined in the SMI Release. WMCV is the only entity or party entitled to pursue or release claims

4  under the Lease Agreement and there is no way to alter or ignore this unambiguous term.

5                          **b.        The Name Game is inconsistent, unreliable and irrelevant.**

6          Global Accents' entire Name Game is based on Mr. Partielli's implausible claim he believed

7  "World Market Center" or "World Market Center Las Vegas" or "World Market Center Las Vegas

8  [Inc]"[17] were the same as "WMCV Phase 3, LLC".  For instance, Mr. Partielli testified that it was

9  appropriate to execute the SMI Release with "World Market Center Las Vegas, [Inc.]" because the

10 buildings say World Market Center, communications were from World Market Center, payments

11 were made to World Market Center and that branding in the industry referred to the entire complex as

12 the World Market Center.[18] This position lacks reasonableness and credibility.  Mr. Partielli is an

13 attorney; he graduated from law school and passed the California bar exam.[19]  Further, Mr. Partielli

14 understands the difference between corporations and limited liability companies.[20]  It is unreasonable

15 to simply assume that World Market Center was the landlord because that was the name on the

16 buildings or a logo appearing on correspondence.

17 _____

18 [16] The Name Game itself is fatally flawed. Global Accents argued that WMCV regularly held itself out as "World Market Center" See Day 1, 176:3-9. However, "World Market Center" did not even sign the SMI Release or receive the alleged settlement payment. See **Exs. 26** and **27**. If the Name Game had

19 any legitimacy, as opposed to being an after the fact concoction to avoid the glaring errors in the SMI Release, one would expect consistency in the names used.

20 [17] Again, if the name game were legitimate, one would expect the name Global Accents believed was correct would be the same throughout – instead of all the different variations offered by Global Accents.

21
22 [18] See Day 1, 176:3-9 and 237:2-5.

23 [19] See Day 1, 165:1-10.

   [20] See Day 1, 230:1-2.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    This is especially true when the Name Game is broken down to its basic elements.  First, the

2    letters sent to Partielli also included WMCV Phase 3, LLC.  WMCV provided a correspondence

3    detailing the payment requirements to Global Accents.[21]  The World Market Center logo appeared on

4    this correspondence as did the information related to WMCV (six separate times).[22]  In 2008, WMCV

5    and Global Accents attempted to negotiate a lease amendment and another correspondence was sent

6    to Global Accents with the World Market Center logo.[23]  This same correspondence, however, also

7    identified WMCV Phase 3, LLC and its contact information.[24]  Several other letters were also sent

8    identifying WMCV.[25]  In December 2008, at the time of the eviction, WMCV obtained an order of

9    summary eviction as the Plaintiff doing business as World Market Center Las Vegas.[26]  As such, the

10   notion that the correspondence detailed a basis for Global Accents to believe "World Market Center"

11   was its landlord is refuted by the very documents Global Accents would like to rely upon.

12   Second, there is no evidence any payments were made to "World Market Center", "World

13   Market Center Las Vegas" or "World Market Center Las Vegas [Inc.] a [Nevada Corporation]".

14   Partielli testified the payments were made to World Market Center;[27]  however, Global Accents never

15   produced a check payable to "World Market Center".  Instead, several checks were produced where

16

17   _____

18   [21] See **Ex.3**.

     [22] Id.

19   [23] See **Ex. 9**, GLOB 00074.

20   [24] Id.

21   [25] See **Exs. 527**, **528** and **529**.

22   [26] See **Ex. 18**.

23   [27] See **Ex. 1**, 176:6-7.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  Global Accents paid **WMCV Phase 3, LLC**.[28]  The ultimate goal of the Name Game – justifying

2  payment to World Market Center pursuant to the SMI Release – contradicts what actually happened.

3  Global Accents **paid SMI** not World Market Center.[29]

4     Finally, the Name Game is not even supported by Mr. Partielli's knowledge, understanding or

5  actions.  When push came to shove, Partielli protected the separation between **his** two entities.  When

6  the lease amendment was discussed in October, 2008, Partielli refused to execute the amendment

7  because Global Accents would remain liable for the Lease.[30]  Partielli knew and understood the

8  differences between Global Trade and Consultation, Inc. (the assignee) and Global Accents (the

9  assignor).[31]  Mr. Partielli believed it was important to keep Global Accents out because it was an

10  entirely separate business and should not remain liable on the Lease.[32]  When it mattered most to **his**

11  interests, Mr. Partielli believed it was important to recognize the separation and to document the

12  separation.  Mr. Partielli's conduct, knowledge and understanding undercut any credibility for using

13  the Name Game as a justification to avoid liability.

14            **c.       No legal theory supports the Name Game.**

15     Global Accents never even articulated a legitimate legal theory justifying its desired impact

16  for the Name Game.  For instance, it is possible that a parent company held out as doing business as a

17  sham entity can be liable as an alter ego.[33]  However, there is not a shred of evidence in this case that

18  _____

19  [28] See **Ex. 5** and **8**.

   [29] See **Ex. 27**.

20  [30] See **Ex. 11**.

21  [31] See **Ex. 11**, GLOB 00093.

22  [32] See Day 1, 247:7-8.

23  [33] See LFC Marketing Group, Inc. v. Loomis, 116 Nev. 896, 904, 8 P.3d 841, 846 (2000)(In order to find
   an alter ego, the plaintiff must establish, by a preponderance of the evidence, facts which demonstrate that:

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

1   WMCV's alter ego is World Market Center Las Vegas [Inc].  In fact, the theory makes little sense

2   since WMCV cannot be governed or controlled by an entity that doesn't exist.

3        Perhaps Global Accents legal theory is one of fraud – that WMCV was never actually the

4   landlord and that World Market Center Las Vegas [Inc] was the real landlord.  However, there is no

5   evidence of a fraud with regard to the entities names – numerous documents that carried the World

6   Market Center logo also identified WMCV.[34]   Global Accents even attempted to rely and base its

7   reasonable belief on a memo sent by WMCV to its tenants a year after Global Accents was evicted.[35]

8   Ultimately, there is no legal theory or basis that supports Global Accents' reliance on the Name

9   Game.

10       **B.      BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.**

11       It is well established that every contract imposes upon the contracting parties the duty of good

12  faith and fair dealing. Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 109 Nev. 1043, 1046, 862

13  P.2d 1207, 1209 (1993). The duty not to act in bad faith or deal unfairly thus becomes a part of the

14  contract, and, as with any other element of the contract, the remedy for its breach generally is on the

15  contract itself. Hilton Hotels, at 1046-47. In certain circumstances, breach of contract, including

16  breach of the covenant of good faith and fair dealing, may provide the basis for a tort claim. Id.

17       The manner in which Global Accents proceeded to avoid its obligations in this case justifies a

18  judgment for breach of the covenant of good faith.  Global Accents sought to have itself eliminated

19

20  (1) the corporation is influenced and governed by the person asserted to be the alter ego; (2) there is such a
    unity of interest in ownership that one is inseparable from the other; and (3) the facts are such that
21  adherence to the corporate fiction of a separate entity would, under the circumstances, sanction a fraud or
    promote injustice).

22  [34] See **Ex. 3**, **10** and **18**.

23  [35] See Day 1, 105:5-21.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  from any liability by assigning its obligations to another entity.[36]   Then, after it was evicted Global

2  Accents principal, Mr. Partielli, snuck into the summer 2009 show under a different lease and

3  promoted Global Accents attendance at the show.[37]   Mr. Partielli never denied this conduct.[38]   After

4  the eviction Global Accents settled with SMI without verifying the authority to release these claims.

5  In these circumstances, Global Accents injured WMCV through its failure to comply with its conduct

6  of good faith and WMCV is entitled to damages.

7      **C.      UNJUST ENRICHMENT.**

8          Unjust enrichment occurs whenever a person has and retains benefit which in equity and good

9  conscious belongs to another.  <u>Lease Partners Corp. v. Robert L. Brooks Trust</u>, 113 Nev. 747, 942

10  P.2d 182 (1997).  Unjust enrichment is the unjust retention of money or property of another against

11  fundamental principles of justice or equity and good conscious.  <u>Asphalt Products Corp. v. Allstar</u>

12  <u>Ready Mix, Inc.</u>, 111 Nev. 799, 898 P.2d 699 (1995).  Even if the Global Accents Name Game or

13  apparent authority fictions were accepted, WMCV is still entitled a recovery for unjust enrichment.

14  Where a party obtains a benefit or an obligation by way of unfair conduct, unjust enrichment should

15  provide a basis for recovery.  Here, Global Accents conduct with regard to SMI and WMCV was

16  unreasonable and unjust.  Global Accents ignored its prior payment history, the Lease and its actual

17  knowledge in order to obtain a vastly reduced settlement. The Lease clearly states that upon a default

18  the full value of the lease is immediately due.[39]   As such, at the time SMI began to fraudulently

19  negotiate the settlement, Global Accents knew it owed an amount well in excess of $8,200– an

20  _____

[36] <u>See</u> **Ex. 11**.

21  [37] <u>See</u> Day 1, 71:10-19.

22  [38] <u>See</u> Day 1, pp. 163-253, *generally*.

23  [39] <u>See</u> **Ex. 1**, GLOB 0019, Sec. 23.02 (b).

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

1  amount it later stipulated was in excess of $360,000.[40]  Global Accents put on its blinders, ignored the

2  information in its possession and rushed to settle with an entity that did not exist in order to avoid this

3  larger obligation.  This unfair, unreasonable and unjust conduct should allow WMCV to recover the

4  balance of its lease obligation after crediting Global Accents with its $8,200 payment to SMI.

5  **D.    DAMAGES.**

6  Damages need not be determined with mathematical certainty.  <u>Perry v. Jordan</u>, 111 Nev. 943,

7  900 P.2d 335 (1995).  Compensatory damages are awarded to make the aggrieved party whole, and,

8  where contracts are involved, these damages should place the plaintiff in the position the plaintiff

9  would have been in had the contract not been breached.  <u>Hornwood v. Smith's Food King I</u>, 107 Nev.

10  80, 807 P.2d 208 (1991).  The object of compensatory damages in an action for breach of contract is

11  merely to place the injured party in a position that he would have been in had the contract not been

12  breached.  <u>Dulton Properties, Inc. v. Jones</u>, 100 Nev. 422, 683 P.2d 30 (1984).  The district court is

13  given wide discretion in calculating an award of damages.  <u>Diamond Enterprises, Inc. v. Lau</u>, 113

14  Nev. 1376, 951 P.2d 73 (1997).  The parties stipulated that $360,831.00 was due and owing by

15  Global Accents at the time of the breach.[41]

16  Parties may agree for the payment of any rate of interest on money due or to become due on

17  any contract, for the compounding of interest if they choose, and for any other charges or fees.  <u>See</u>

18  NRS 99.050.  The parties shall specify in writing the rate upon which they agree, that interest is to be

19  compounded if so agreed, and any other charges or fees to which they have agreed.  <u>Id</u>.  Here, the

20  parties agreed that interest would be charged at 18%.[42]  WMCV, therefore, is entitled to recover 18%

21  ─────────────────────
   [40] <u>See</u> Dkt. No. 141, 5:10-12.

22  [41] <u>See</u> Dkt. No 141, 5:10-11.

23  [42] <u>See</u> **Ex. 1** GLOB 00019, Sec. 23.02 (a).

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   interest on its damages and this calculation runs from the date of the breach – August 1, 2008.[43] The

2   total amount of interest is $25,397.04 and the total damages, plus interest, are $386,228.04.

3          Finally, the Lease Agreement also allows the prevailing party to recover attorney fees.[44]

4   WMCV should be granted leave, after the judgment is entered, to seek its reasonable attorney fees

5   and costs.

6   **II.**      **APPARENT AUTHORITY PROVIDES NO DEFENSE.**

7          Apparent authority is Global Accents' only defense and only basis to avoid more than

8   $300,000 in potential liability. Global Accents, furthermore, bears the burden to demonstrate SMI had

9   apparent authority to bind WMCV:

> A party claiming apparent authority of an agent as a basis for contract formation ***must***
> ***prove*** (1) that he subjectively believed that the agent had authority to act for the
> principal and (2) that his subjective belief in the agent's authority was objectively
> reasonable. Great Am. Ins. Co. v. Gen. Builders, Inc., 113 Nev. 346, 352, 934 P.2d
> 257, 261 (1997)(emphasis added); Mueller v. Payroll Solutions, Inc., 2012 WL
> 1911871 (Nev. May 23, 2012).

If inferences against existence of the agent's authority to act are as reasonable as those in favor of

such authority, there can be no reliance on the rule relating to the agent's apparent authority to act for

the principal. Seigworth v. State, 91 Nev. 536, 538, 539 P.2d 464, 465 (1975). Global Accents fails to

reach its burden and fails to provide any reason for this Court to find a valid apparent authority

defense exists.

18   **A.**      **RELIANCE ON APPARENT AUTHORITY WAS NOT REASONABLE.**

19        Global Accents' manufactured apparent authority defense fails based on its own unreasonable

20  conduct.  Apparent authority is not applied with a broad stroke that allows a third party to blindly rely

---

[43] See **Ex. 12**.

[44] See **Ex. 1**, Sec. 31.06, GLOB 00022.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

on an agent without regard to relevant facts and circumstances.  In this case, Global Accents never took any steps to legitimately verify SMI's authority, ignored evidence in its possession and ignored what it actually knew when it executed the SMI Release.  In light of this unreasonable conduct, apparent authority cannot be used as a defense.

### 1.   Global Accents Did Nothing to Verify SMI's Authority.

According to WMCV's records, Partielli never contacted WMCV between January 2009 and June of 2009, to discuss the scope of SMI's authority.[45]  No emails were admitted into evidence concerning correspondence between Global Accents and WMCV during this same time period. Further, despite regular email contact between WMCV's collections manager Esmeralda Dominguez and SMI's representatives, no emails address any questions or concerns raised by Global Accents concerning the scope of SMI's authority.[46]  However, evidence was presented concerning the limitation on SMI's authority.  Mr. Leleu, familiar with the industry and familiar with WMCV's relationship with SMI, testified that SMI was never permitted to settle claims, never permitted to resolve claims without WMCV's approval and was only charged with collecting debts.[47]  Mr. Leleu testified that this was a relationship that in his experience was standard for the industry.[48]  Mr. Leleu's testimony was not impeached or contested and no evidence refuting or rebutting his testimony was offered.

---

[45] See Day 1, 61:14-25 – 62:1-2; 62:9-12.

[46] See Day 1, 55:3-23.

[47] See Day 1, 50:1-6; 54:14-17 and 54:17-18.

[48] See Day 1, 59:12-15.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    Moreover, when Global Accents raised issues with the square footage of its original space

2    with SMI - ***SMI immediately sent Global Accents back to WMCV***.[49]   There is no record of Global

3    Accents actually contacting WMCV in response to these instructions from SMI.[50]   However, it is a

4    clear indication that SMI is not cloaked with full authority to resolve claims – they were required to

5    send issues related to the Lease and square footage back to WMCV.[51]   Mr. Partielli, furthermore,

6    testified that at WMCV, the left hand did not always know what the right hand was doing – an

7    obvious admission that a prudent individual would be double checking SMI's authority.[52]   As such,

8    Global Accents was on notice SMI did not have full authority to settle claims and was on notice that

9    WMCV and its separate departments were sometimes unaware of each other's actions.  These facts

10   were sufficient to require Global Accents to verify the scope of the authority granted to SMI.

11   This is particularly important because Nevada law is clear – Global Accents could only rely

12   on statements by WMCV ***not SMI***. "It is indispensable to keep in mind here that, as against the

13   principal, there can be reliance only upon what the principal himself has said or done, or at least said

14   or done through some other and authorized agent." Ellis v. Nelson, 68 Nev. 410, 419, 233 P.2d 1072,

15   1076 (1951). "The acts of the agent in question cannot be relied upon alone enough to support an

16   estoppel." Id.  "If his acts are relied upon ***there must also be evidence of the principal's knowledge***

17   ***and acquiescence*** in them." Id. (emphasis added). Apparent authority is an equitable estoppel against

18   a principal to deny agency when ***by his conduct he has clothed the agent*** with apparent authority to

19   act. Goldstein v. Hanna, 97 Nev. 559, 563, 635 P.2d 290, 293 (1981)(emphasis added).   When

20   _____

[49] See **Ex. 21**.

21   [50] See Day 1, 64:5-6.

22   [51] See **Ex. 21**.

23   [52] See Day 1,232:20-21.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

1   making a determination concerning apparent authority, ***only the conduct of the principal is relevant***.

2   Gaines v. Kelly, 235 S.W.3d 179, 182 (Tex. 2007)(emphasis added).   Declarations of the alleged

3   agent, without more, are incompetent to establish either the existence of the alleged agency or the

4   scope of the alleged agent's authority. Sw. Title Ins. Co. v. Northland Bldg. Corp., 552 S.W.2d 425,

5   428 (Tex.1977).  The apparent power of an agent is to be determined by the acts of the principal and

6   not by the acts of the agent. Fireman's Fund Indem. Co. v. Longshore Beach & Country Club, Inc.,

7   127 Conn. 493, 497, 18 A.2d 347, 349 (1941).

8       Global Accents relied on SMI's claims,[53] but, statements made by SMI could not create

9   apparent authority from WMCV.  Instead, WMCV had to take action to cloak SMI with its ultimate

10  authority and there is no evidence (other than Partielli's self serving and undocumented statements) to

11  support this grant of ultimate authority.  Global Accents would also need to show WMCV ***knew*** SMI

12  was settling claims without approval or authorization – a proposition for which there was no evidence

13  at trial.

14      **2.    Reasonable Reliance Cannot be Based on Ignoring what Global Accents**
                **Actually Knew.**

15

16      Global Accents could not turn a blind eye to each of the warnings and signals that indicated

17  SMI had no authority.  See Nelson, 68 Nev. at 418; REST 3d AGEN § 2.03 comment d. (explaining

18  that a party must investigate when circumstances raise doubt as to the agent's authority).   "If the

19  inferences against the existence of the [apparent] authority are just as reasonable as those in favor of

20  it, there can be no reliance within this rule."  Id. at 419.  One dealing with an agent ***does so at his***

21  ***peril*** and must bear the burden of determining for himself the existence or non-existence of the

22

23  [53] See Day 1, 191:6-10.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  agent's authority to act in the premises.  Limestone Realty Co. v. Town & Country Fine Furniture &

2  Carpeting, Inc., 256 A.2d 676, 678-79 (Del. Ch. 1969).

3       Global Accents is trying to construct its apparent authority fiction by ignoring facts it actually

4  knew.  Indeed, had Global Accents simply paid attention to what it already knew, it would have been

5  clear SMI was asking it to sign a fraudulent release, with entities that did not exist concerning the

6  wrong lease space.  For instance:

7   - Global Accents knew its landlord was WMCV Phase 3, LLC not World Market
      Center Las Vegas, [Inc.] a [Nevada corporation].[54]

8

9   - Global Accents knew it was renting space C775 not a location on the eighth
      floor.[55]

10   - Global Accents knew WMCV Phase 3, LLC was demanding payments.[56]

11   - Global Accents knew to pay WMCV Phase 3, LLC – that's the only entity they
      ever paid.[57]  The payment by Global Accents to SMI was not made (as required

12     by the SMI release) to World Market Center Las Vegas – it was wired directly to
      SMI.[58]

13   - Global Accents knew SMI did not have full settlement authority – SMI had
      directed Global Accents to contact WMCV concerning the square footage issues

14     related to the lease dispute.[59]

15   - Global Accents knew to contact Mr. Leleu and the legal department in July or
      August 2009, based on the conversation with Mr. Kashani.[60]

16

17  _____

    [54] See Exs. 2, 3, 4, 7 and 9.
18
    [55] See Ex. 2.
19
    [56] See Exs. 12, 13, 14, 15, 16 and 17.
20
    [57] See Exs. 5 and 7.
21
    [58] See Exs. 26 and 27.
22
    [59] See Ex. 21.
23
    [60] See Day1, 124:13-19; 131:15-18; 152:21-14 and Ex. 534.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   Despite knowing these facts and this information, Global Accents blindly entered into the

2   SMI Release without concern for its prior knowledge.

3   Further, Global Accents did not even refer back to the documents in their own file (the Lease,

4   invoices or checks) to verify any information in the SMI release. When SMI provided the SMI

5   Release, Mr. Partielli never verified any information by looking back at the Lease.[61] In fact, it's

6   unclear if Mr. Partielli ever fully reviewed the SMI Release before signing – when asked how many

7   times he read the document before signing it he testified "***Maybe once***."[62] He also did not look back

8   to any invoices or payments made to WMCV to ensure the payee on the SMI Release was correct.[63]

9   Instead, Mr. Partielli just "assumed" the terms of the SMI Release were correct.[64] Mr. Partielli's

10  excuse for failing to verify any of this information highlights the unreasonableness of the Global

11  Accents' reliance: "And as a tenant what would I know about whether its WMC 1 or 2 or 3 or what?

12  All I knew was that I was dealing with World Market Center Las Vegas."[65] Of course, there was one

13  fool proof way to know – ***LOOK AT THE LEASE***. Had Global Accents simply looked at what was

14  in its possession, it would have known that the terms of the SMI Release were inaccurate and

15  fraudulent and would have known that the release was not valid.

16  Global Accents' reasonable belief cannot and should not be built upon ignoring facts that

17  were in its possession.  There is nothing reasonable about a party ignoring information it already has

18  and then accepting the inaccurate and fraudulent representations of an agent. Further, it is not

---

[61] See Day 1, 237:9-11.

[62] See Day 1, 217:1 (emphasis added).

[63] See Day 1, 244:5-12.

[64] See Day 1, 237:7-8; 239:1-4 and 241:24-25 – 242:1.

[65] See Day 1, 236:22-24.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

reasonable for Global Accents to blindly rely on SMI's alleged authority without taking the simple

steps of reviewing the Lease or reading (at least once, if not more) the actual SMI Release.  Global

Accents assumed the SMI Release was accurate and Global Accents assumed the risks if that Release

was invalid.  In these circumstances, apparent authority should be rejected.

### 3.   Partielli is Too Sophisticated to Simply Ignore or Assume.

Apparent authority may exist only "where a person of ordinary prudence, conversant with

business usages and the nature of the particular business, acting in good faith, and giving heed not

only to opposing inferences but also to all restrictions which are brought to his notice, would

reasonably rely…" Nelson, 68 Nev. at 419. A third party is not entitled to assume the existence of any

extraordinary state of facts in order to bring the act of the agent within the scope of his apparent

authority. Limestone Realty, 256 A.2d at 679. Reasonable belief cannot be based upon the reckless

and incredible assumptions Global Accents made with regard to SMI's apparent authority.

Mr. Partielli certainly knew the difference between World Market Center Las Vegas, [Inc.], a

[Nevada corporation] and WMCV Phase 3, LLC.[66] Mr. Partielli also knew to check the SMI Release

to make sure it contained release language that would absolve Global Accents.[67]   Nonetheless,

Partielli simply "assumed" that the SMI Release was valid, never questioned the errors in the release

and never questioned the failure to actually identify the entity that was Global Accents' landlord.[68]

Mr. Partielli is a sophisticated business owner (according to him Global Accents was a "very

dominant force" in the industry[69]) and an attorney.  He was not permitted to turn a blind eye to facts

---

[66] See Day 1, 230:1-2.

[67] See Day 1, 216:14-17.

[68] See Day 1, 237:7-8; 239:1-4 and 241:25 – 242:1.

[69] See Day 1, 171:23-25.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

and circumstances and his level of sophistication is relevant to an analysis of whether Global Accents

belief was reasonable.  Mr. Partielli is far too sophisticated and far too knowledgeable in this industry

to simply ignore the facts and circumstances that raised questions about SMI's authority and the

validity of the SMI Release.

**B.    THERE IS NO CREDIBLE EVIDENCE OF REPRESENTATIONS REGARDING SMI'S AUTHORITY.**

SMI also failed to reach its burden to demonstrate WMCV actually made representations

granting SMI full and final settlement authority.  WMCV had an undisputed policy of limiting SMI's

authority. Global Accents did not present any credible evidence that WMCV represented this broad

authority existed and is left relying only upon Mr. Partielli's testimony.  Global Accents, therefore,

failed to reach its burden.

**1.    WMCV never allowed SMI to Settle Claims on Its Own.**

Mr. Leleu was familiar with all of the policies and procedures for WMCV.[70]  WMCV never

authorized SMI to settle any cases.[71]  SMI was only charged with collecting debts and their sole

responsibility was to collect money.[72] SMI's only scope of work was collections.[73]  In fact, WMCV

did not seek out settlement agreements through SMI because settlement agreements were for the

benefit of a tenant.[74] Moreover, WMCV never told any third parties that SMI had full authority to

settle claims.[75]  Mr. Leleu also testified that in his experience, WMCV's relationship with SMI in the

---

[70] See Day 1, 23:10-24.

[71] See Day 1, 50:1-6.

[72] See Day 1, 49:20-22.

[73] See Day 1, 53:14-17.

[74] See Day 1, pp. 50-51, *generally*.

[75] See Day 1, 53:18-20.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   scope of SMI's authority was standard for the industry.[76]  On cross examination, Global Accents was

2   only able to establish that WMCV revised and drafted the settlement agreements between WMCV

3   and some defaulted tenants - not SMI.[77]  Significantly, SMI agreed that WMCV was required to

4   approve settlements.[78]  SMI also admitted that its conduct, after being fired by WMCV, was wrong.[79]

5   Global Accents, through documents and the examination of witnesses, never established that WMCV

6   had a policy of allowing SMI full settlement authority for any collection cases referred to it by

7   WMCV.   Since WMCV did not create the impression of this broad apparent authority, Global

8   Accents cannot avoid liability for its breach of the Lease.

9                    **2.       No Credible Evidence and Representations Were Actually Made.**

10       Global Accents relies only on Mr. Partielli's purported conversations with Esmeralda

11   Dominguez and his conversation with Jack Kashani.  Global Accents, however, never presented any

12   documentation supporting its version of these conversations.  In fact,  Mr. Partielli never testified to

13   any representations made by Mr. Kashani about SMI – a key to the apparent authority fiction.

14   Without more, the Court should not rely on Mr. Partielli's biased testimony.

15                         **a.       No credible evidence of representations.**

16       Mr. Partielli testified that he had two conversations with Esmeralda Dominguez regarding

17   SMI's authority but no notes or other records of these conversations were presented.[80]  Mr. Partielli,

18

19   ――――――――――――――――
     [76] See Day 1, 59:12-15.

20   [77] See Day 1, 101:16-19; 104:9-10.

21   [78] See **Ex. 31**, 11(41:25 – 42:1-3).

22   [79] See **Ex. 31**, 20(78:7-9).

23   [80] See Day 1, 234:1 and 235:16-23.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

did document other conversations and positions important to Global Accents in writing[81] and believed it was important to document these communications.[82] Mr. Leleu testified to an extensive review of records related to this case and found no contact in writing from Global Accents to WMCV between January and June 2009 concerning SMI.[83]  Indeed, had Ms. Dominguez received phone calls from a defaulting tenant like Global Accents, Mr. Leleu would have been notified of those conversations.[84] Ms. Dominguez never mentioned any conversation with Mr. Partielli during this time in 2009.[85]

During this same time, SMI directed Global Accents back to Ms. Dominguez with regard to the square footage issue.[86] However, there are no records of any contact between Partielli and WMCV in response to this email and there are no follow up correspondence between Global Accents and SMI.  If Mr. Partielli's story were true (that he contacted Ms. Dominguez and she again referred him back to Global Accents)[87] then it stands to reason there would be some correspondence or email back to SMI asking for clarification on the scope of SMI's role.  No such communication exists.  It is far more likely that Mr. Partielli never contacted WMCV, never spoke to Ms. Dominguez and never received further "assurances" of SMI's full authority to settle.

---

[81] See **Exs. 22, 29, 531** and **533**.

[82] See Day 1, 232:7-9; 232:15-21 and 233:15-20.

[83] See Day 1, 61:14-25 – 62:1-2; 62:9-12.

[84] See Day 1, 65:14-18.

[85] See Day 1, 64:11-18.

[86] See **Ex. 21**.

[87] See Day 1, 199:7-17.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

The alleged representations by Mr. Kashani are also not supported by any credible evidence. Mr. Kashani was clear throughout his testimony that he never handled complaints from tenants,[88] he was never involved with defaulting tenants,[89] he was never involved in collections[90] and he would always refer collection and legal issues to the legal and leasing teams.[91]  Further, Mr. Kashani, prior to this litigation, did not know anything about SMI and had never told Mr. Partielli to settle claims with SMI.[92]

At the time of the trial, Mr. Kashani only remembered a December 2009 conversation with Mr. Partielli, although he testified prior conversations had occurred.[93]  Even when subject to cross examination, Mr. Kashani's testimony concerning the conversations with Mr. Partielli remained consistent.  Mr. Kashani testified that his declaration was accurate, although he no longer recalled the substance of the July/August conversation.[94]  Mr. Kashani never denied having the conversation, that an amount owed by Global Accents was discussed, that an offer was on the table for an $8,200 settlement and that WMCV's **attorneys** generally sought 100% of the amount owed.[95]  However, **none** of these statements support the apparent authority fiction.

---

[88] See Day 1, 121:13-14.

[89] See Day 1, 123:5-7.

[90] See Day 1, 124:5-7.

[91] See Day 1, 123:17-20.

[92] See Day 1, 138:7-19; 139:8-11.

[93] See Day 1, 131:23-25; 145:25 – 146:1-2.

[94] See 147:12; 148:2-5; 148:6-9; 151:5-9; 152:3-4; 152, *generally*.

[95] See **Ex. 534**.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1       Instead, the key issues for apparent authority (representations regarding SMI's authority) are

2 consistent throughout Mr. Kashani's testimony at trial and his declaration.  The declaration confirms

3 that Mr. Kashani did not know who SMI was or that SMI was negotiating on behalf of WMCV.[96]

4 Further, the declaration confirms Mr. Kashani would not involve himself in negotiations with the

5 defaulting tenant. Instead, he would refer those issues to the legal/leasing departments – exactly as he

6 testified at trial.[97]

7       Mr. Kashani never made any representations to Mr. Partielli concerning SMI's authority - ***and***

8 ***there is no testimony or evidence to the contrary***.  Mr. Partielli, in fact, never testified to any

9 representations by Kashani concerning SMI.  During his direct examination, Mr. Partielli testified to

10 the substance of his conversation with Mr. Kashani.[98]  ***Never once does he testify to a statement or***

11 ***representation made by Mr. Kashani about the scope of SMI's authority***.[99]  Mr. Kashani testified at

12 trial and in his declaration that he did not make any representations concerning SMI's authority to

13 settle claims.[100]

14       Any efforts by the Defendant to impeach Mr. Kashani fail based on the consistency on the key

15 issues in the declaration and Mr. Partielli's own testimony.  Mr. Kashani's declaration was admitted

16 as a recorded recollection of his memory of the July/August conversation.[101]  Further, Mr. Kashani

17 testified consistently that he did not recall the contents of the conversation but that the declaration

---

18 [96] <u>See</u> **Ex. 534**; Day 1, 137-138, *generally*.

19 [97] <u>See</u> **Ex. 534**; Day 1, 123:17-20; 132:6-10.

20 [98] <u>See</u> Day 1, pp. 205-213, *generally*.

21 [99] <u>Id.</u>

22 [100] <u>See</u> Day1, 139:18-12 and Ex**. 534**.

23 [101] <u>See</u> Day 1, 156: 5-24.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

was accurate.[102]   The only evidence before the court is that the July/August conversation took place and that Mr. Kashani never represented anything to Global Accents with regard to SMI.   Global Accents, therefore, failed to reach burden to demonstrate that WMCV made any representations concerning SMI's authority.

           **b.**        **Partielli knew the left hand did not always talk to the right.**

Mr. Partielli's reliance on SMI's authority and ability to settle should have been questioned by his own knowledge of WMCV's internal practices.  Mr. Partielli testified that when dealing with WMCV sometimes the left hand didn't know what the right hand was doing.[103]  Mr. Partielli admitted he knew of communication or administrative difficulties between the various arms of WMCV.  This knowledge of the potential risk should have caused him to seek further clarification on the SMI Release.  By failing to address his own concerns with WMCV's business practices, Mr. Partielli also failed to act prudently and diligently in reaching the fraudulent settlement with SMI.

           **c.**        **In order to prevail, the Court would need to rely on Mr. Partielli's words alone.**

No correspondence or emails from WMCV to Global Accents were admitted into evidence conveying the impression of SMI's full authority to settle claims.  Further, no correspondence between SMI, Global Accents and/or WMCV addresses SMI's authority.  WMCV's files do not contain any documents communicating this level of authority to SMI and Mr. Leleu testified it was

---

[102] See Day 1, p. 148, *generally*; pp. 151-153, *generally*.

[103] See Day 1, 232:20-12.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  not the policy of WMCV to allow SMI this level of authority.[104]  Moreover, WMCV never granted

2  SMI settlement authority and never communicated that authority to third parties.[105]

3          Instead, the Court has only Mr. Partielli's testimony.  There should be significant concerns

4  with Mr. Partielli's credibility as the sole basis for establishing apparent authority.  First, Mr.

5  Partielli's company currently faces a judgment in excess of $360,000 – creating an obvious bias.[106]

6  Secondly, the only testimony with regard to witnesses' credibility dealt specifically with Mr.

7  Partielli's reputation in the industry for truthfulness – reputation that was poor.[107]  SMI's

8  representative, Mr. Birdwell, also testified that Mr. Partielli was a "squirmy kind of" guy and that he

9  was raising a bogus issue to avoid paying the debt.[108] Also, Mr. Birdwell testified Mr. Partielli was

10  not "an upstanding, honest, kind of guy…"[109]  Mr. Partielli's testimony on cross examination was

11  repeatedly evasive and non-responsive, indicating an unwillingness to testify truthfully.[110]

12          Mr. Partielli's 2009 communications with WMCV were also disingenuous.  In December,

13  2009, Partielli sent an email to Mr. Leleu concerning the SMI Release.[111]  In this email, Mr. Partielli

14  stated the SMI Release was sent to WMCV personnel "several months ago and no one advised us of

15

16

---

17  [104] See Day 1, pp. 53-54, *generally* and 50:1-6.

18  [105] See Day 1, pp. 53-54, *generally*.

19  [106] See Dkt. No. 141, 5:10-12.

20  [107] See 86:22-25 – 87:1-6.

21  [108] See **Ex. 31**, 10(37:14-16; 38:19-20).

22  [109] See **Ex. 31**, 11(42:17-18).

23  [110] See 236:14-24; 238:19-24; 242:11-13 and 242:24-25 – 243:1.

[111] See **Ex. 533**, GLOB 00161.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

non validity of this agreement."[112]  However, neither party produced any evidence of this settlement agreement being sent "several months" before December 30 – and all the only testimony was that the agreement was provided in late November 2009.[113]  This issue was raised to Mr. Leleu during his direct exam and he disagreed with the statement.[114]  Mr. Partielli, on direct exam, never clarified this point or supported the statement in the email.[115]  In all likelihood, Mr. Partielli was using these written communications to create a paper trail he could use to support the manufacturing of a defense. However, his inaccurate and disingenuous statement in this email also calls into question the reliability of any of his testimony.

Indeed, Mr. Partielli undisputedly "snuck" into the summer 2009 market at WMCV to sell items as Global Accents – rather than properly resolve his dispute with WMCV.  During the summer 2009 show, Mr. Leleu learned that a vendor was using temporary space and hanging "Global Accents" signs throughout the building.[116]  This entity, associated with Global Accents, was never allowed to show during a Market again.[117] Mr. Partielli never denied his connection to this entity, Global Accents' connection to the entity or using this entity to sneak into a Market for Global Accents' benefit.[118]

---

[112] Id.

[113] See Day 1, 81:1-3.

[114] See Day 1, 80:14-20.

[115] See Day 1, pp. 163-253, *generally*.

[116] See Day 1, 71:10-19.

[117] See Day 1, 72:4-5.

[118] See Day 1, pp. 163-253, *generally*.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

1      Mr. Partielli's testimony is not credible. Mr. Partielli's company stands to lose hundreds of

2  thousands of dollars, he has lied to bolster his manufactured apparent authority claims and he has

3  never denied the devious episode of sneaking into a Market under the cloak of a disguise entity.

4  Given his undisputed poor reputation for truthfulness, this Court should disregard his unsupported

5  and disingenuous testimony.

6  **III.    GLOBAL ACCENTS' COUNTERCLAIMS ALL FAIL.**

7      All of Global Accents' counterclaims should be dismissed.  Global Accents presented no

8  evidence of any damages arising from its claims and is not entitled to a judgment on any of these

9  claims.  Further, without apparent authority, none of the contract claims survive.  Counterclaims

10  related to deceptive trade practices must also fail as there is no private right of action in these

11  circumstances and no evidence WMCV knowingly committed a fraud leading to any harm.  Finally,

12  Global Accents' declaratory relief claim has never been defined and Global Accents failed to present

13  any evidence that a declaration of any kind was appropriate.

14          **1.    All the Counterclaims Must Fail Because Global Accents Did Not Present
                Any Evidence of Damages.**

15

16      Global Accents did not present any evidence of damages it allegedly suffered in this case. The

17  plaintiff has the burden to prove the amount of damages it is seeking. <u>Clark Cnty. Sch. Dist. v.</u>

18  <u>Richardson Const., Inc.</u>, 123 Nev. 382, 397, 168 P.3d 87, 97 (2007).  Whether a case be one in

19  contract, or in tort, the injured party bears the burden of proving that he or she has been damaged.

20  <u>Chicago Title Agency of Las Vegas, Inc. v. Schwartz</u>, 109 Nev. 415, 418, 851 P.2d 419, 421

21  (1993)(reversing a judgment against a title company because the plaintiff failed to present evidence of

22  damages caused by the title company's error).  A party seeking damages has the burden of providing

23  the court with an evidentiary basis upon which it may properly determine the amount of damages.

<u>Frantz v. Johnson</u>, 116 Nev. 455, 469, 999 P.2d 351, 360 (2000); <u>Baroi v. Platinum Condo. Dev.</u>,

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  LLC, 2012 WL 2860655 (D. Nev. July 11, 2012). To win on a breach of contract claim, the plaintiff

2  must show that a valid contract exists, that the defendant breached the contract, and that the

3  defendant's breach resulted in damages to the plaintiff. Vill. Pointe, LLC v. Resort Funding, LLC,

4  2011 WL 5844289 (Nev. Nov. 18, 2011).

5      Global Accents did not present any evidence of damages and therefore cannot recover on any

6  of its claims.  In the stipulated facts in the pretrial order, Global Accents did not identify any figure

7  related to damages it suffered in this case.[119]  Further, during the testimony of various witnesses,

8  Global Accents never presented any evidence of damages. At best, Global Accents provided

9  testimony about travel costs and "emotional stress" – but nothing more.[120] No amounts for these

10  alleged costs were ever provided.[121]  No exhibits admitted into evidence by Global Accents provided

11  calculation of damages for any claims. Without evidence of damages, Global Accents should not be

12  permitted to recover on any of its claims.

13              **2.      The Contract Claims All Fail.**

14      An agent with apparent authority may only bind the principal by executing the contract on

15  behalf of the principal. See Freda v. Gold Star Realty, Inc., 2010 WL 4342197 (Nev. 2010)(finding

16  that an agent did not have apparent authority to contract for a principal when the agent executed

17  personal loans not in the name of the principal). WMCV did not execute the SMI Release and SMI

18  did not execute the release on behalf of WMCV.[122]  Instead, SMI executed the SMI Release on behalf

19

20  ───────────────
   [119] See Dkt. No. 141, *generally*.

21  [120] See Day 1, 221:20-25 – 222:1-11.

22  [121] Id.

23  [122] See **Ex. 26**, GLOB 00144.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

of a non-existent entity "World Market Center Las Vegas, [Inc.], a [Nevada corporation]".[123]  SMI's apparent authority, however, only extends to executing on behalf of its principal (in this case WMCV) and not for some other entity.

Moreover, WMCV's claims in this case do not impact the SMI Release.  The SMI Release is specifically for any claims associated with a space "located on the 8th floor..."[124]  However, WMCV's claims in this case relate to breach of the lease for space C-775 - the actual space Global Accents occupied.[125]  WMCV can't breach the SMI Release by pursuing claims that were not the subject of the SMI Release.

Finally, there is no evidence of damages for breach of the release.  Global Accents has previously argued in its trial brief that $8,200 is the appropriate measure of damages; however, this amount was simply what Global Accents paid to SMI not a damage arising from a breach of the SMI Release.  WMCV, therefore, is entitled to a judgment against Global Accents on this counterclaim.

### 3.  Global Accents Has No Right to Recover For Deceptive Trade Practices.

Global Accents has no viable basis for claims arising under Nevada's deceptive trade practice statute.  First, and most importantly, Global Accents has no private cause of action for deceptive trade practices.  Nevada's Deceptive Trade Practices statute specifically recognizes the right of the Attorney General to pursue claims for deceptive trade practices.  See NRS 598.096, NRS 598.0963 and NRS 598.0999.  The statute itself does not provide a private right of action.  See NRS 598 et seq. Instead, Nevada only allows a private plaintiff to raise Deceptive Trade Practice claims through Nevada's Consumer Protection statute (NRS 41.600).  See Nevada Power Co. v. Eight Judicial Dist.

---

[123] Id.

[124] See **Ex. 26**, GLOB 00142.

[125] See **Ex. 2**, GLOB 00043.

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  Ct., 120 Nev. 948, 959-960, 102 P.3d 578, 586 (2004).  Here, there is no allegation of a consumer

2  fraud (or any fraud) committed by WMCV. Global Accents was not a consumer purchasing good

3  from WMCV – it was a commercial tenant that breached a commercial lease.

4         Moreover, the defining characteristics of a deceptive trade practice require the knowledge of

5  the party acting in order to be liable.  See NRS 598.0915.1-.16.  Interpreting, Nevada's deceptive

6  trade practice statute, the Ninth Circuit Court of Appeals has found that where a party disseminates

7  information but has no control over how a third party advertises, it cannot be held liable for a

8  deceptive trade practice.  See Wilson v. Stratosphere Corp., 371 Fed. Appx. 810, 2010 WL1050142

9  (9th Cir. 2010).  In the Wilson case, the court found that plaintiff could not hold the Stratosphere

10  liable for additional fees charged by hotels.com simply because the Stratosphere provided its room

11  rates to the website.  Id. at 811.  WMCV, even if Global Accents has standing to raise these claims,

12  was unaware of SMI's fraudulent attempt to settle with Global Accents and cannot be held liable for

13  those actions.

14             **4.    Declaratory Relief Claim is Unsupported.**

15         To obtain declaratory relief, a justiciable controversy must exist between persons whose

16  interests are adverse, the plaintiff must have a legally protected interest in the controversy and the

17  issue involved must be right for judicial determination.  Knittle v. Progressive Cas. Ins. Co., 112

18  Nev., 8, 10, 908 P.2d 724, 725 (1996).  A hypothetical speculative controversy is not sufficient to

19  warrant declaratory relief.  Id. at 11, 908 P.2d at 726.  Further, declaratory relief is "not intended to

20  furnish [a plaintiff] with a second cause of action for the determination of identical issues".

21  Josephsen v. EMC Mort. Corp., 2:10-cv-336-JCM-PAL, 2010 U.S. Dist. Lexus 128053, at *8 (D.

22  Nev. Nov. 19, 2010). Global Accents has never defined what controversy needed to be declared or the

23  evidence that supported a declaration of any kind.  The evidence presented in this case squarely falls

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

1  into contract related claims and defenses.  For which no further declaration is necessary.  Further,

2  Global Accents never presented evidence of a controversy or an issue that required declaration.  In

3  these circumstances, this claim should be dismissed.

4  **IV.    CONCLUSION**

5       WMCV is entitled to a judgment and its full damages arising from Global Accents'

6  undisputed breach of the Lease.  There are no facts disputing the validity of the Lease, its terms or the

7  breach and subsequent damages.  Further, there is no credible evidence supporting the reasonableness

8  of Global Accents alleged belief in SMI's apparent authority.  This defense is not available where

9  Global Accents ignored information it actually knew, ignored express limitations on SMI's authority

10  and failed to take any steps to diligently or prudently examine SMI's authority. WMCV requests this

11  court reject the apparent authority defense, dismiss Global Accents counterclaims and award a

12  judgment in favor of WMCV for all of its damages, interest, fees and costs.

13       Dated this 10 day of July, 2013.

14                 MARQUIS AURBACH COFFING

15

16                 By     /s/ Jason M. Gerber
                    Terry A. Coffing, Esq.
                    Nevada Bar No. 4949

17                      Jason M. Gerber, Esq.
                    Nevada Bar No. 9812

18                      Jack F. DeGree, Esq.
                    Nevada Bar No. 11102

19                      10001 Park Run Drive
                    Las Vegas, Nevada 89145
                    *Attorneys for Plaintiff*

20

21

22

23

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

**<u>CERTIFICATE OF SERVICE</u>**

In accordance with Fed.R.Civ.P.5, I hereby certify that on the 10th day of July, 2013, a copy of the foregoing **<u>PLAINTIFF'S CLOSING BRIEF</u>** was served on the parties via CM-ECF filing:

Michael B. Lee, Esq.
2000 S. Eastern Avenue
Las Vegas, Nevada 89104
*Attorney for Defendant Global Accents*


      /s/ Cheryl Becnel
An employee of Marquis Aurbach Coffing

MAC:11320-004 2021122_1 7/10/2013 11:30 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816