# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| WMCV Phase 3, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:10-cv-00661-GMN-NJK |
| vs. | ) | |
| | ) | **ORDER** |
| Shushok & McCoy, Inc.; Matthew J. Travis; | ) | |
| Matt Turner; Richard Birdwell; and Global | ) | |
| Accents, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| Global Accents, Inc., | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WMCV Phase 3, LLC, | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| _____ | ) | |
| | ) | |
| Global Accents, Inc., | ) | |
| | ) | |
| Cross-Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Shushok & McCoy, Inc.; Matthew J. Travis; | ) | |
| Matt Turner; and Richard Birdwell, | ) | |
| | ) | |
| Cross-Defendants. | ) | |
| _____ | ) | |

Before the Court are the arguments and proposed findings of fact and conclusions of law submitted by WMCV Phase 3, LLC, and Global Accents, Inc., after a bench trial.

I.      **BACKGROUND**

This case arises out of the failure of commercial tenants to pay rent, and the fraud committed by the former collection agency employed by the commercial landlord, WMCV Phase 3, LLC ("WMCV").  The former commercial tenants are Global Accents, Inc. ("Global"), and Couture International, Inc. ("Couture").  The former collection agency representatives are Shushok & McCoy, Inc. ("Shushok"), Matthew Travis, Matt Turner, and Richard Birdwell (collectively, "the SMI Defendants").

WMCV and Global are the only parties with triable issues remaining in this action.  In August 2011, the Court granted WMCV's request to enter default against Shushok. (ECF No. 82.)  Matthew Travis filed a Notice of Bankruptcy on May 21, 2012. (ECF No. 132.)  Default was entered against Richard Birdwell and Matt Turner on November 7, 2012. (Clerk's Entry of Default, ECF No. 148.)  WMCV settled with Couture on February 6, 2013. (Order on Stipulation, ECF No. 186.)

A.      **Procedural History**

WMCV alleged claims against Global for: (1) fraudulent or intentional misrepresentation; (2) civil conspiracy; (3) breach of lease; (4) breach of implied covenant of good faith and fair dealing; (5) unjust enrichment.  WMCV also seeks declaratory relief, special damages, and punitive damages. (First Am. Compl., ECF No. 33.)  WMCV subsequently dismissed its claims for fraud and civil conspiracy against Global. (*See* Trial Brief, 4:26–28, ECF No. 157; Bench Trial Day One Transcript, 3–4, ECF No. 201; Proposed Findings of Fact, Conclusions of Law, 11:22–23, ECF No. 202.)  Therefore, the remaining three causes of action alleged by WMCV against Global are for breach of lease (breach of contract), breach of implied covenant of good faith and fair dealing, and unjust enrichment.

In its Answer, Global denied all claims, and alleged counterclaims against WMCV for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3)

1  deceptive trade practices – Nev. Rev. Stat. § 598.0915. (Answer & Countercl., ECF No. 35.)

2  Global also seeks declaratory relief. (*Id*.)  WMCV denied all counterclaims. (Answer, ECF No.

3  42.)  Global subsequently dismissed its claim for deceptive trade practices. (*See* Proposed

4  Findings of Fact, Conclusions of Law, 2:5 n.3, 11:26–27, ECF No. 202.)  Therefore, the

5  remaining two causes of action alleged by Global against WMCV are for breach of contract and

6  breach of the covenant of good faith and fair dealing.

7          On June 11 and 12, 2013, the Court conducted a bench trial for the claims remaining

8  between WMCV and Global. (Mins. of Proceedings, ECF Nos. 196, 197; Transcript, Day One,

9  ECF No. 201; Transcript, Day Two, ECF No. 202.)  The parties jointly submitted thirty-three

10  exhibits that that the Court admitted into evidence, and the Court admitted two additional

11  exhibits. (Transcript, Day One, 25, ECF No. 201; Exs. 1–33, 533, 534.)  The Court permitted

12  the parties to submit closing arguments in writing, in the form of Post-Trial Closing Briefs.

13  (Mins. of Proceedings, ECF No. 197.)  Subsequently, the parties submitted their Post-Trial

14  Closing Briefs (ECF Nos. 203, 205) and Proposed Findings of Fact and Conclusions of Law

15  (ECF Nos. 202, 204).  The matter stood submitted as of July 10, 2013.

16      **B.   Admitted and Uncontested Facts[1]**

17          WMCV owns a parcel of real property located at 455 S. Grand Central Pkwy in Las

18  Vegas, Nevada ("the property"). (Pretrial Order, 4:¶1, ECF No. 141.)  The property, along with

19  other adjacent parcels unrelated to this matter, make up what is commonly known as World

20  Market Center Las Vegas. (*Id*. at 7:¶2.)  On August 7, 2006, WMCV's predecessor-in-interest

21  entered into a lease agreement as landlord ("the Global Accents Lease"[2]) with Global as tenant

22  for the space within the property designated as C-875, to commence on July 1, 2008. (*Id*. at

23  4:¶2.)  The Global Accents Lease was later assigned to WMCV as landlord and amended to

24  _____

25  [1] In the Pretrial Order, the parties stipulated to the following admitted and uncontested facts, and the Court so finds.
[2] The Global Accents Lease is the basis for WMCV's contractual claims against Global.

1    change the leased space to C-775. (*Id*. at 4:¶3, 5:¶4.)  On August 1, 2008, Global failed to pay

2    rent, despite several requests, and it was evicted on December 30, 2008, still owing WMCV

3    $360,831.00. (*Id*. at 5:¶¶5–6.)  On May 21, 2007, WMCV entered into a lease agreement with

4    Couture ("the Couture Lease") for the space designated as C-1164, to commence on July 1,

5    2008. (*Id*. at 5:¶7.)  On August 1, 2008, Couture failed to pay rent, despite several requests, and

6    it was evicted on December 31, 2008, still owing WMCV $695,500.32. (*Id*. at 5:¶¶8–9.)

7    WMCV was unable to lease either space, C-775 or C-1164, to new tenants. (*Id*. at 5:¶¶6, 9.)

8           In 2007, WMCV had hired Shushok as a commercial collection agent to recover past

9    due amounts from tenants such as Global and Couture. (*Id*. at 5:¶10.)  However, Shushok had

10   no actual authority to enter into agreements with tenants on behalf of WMCV. (*Id*. at 5:¶10.)  In

11   June of 2009, WMCV unequivocally instructed Shushok to cease collection activities against

12   all tenants, including Global and Couture. (*Id*. at 5–6:¶11.)

13          Thereafter, in July 2009, Richard Birdwell signed a "Lease Termination and Release

14   Agreement" ("the Couture Release") with Couture on behalf of Shushok and falsely

15   represented himself to be "Counsel" for "World Market Center Las Vegas, [Inc.], a [Nevada

16   Corporation]" purporting to release Couture from its liability under the Couture Lease in

17   exchange for $20,000 to be paid – and which was paid – directly to Shushok. (*Id*. at 6:¶¶12, 14

18   (brackets in original).)  Birdwell was not WMCV's agent or employee of any sort, and neither

19   he nor Shushok were authorized to enter into any agreement on WMCV's behalf. (*Id*. at 6:¶15.)

20          In August 2009, Matt Turner, on behalf of Shushok and falsely representing himself as

21   the "Director" of "World Market Center Las Vegas, [Inc.], a [Nevada Corporation]" entered

22   into a similar "Lease Termination and Release Agreement" ("the Global Accents Release"[3])

23   with Global in exchange for $8,200 to be paid – and which was paid – directly to Shushok. (*Id*.

24   at 6:¶¶16–17 (brackets in original).)  Turner was not WMCV's agent or employee, and neither

25

[3] The Global Accents Release is the basis for Global's contractual claims against WMCV.

1    he nor Shushok were authorized to enter into any agreement on WMCV's behalf. (*Id*. at 7:¶18.)

2    WMCV has received no part of the funds paid by Global and Couture in exchange for

3    these purported releases. (*Id*. at 7:¶19.)  Global and Couture did not learn from WMCV that

4    Shushok had been terminated until after they had already executed and funded their respective

5    releases with Shushok. (*Id*. at 7:¶20.)

6    **II.**   **DISCUSSION**

7    In its defense against WMCV's claims, and in its counterclaims against WMCV, Global

8    argues that Shushok was WMCV's agent when it executed the Global Accents Release, making

9    the Global Accents Release valid and enforceable against WMCV.  Global argues that even if

10   Shushok's actual authority had been revoked when it signed the release, Shushok had apparent

11   authority to bind WMCV, because WMCV had held Shushok out as its agent and Global had

12   no notice that Shushok's agency had been revoked.

13   In October 2010, the Court held that there was a question of fact as to whether Shushok

14   had apparent authority to enter into the Global Accents Release, but no question that Shushok

15   did not have actual authority to enter into the release. (Order, Oct. 5, 2010, ECF No. 25.)

16   WMCV had argued that reasonable reliance on apparent authority is a question of fact

17   under Nevada law, and the Court agreed, quoting from *Great Am. Ins. Co. v. Gen. Builders*,

18   Inc., 934 P.2d 257, 261 (Nev. 1997):

19       A party claiming apparent authority of an agent as a basis for contract formation
         must prove (1) that he subjectively believed that the agent had authority to act for
20       the principal and (2) that his subjective belief in the agent's authority was
         objectively reasonable.  Apparent authority is, in essence, an application of
21       equitable estoppel, of which reasonable reliance is a necessary element.  As
         previously noted by this court, "the party who claims reliance must not have
22       closed his eyes to warnings or inconsistent circumstances."  Apparent authority,
         including a third party's reasonable reliance on such authority, is a question of
23       fact.

24

25   (*Id*. at 10:16-20.)

1   The Court also agreed with WMCV's contention that there was a question of fact as to

2   whether it was reasonable for Global to believe that Shushok had the authority to enter into an

3   agreement on behalf of WMCV. (*Id*. at 10:22-23.)  The Court explained that this is a material

4   fact, because without reliance that is reasonable, there can be no finding of apparent authority,

5   quoting from *Ellis v. Nelson*, 233 P.2d 1072, 1076 (Nev. 1951):

> [T]he reliance must have been a reasonable one, consistent with the exercise of
> reasonable prudence, and the party who claims reliance must not have closed his
> eyes to warning or inconsistent circumstances.  Authority is not 'apparent' simply
> because the party claiming has acted upon his conclusions.  It is not 'apparent,' in
> contemplation of law, simply because it looked so to him.  It is not a situation
> where one may read while he runs.  It is only where a person of ordinary prudence,
> conversant with business usages and the nature of the particular business, acting in
> good faith, and giving heed not only to opposing inferences but also to all
> restrictions which are brought to his notice, would reasonably rely, that a case is
> presented within the operation of the rule.  If the inferences against the existence
> of the authority are just as reasonable as those in favor of it, there can be no
> reliance within this rule.

14   (*Id*. at 10:23-24–11:1-9.)

15   The Court also addressed Global's argument that because WMCV was not a party to the

16   Global Accents Release, and the party identified on the Release was "World Market Center Las

17   Vegas, a [Nevada corporation] ('Landlord')," that Global reasonably believed that this was

18   WMCV's formal corporate name and that Turner was a director of the corporation. (*Id*. at

19   11:18-21 (brackets in original).)  The Court noted that the signature on the Global Accents

20   Release was suspect, naming "Matt Turner" as "Director" instead of "agent" of "World Market

21   Center Las Vegas, [Inc.], a [Nevada Corporation]." (*Id*. at 11:20-21 (brackets in original).)

22   It is undisputed that for a period of time the SMI Defendants had actual authority to act

23   on WMCV's behalf as its commercial collection agent for the purposes of recovering past due

24   debt and rent from tenants.  The remaining point of disagreement between the parties is

25   whether a distinction can be made between this authority as collection agent, and the authority

1    to negotiate on WMCV's behalf and to bind WMCV as it pertained to the lease dispute and

2    purported settlement.  This distinction is important because Global's argument in its defense is

3    that it relied on the SMI Defendants' apparent authority in negotiating the Global Accents

4    Release.  In order to prevail, Global must not only show that it relied on such authority, it must

5    show that its subjective belief in this authority was objectively reasonable.

6       In the parties' previous dispositive motions, the Court found that no evidence had been

7    presented to establish that WMCV represented Shushok as its agent with authority to negotiate

8    and bind WMCV in the execution of the Global Accents Release, as opposed to simply its

9    agent to collect rent.  Accordingly, the factual question for the Court to determine here is

10   whether Global's subjective belief in the SMI Defendants' authority to negotiate the Global

11   Accents Release was objectively reasonable.

12      In order to determine the reasonableness of Global's belief at trial, the Court evaluated

13   the credibility of the witnesses and the strength of the evidence supporting or refuting the SMI

14   Defendants' authority to negotiate on WMCV's behalf.  Of primary relevance was evidence of

15   which Global was aware, and which therefore may have affected Global's belief.  Accordingly,

16   the Court gave little to no weight to evidence of which Global was unaware, because such

17   evidence could therefore not have affected Global's belief.

18      As discussed below, and upon consideration of the evidence, the Court finds that

19   judgment is appropriate in favor of Global and against WMCV as to the parties' opposing

20   claims for breach of contract.  Furthermore, the Court finds that Global's claim for breach of

21   the implied covenant of good faith and fair dealing shall be dismissed; and WMCV's claim for

22   breach of the covenant of good faith and fair dealing shall be dismissed.  Finally, the Court

23   finds that WMCV has not met its burden to show its entitlement to a damages award for unjust

24   enrichment and therefore that claim will be dismissed.  Accordingly, the Court will award

25   damages solely for WMCV's breach of the terms of the Global Accents Release.

1

2

     **A.**    <u>**Breach of Contract and of the Implied Covenant of Good Faith**</u>

             <u>**and Fair Dealing**</u>

3

4

5

6

7

8

       To succeed on a claim for breach of contract a plaintiff must show: (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach. *See Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259, 1263 (Nev.2000) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement").

9

10

11

12

13

14

15

16

17

18

19

       In Nevada, an implied covenant of good faith and fair dealing exists in every contract. *A.C. Shaw Const., Inc. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989).  Where breach of the implied covenant of good faith and fair dealing is alleged, a plaintiff may claim damages under a contract theory and/or a tort theory. *Hilton Hotels Corp. v. Butch Lewis Prods., Inc*., 862 P.2d 1207, 1209 (Nev. 1993).  Under a contract theory, a plaintiff may assert a claim where "the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–923 (Nev. 1991).  Under a tort theory, a plaintiff must show that there exists a special relationship between the tort victim and the tortfeasor, and such an action arises only "in rare and exceptional cases." *Ins. Co. of the West v. Gibson Tile Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006) (internal quotation marks omitted).

20

21

22

23

24

25

       WMCV alleges that the Global Accents Lease is a valid and existing contract. (First Am. Compl., 19:¶154.)  WMCV alleges that it "allowed Global Accents to occupy the Global Accents Premises, and therefore, performed under the terms of the Global Accents Lease." (*Id*. at 19:¶155.)  WMCV alleges that Global breached the terms of the Global Accents Lease when Global failed to pay rent and additional rent on a monthly basis for the entire lease term, and failed to return the premises to its original condition following termination of the lease. (*Id*. at

1   19:¶¶155-160.)  Also, WMCV alleges that Global entered into the Global Accents Lease "with
2   no intention of complying with [the terms]," and "performed in a manner unfaithful to the
3   purpose of the [Global Accents Lease]." (*Id*. at 21:¶¶175-176.)  WMCV appears to allege
4   breach of the implied covenant of good faith and fair dealing under a contract theory, because
5   WMCV includes no allegation of the requisite special relationship for a tort theory.

6       In its Counterclaim, Global alleges that WMCV breached the terms of the Global
7   Accents Release "by its action and conduct," but does not specifically allege the facts
8   supporting an allegation that the Global Accents Release was a valid contract. (Countercl.,
9   27:¶17, ECF No. 35.)  Also, Global alleges that "[a]s a result of [WMCV]'s actions, it breached
10  its obligations of good faith and fair dealing toward Global with respect to the Release." (*Id*. at
11  27:¶23.)  In its general allegations, Global alleges that Shushok was "[WMCV]'s authorized
12  agent with actual and apparent authority," that WMCV held out the SMI Defendants "as having
13  authority to resolve the lease dispute between [WMCV] and Global, and that "[a]t no time did
14  [WMCV] inform Global that [Shushok] was allegedly terminated as its authorized agent for the
15  lease dispute." (*Id*. at 26:¶¶7, 8, 13.)

16      As to these claims, the Court hereby makes the following Findings of Fact and
17  Conclusions of Law.

18      **1.   Findings of Fact**

19      Based upon the evidence and testimony presented to the Court, and as shown below, the
20  Court finds that Global subjectively believed that Shushok had authority to act for WMCV by
21  entering into an agreement on WMCV's behalf.  The Court also finds that Global's subjective
22  belief was objectively reasonable.  Strongly guiding the Court's findings is the standard
23  articulated by the Nevada Supreme Court in *Ellis v. Nelson*:

24          [T]he reliance must have been a reasonable one, consistent with the exercise of
25          reasonable prudence, and the party who claims reliance must not have closed his
            eyes to warning or inconsistent circumstances.  Authority is not 'apparent' simply

because the party claiming has acted upon his conclusions. It is not 'apparent,' in contemplation of law, simply because it looked so to him. It is not a situation where one may read while he runs. It is only where a person of ordinary prudence, conversant with business usages and the nature of the particular business, acting in good faith, and giving heed not only to opposing inferences but also to all restrictions which are brought to his notice, would reasonably rely, that a case is presented within the operation of the rule. If the inferences against the existence of the authority are just as reasonable as those in favor of it, there can be no reliance within this rule.

233 P.2d 1072, 1076 (Nev. 1951).

The Court answers the parties' contested issues of fact as follows:

1.    Whether the SMI Defendants had apparent authority to execute the Global Accents Release on behalf of WMCV. **Yes.**

2.    Whether WMCV is estopped from denying that the SMI Defendants had apparent authority to negotiate and execute the Global Accents Release as a result of WMCV's initial retention of Shushok to collect past due debts and rents from WMCV's tenants. **Yes.**

3.    Whether WMCV represented to Global that the SMI Defendants had authority to collect back rent and debt on WMCV's behalf. **Yes.**

4.    Whether WMCV represented to Global that the SMI Defendants had authority to negotiate and execute lease termination and release agreements on WMCV's behalf. **Yes.**

5.    Whether a distinction can be made between representing that the SMI Defendants had authority to collect back rent and debt on behalf of WMCV and representing that the SMI Defendants had authority to negotiate and execute lease termination and release agreements on behalf of WMCV. **No.**

6.    Whether representing that the SMI Defendants had authority to collect back rent and debt on behalf of WMCV is the same as representing that the SMI Defendants had authority to negotiate and execute lease termination and release agreements. **Yes.**

7.    Whether Global subjectively believed that the SMI Defendants had authority to act

for WMCV. **Yes.**

8.   Whether WMCV agents/officers/managerial agents made representations regarding the SMI Defendants' apparent authority to negotiate the Global Accents Release upon which Global Accents reasonably relied. **Yes.**

9.   Whether Global's subjective belief that the SMI Defendants had authority to act for WMCV was objectively reasonable. **Yes.**

10.   Whether Global exercised reasonable prudence in signing the Global Accents Release and in paying $8,200 and $20,000 respectively directly to Shushok. **Yes.**

11.   Whether Global closed its eyes to warnings and inconsistent circumstances which would have put Global on notice to investigate further and confirm whether the SMI Defendants had authority to enter into the Global Accents Release on behalf of WMCV. **No.**

12.   Whether inferences against the SMI Defendants having authority to enter into the Global Accents Release on behalf of WMCV are as reasonable as those inferences in favor of the SMI Defendants having such authority. **No.**

The Court also adds the following findings of fact, based upon the evidence presented at trial:

1.   The Global Accents Release signed by Danny Partielli on behalf of Global identified the "Landlord" as "World Market Center Las Vegas, [Inc.] a [Nevada corporation]." Ex. 26 (brackets in original).  While all previous contractual and financial documents identify the landlord and payee as WMCV Phase 3 LLV, *see* Exs. 4–10, 12–16, "dba World Market Center Las Vegas" was used in the Summary Eviction Order, *see* Ex. 18, and "World Market Center" was used in correspondence under the signature block for Luca Marcotulli, Ex. 11.

2.   Witness John Leleu testified that "World Market Center" was an entity that did not exist and that WMCV never accepted payment for World Market Center.  However, Exhibits

/ / /

503 and 504[4] are checks made payable to "World Market Center" which were cashed by WMCV. They are dated September 2008 and May 15, 2009. Leleu explained that checks were sent to the Bank of America lockbox for deposit and that WMCV never signed or endorsed checks.

       3.    Exhibit 12, the financial statement to Global, does instruct that the rent is due and payable to WMCV Phase 3 LLC. Likewise, Exhibit 13, dated August 12, 2008, advises Global that the payment is to be made payable to WMCV Phase 3 LLC as does the financial statement at Exhibit 14. However, in Exhibit 11, the email chain between Danny Partielli and Luca Marcotulli, the phrase "World Market Center" can be seen under Luca Marcotulli's name. Witness Leleu explained this was just used as a service mark and was not an actual entity. There's no evidence that Global was aware of this distinction and it is not unreasonable for Global to be unaware of the distinction considering Exhibits 503 and 504[5] which are checks made payable to World Market Center, dated September 2008 and May 15, 2009, respectively. Additionally, Exhibit 18, WMCV's Order for Summary Eviction dated December 30, 2008, includes the term "dba World Market Center Las Vegas.

       4.    The letters that Global received from WMCV all said "World Market Center. (Exs. 527–29.) The Lease and Amendment also reference WMCV as "World Market Center." (Ex. 527.)

       5.    WMCV did not contact Global to advise that Shushok had been terminated in June 2009.

       6.    Witness John Leleu said there was no need to advise or notify Global that Shushok was terminated because the new collection agency, Williams, Charles & Scott, would contact

---

[4] While Exhibits 503 and 504 were not admitted into evidence, Leleu did review them on the stand and testify about them.
[5] *See* n.4.

them all including Global.  However, no new collection agency ever did contact Global or Danny Partielli.

7.   Global never received any actual notice that Shushok had no actual authority, prior to the execution of the Global Accents Release.

8.   During a WMCV summer show in 2009, a paper sign was posted which said Global Accents but pointed to a booth belonging to someone else.  Leleu told managers to let it go because the entity had signed a contract to participate in the show.

9.   Leleu testified that Mr. Partielli has a poor reputation for truthfulness.  However, Jack Kashani testified that "Danny is a close friend of mine . . . He is an honorable man." *See* Ex 533.

10.   Witness Jack Kashani has been involved in real estate ventures with Danny Partielli's father.

11.   Kashani was Director of Leasing & Marketing for WMCV during 2009.  He received a phone call & email from Danny Partielli in Dec 2008 about the Global Accents Release incident.  Kashani did not deny that the Global Release was valid – nor was any claim of invalidity made in the December 30, 2009, email which was admitted as Exhibit 533.

12.   Kashani's written Declaration dated Oct 17, 2011, Ex. 534, was never signed by Kashani.  It was prepared by counsel for inclusion with the MSJ. (ECF No. 90-5.)  It was offered into evidence by Global and admitted as Exhibit 534 pursuant to Rule 803(e) of the Federal Rules of Evidence.  Global argues the Declaration is consistent with Global's claim that Partielli reasonably believed that the Global Accents Release offer was actually from WMCV.  Kashani's written Declaration did not deny that he informed Partielli to accept the offer, and on the witness stand, he stated that he could not recall.

13.   Partielli testified that he was repeatedly told at least two times that he could not negotiate with WMCV employee Esmeralda but would have to resolve issues with Shushok

1  before he could participate in the February 2009 trade show.

2       14.    The letter to Danny from Robert Maricich, President and CEO of World Market

3  Center Las Vegas, Ex. 530, directed Danny to speak to Esmeralda about next show but she

4  referred him to Shushok.

5       15.    Partielli's testimony that he called Jack Kashani to complain that the Global

6  Accents Release offer was too high but that Kashani advised him to accept the Global Release

7  as a good offer, appears likely to be true.

8       **2.    Conclusions of Law**

9       As shown below, the Court concludes that Global has met its burden to show that

10  WMCV held out the SMI Defendants as having apparent authority to enter into the Global

11  Accents Release; therefore Global's defense succeeds and the Global Accents Lease is not

12  enforceable.  Accordingly, the Court holds that judgment must be entered in favor of Global

13  and against WMCV for the parties' opposing claims for breach of contract.

14       As for Global's contractual claim for breach of the implied covenant of good faith and

15  fair dealing, the Court concludes that the evidence does not support a judgment in favor of

16  Global as to this claim, and it will therefore be dismissed.  To the extent that Global's cause of

17  action for breach of the covenant of good faith and fair dealing is brought under a tort theory,

18  the Court concludes that Global has not shown the requisite special relationship, and such a

19  claim should also be dismissed.  The Court also concludes that WMCV's claim for breach of

20  the covenant of good faith and fair dealing is unsupported by the evidence, and shall be

21  dismissed.

22       The Court answers the parties' contested issues of law as follows:

23       1.    Whether the SMI Defendants had apparent authority to execute the Global Accents

24  Release on behalf of WMCV. **Yes.**

25       2.    Whether the Global Accents Release is enforceable against WMCV. **Yes.**

1    3.    Whether Global is liable to WMCV for breach of contract under the Global

2  Accents Lease. **No.**

3    4.    Whether WMCV is liable to Global for breach of contract under the Global

4  Accents Release. **Yes.**

5    5.    Whether Global is liable to WMCV for breach of the implied covenant of good

6  faith and fair dealing regarding the Global Accents Lease. **No.**

7    6.    Whether WMCV is liable to Global for breach of the covenant of good faith and

8  fair dealing regarding the Global Accents Release. **No.**

9      **B.    <u>Unjust Enrichment</u>**

10      A defendant's breach of its own contract with a plaintiff is not a tort recognized in

11  Nevada. *Bartsas Realty, Inc. v. Nash*, 402 P.2d 650, 651 (Nev. 1965).  "An action based on a

12  theory of unjust enrichment is not available when there is an express, written contract, because

13  no agreement can be implied when there is an express agreement." *Leasepartners Corp. v.*

14  *Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997).  Thus the doctrine of unjust enrichment

15  only "applies to situations where there is no legal contract but where the person sought to be

16  charged is in possession of money or property which in good conscience and justice he should

17  not retain but should deliver to another [or should pay for]." *Id*.

18      WMCV alleges that Global "took possession of the Global Accents Premises, but

19  defaulted on its obligations under the Global Accents Lease," and that "the benefit received by

20  Global Accents through its receipt and use of the Global Accents Premises rightfully belongs to

21  WMCV." (First Am. Compl., 21:¶¶180-181.)

22      WMCV argues that it brings its claim for unjust enrichment in the alternative, if the

23  Court finds that apparent authority existed to release Global from its contractual obligations.

24  (*See* Transcript Day One, 9–10, ECF No. 201.)  WMCV argues that even if that is the Court's

25  finding, Global still acted in bad faith and is still unjustly enriched because the settlement was

1  for such a small amount of the total amount that was due, and that therefore WMCV may

2  pursue its claim against Global for unjust enrichment for the balance that would be owing

3  minus the $8,200 paid to the SMI Defendants. (*Id*.)

4      Here, and as discussed above, the Court finds that the Global Accents Release is

5  enforceable and that the Global Accents Lease is not an enforceable written contract.

6  Therefore, WMCV's claim for unjust enrichment may be considered on the merits.  However,

7  the Court does not find that WMCV has met its burden to show unjust enrichment on the part

8  of Global because the evidence does not show that Global "is in possession of money or

9  property which in good conscience and justice [it] should not retain but should deliver to

10  another."  Accordingly, the Court will dismiss this claim.

11      **C.    <u>Damages</u>**

12      The Global Accents Release provides for an award of attorneys' fees, costs, and

13  expenses to the prevailing party "[i]f any suit is brought to enforce or interpret the terms of this

14  Agreement or any obligation set out in this Agreement." Ex. 26.  Global has not alleged facts

15  nor brought evidence supporting any further damages award for breach of the Global Accents

16  Release.  Accordingly, the Court concludes that Global is entitled to an award of damages for

17  reasonable attorneys' fees, costs, and expenses as a result of WMCV's breach of contract.

18  **III.    <u>CONCLUSION</u>**

19      **IT IS HEREBY ORDERED** that judgment shall be entered in favor of Global Accents,

20  Inc., for its breach of contract claim against WMCV Phase 3, LLC, and that Global Accents,

21  Inc., is entitled to a damages award in an amount equivalent to reasonable attorneys' fees, costs,

22  and expenses for this action.

23      **IT IS FURTHER ORDERED** that judgment shall be entered in favor of WMCV Phase

24  3, LLC, as to the remaining claims of Global Accents, Inc., against WMCV Phase 3, LLC, and

25  that these claims shall be dismissed.

**IT IS FURTHER ORDERED** that judgment shall be entered in favor of Global Accents, Inc., for the claims of WMCV Phase 3, LLC, against Global Accents, Inc, and that these claims shall be dismissed.

**DATED** this 27th day of December, 2013.

_____
Gloria M. Navarro
United States District Judge