1

2

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3

4

WMCV PHASE 3, LLC,               )

             )

5

                Plaintiff,       )     Case No.: 2:10-cv-0661-GMN-NJK

    vs.                       )

6

             )      **ORDER**

SHUSHOK & MCCOY, INC.; *et al*.,     )

7

             )

          Defendants.    )

8

             )

9

    Pending before the Court is the Motion for Summary Judgment, (ECF No. 292), filed by

10

Plaintiff WMCV Phase 3, LLC ("WMCV"). *Pro se* Defendant Richard Birdwell filed a

11

Response in opposition, (ECF No. 299)[1], to which WMCV replied, (ECF No. 304).

12

    Also before the Court is WMCV's Motion for Default Judgment against Defendants

13

Shushok & McCoy, Inc. ("Shushok") and Matt Turner. (ECF No. 291).  To date, no response to

14

this Motion has been filed.  For the reasons stated herein, the Court will grant the Motion for

15

Summary Judgment in part, and will grant the Motion for Default Judgment in full.

16

## I.    <u>BACKGROUND</u>

17

    This case has a long procedural history in this Court, but for the purposes of this Order

18

the Court will address only the details and allegations relevant to the instant Motions.  This case

19

arises out of the failure of two commercial tenants to pay rent and the subsequent wrongful acts

20

committed by a collection agency and its employees.  The aforementioned commercial tenants

21

were Global Accents, Inc. ("Global Accents"), and Couture International, Inc. ("Couture").

22

The collection agency is Defendant Shushok, who employed Defendants Richard Birdwell and

23

---

24

    [1] In light of Defendant Birdwell's status as a *pro se* litigant, the Court has liberally construed his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

25

1  Matt Turner at all times relevant to this case.

2       WMCV owns a parcel of real property that is commonly known as the World Market

3  Center Las Vegas. (*E.g.*, Order 3:17-20, ECF No. 209).  Global Accents and Couture are

4  former tenants of the World Market Center that were evicted for non-payment of rent in

5  December 2008. (*Id.* at 4:1-7).  At the time of their evictions, Global Accents owed

6  $360,831.00 and Couture owed $695,500.32 pursuant to their respective lease agreements.

7  (*Id.*).

8       WMCV hired Defendant Shushok in 2007 as a commercial collection agent to recover

9  debts from tenants in default. (*Id.* at 4:8-9).  However, this relationship ended in June 2009

10 when WMCV instructed Shushok to cease collection activities against its tenants, including

11 Global Accents and Couture. (*Id.* at 4:11-12).  At no point during their relationship did WMCV

12 authorize Shushok to enter into agreements with tenants on WMCV's behalf. (*Id.* at 4:10-11).

13      In July 2009, Defendant Birdwell allegedly represented himself as "counsel" for "World

14 Market Center Las Vegas" and negotiated an agreement with Couture that purported to release

15 Couture from its liability to WMCV in exchange for $20,000, which was paid directly to

16 Shushok. (*Id.* at 4:13-19).

17      Similarly, in August 2009, Defendant Turner allegedly represented himself as the

18 "director" of "World Market Center Las Vegas." (*Id.* at 4:20-21).  Following negotiations that

19 were conducted by Defendant Birdwell, Defendant Turner entered into an agreement with

20 Global Accents that purported to release Global Accents from its liability to WMCV in

21 exchange for $8,200, which was paid directly to Defendant Shushok. (*Id.* at 4:21-24); (Birdwell

22 Deposition 78:6-25, Ex. 7 to Mot. for Summ. J., ECF No. 292-1).

23      WMCV received no part of the proceeds that were paid in exchange for the release of

24 Global Accents' and Couture's obligations under their respective lease agreements. (*Id.* at 5:2-

25 3).

1    This case originally involved claims of breach of contract, breach of the covenant of

2  good faith and fair dealing, and unjust enrichment asserted by WMCV against Global Accents

3  and Couture.  Through these claims, WMCV sought to recover the full amounts due under the

4  lease agreements.  Prior to trial, WMCV settled its claims against Couture.  The terms of this

5  settlement provided that Couture would pay WMCV $150,000 in exchange for the dismissal of

6  WMCV's claims. (Settlement Agmt. at pp. 2-3, ECF No. 292-2).  As for WMCV's claims

7  against Global Accents, following a two-day bench trial that took place on June 11 and 12,

8  2013, the Court found that Defendant Shushok and its employees had apparent authority to

9  execute the agreements and release Global Accents from its debt to WMCV.  As a result of this

10  finding, the Court entered a judgment in favor of Global Accents as to all of WMCV's claims.

11  (ECF No. 210).

12    Based on the allegation that Defendants Birdwell and Turner executed agreements with

13  Global Accents and Couture despite knowing that they lacked the requisite authority, WMCV

14  has asserted claims for (1) civil conspiracy; (2) conversion; and (3) intentional interference with

15  contractual relations.  In its Motion for Summary Judgment, WMCV argues that Defendant

16  Birdwell has failed to raise a genuine issue of material fact as to each of the claims against him.

17  In its Motion for Default Judgment, WMCV requests that judgment be entered against

18  Defendants Shushok and Turner.  However, the Court has already ordered that default

19  judgment be entered against Defendant Shushok, (Order, ECF No. 82), and therefore the Court

20  will consider this Motion only as it relates to Defendant Turner.  The Court will first address

21  the Motion for Summary Judgment, and will then discuss the Motion for Default Judgment.

22  **II.    MOTION FOR SUMMARY JUDGMENT (ECF NO. 292)**

23    **A.    Legal Standard**

24    The Federal Rules of Civil Procedure provide for summary adjudication when the

25  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

1   affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

2   is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

3   may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

4   (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable

5   jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if

6   reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

7   in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

8   Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999)).  A

9   principal purpose of summary judgment is "to isolate and dispose of factually unsupported

10  claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

11         In determining summary judgment, a court applies a burden-shifting analysis.  "When

12  the party moving for summary judgment would bear the burden of proof at trial, it must come

13  forward with evidence which would entitle it to a directed verdict if the evidence went

14  uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

15  the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

16  *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

17         In contrast, when the nonmoving party bears the burden of proving the claim or defense,

18  the moving party can meet its burden in two ways: (1) by presenting evidence to negate an

19  essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

20  party failed to make a showing sufficient to establish an element essential to that party's case

21  on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-

22  24.  If the moving party fails to meet its initial burden, summary judgment must be denied and

23  the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

24  398 U.S. 144, 159-60 (1970).

25         If the moving party satisfies its initial burden, the burden then shifts to the opposing

1    party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

2    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

3    the opposing party need not establish a material issue of fact conclusively in its favor.  It is

4    sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

5    parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

6    *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid

7    summary judgment by relying solely on conclusory allegations that are unsupported by factual

8    data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

9    beyond the assertions and allegations of the pleadings and set forth specific facts by producing

10   competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

11        At summary judgment, a court's function is not to weigh the evidence and determine the

12   truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

13   The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

14   in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is

15   not significantly probative, summary judgment may be granted. *See id.* at 249-50.

16   **B.    Discussion**

17        WMCV argues that summary judgment is warranted because Defendant Birdwell has

18   failed to raise a genuine dispute of material fact as to WMCV's claims for (1) conspiracy, (2)

19   conversion, and (3) intentional interference with contractual relations.  The Court will address

20   each of these claims in turn.

21        *1.    Conspiracy*

22        Pursuant to Nevada law, a claim for civil conspiracy "consists of a combination of two

23   or more persons who, by some concerted action, intend to accomplish an unlawful objective for

24   the purpose of harming another, and damage results from the act or acts." *Consolidated*

25   *Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) (quoting

1  *Hilton Hotels v. Butch Lewis Productions*, 862 P.2d 1207, 1210 (Nev. 1993)).

2  Though Defendant Birdwell does not dispute that WMCV has provided evidence to

3  support the elements of a claim for conspiracy, the Court nonetheless declines to grant

4  summary judgment as to this claim.  It is well established that under Nevada law, a civil

5  conspiracy claim does not arise when an employee commits a tort on behalf of his employer.

6  *See, e.g.*, *Collins v. Union Fed. Sav. & Loan* Ass'n, 662 P.2d 610, 622 (Nev. 1983).  In order to

7  demonstrate that an employer and employee carried out an actionable conspiracy, a plaintiff

8  must show that the employee acted for the purpose of gaining an "individual benefit." *See, e.g.*,

9  *id*.  While the evidence on the record demonstrates that Defendant Birdwell was generally paid

10 a commission on accounts he successfully collected, *see* (Birdwell Deposition 74:7-11, Ex. 7 to

11 Mot. for Summ. J., ECF No. 292-1), many statements made by Defendant Birdwell during his

12 deposition indicate that he performed the acts in question purely on behalf of Defendant

13 Shushok, (*id.* at 78:7-9) ("I knew what we were doing was wrong, we shouldn't do it, you

14 know, but it wasn't my company.").  Accordingly, the Court finds that WMCV has failed to

15 satisfy its burden to show that no genuine dispute of material fact exists as to whether

16 Defendant Birdwell attempted to gain an individual benefit through his acts, and thus the

17 Motion for Summary Judgment will be denied as to this claim.

18　　　　　　　*2.  Conversion*

19 Under Nevada law, "Conversion is a distinct act of dominion wrongfully exerted over

20 another's personal property in denial of, or inconsistent with his title or rights therein or in

21 derogation, exclusion, or defiance of such title or rights." *Evans v. Dean Witter Reynolds, Inc.*,

22 5 P.3d 1043, 1048 (Nev. 2000).  Personal property includes "money, goods, chattels, *things in*

23 *action* and evidences of debt." *Gallegos v. Malco Enterprises of Nevada, Inc.*, 255 P.3d 1287,

24 1289 (Nev. 2011) (quoting Nev. Rev. Stat. § 10.045).  "A 'thing in action,' . . . is defined as a

25 'right to bring an action to recover a debt, money, or thing.'" *Id.* (quoting *Black's Law*

1   *Dictionary* 1617, 275 (9th ed. 2009)).

2          In this case, Defendant Birdwell has admitted that he knew Defendant Shushok had no

3   authority to collect on WMCV's accounts because Shushok's relationship with WMCV had

4   been terminated. (Birdwell Deposition 70:14-17).  Additionally, Defendant Birdwell has stated

5   that despite knowing his actions were wrong, he still negotiated debt settlements while falsely

6   claiming he was acting on WMCV's behalf. (*Id.* at 78:6-25).  Moreover, Defendant Birdwell

7   has admitted that he arranged for the payments from these settlements to be sent to Defendant

8   Shushok rather than WMCV. (*Id.* at 72:4-11).  As this evidence is undisputed by Defendant

9   Birdwell, the Court finds that WMCV has satisfied its burden of demonstrating that Defendant

10  Birdwell wrongfully exerted an act of dominion over WMCV's debt-collection rights vis-à-vis

11  Global Accents and Couture, in defiance of WMCV's lawful interests over those rights.

12         Nevertheless, Defendant Birdwell argues that summary judgment is not warranted as to

13  the conversion claim because the Court has already ruled that Defendant Shushok had apparent

14  authority to release Global Accents from its debt to WMCV. (Resp. to Mot. for Summ. J. 6:11-

15  7:9).  This argument is misplaced, however, as the facts of this case clearly demonstrate that

16  Defendant Birdwell knew he lacked the authority to perform the acts in question.

17         The doctrine of apparent authority prevents a principal from denying that a party acted

18  as its agent when the principal, by its conduct, ostensibly clothed the agent with the authority to

19  act. *Ellis v. Nelson*, 233 P.2d 1072, 1076 (Nev. 1951).  This doctrine is often invoked by third

20  parties seeking to enforce agreements against a principal that were made with an agent that the

21  party believed to possess the requisite authority from the principal. *Id.* at 1076-77.  Based on

22  this doctrine, the Court previously found that Global Accents had been released from its debt to

23  WMCV due to Global Accents' reasonable conclusion that Shushok had the authority to collect

24  debt and execute termination agreements on behalf of WMCV. (Order 10:9-17, ECF No. 209).

25         The Court's prior findings in this case do not support Defendant Birdwell's attempt to

1   invoke the apparent authority doctrine to shield himself from liability for the wrongful acts he

2   performed while knowing he lacked authorization from WMCV.  Though it is unclear whether

3   the doctrine of apparent authority can properly be asserted by an agent against his own

4   principal, the question need not be addressed here.  Indeed, it is well established that a party

5   invoking the doctrine of apparent authority must prove, *inter alia*, "that he subjectively

6   believed the agent had authority to act for the principal." *Great Am. Ins. Co. v. Gen. Builders*,

7   Inc., 934 P.2d 257, 261 (Nev. 1997).  In this case, it is undisputed that Defendant Birdwell

8   knew that he lacked the authority to act on behalf of WMCV. (Birdwell Deposition 70:14-17).

9   Accordingly, the Court finds that WMCV's conversion claim against Defendant Birdwell is not

10   barred by the doctrine of apparent authority.

11        Therefore, as WMCV has satisfied its evidentiary burden, and Defendant Birdwell has

12   failed to raise a genuine dispute of material fact, the Court will grant the Motion for Summary

13   Judgment as to WMCV's conversion claim.

14             *3.     Intentional Interference with Contractual Relations*

15        "To establish intentional interference with contractual relations, [a] plaintiff must show:

16   (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional

17   acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the

18   contract; and (5) resulting damage." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d

19   1207, 1210 (Nev. 1993) (quoting *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989)).

20        It is undisputed that WMCV had lease agreements with Global Accents and Couture.

21   (Exs. 9, 10 to Mot. for Summ. J., ECF No. 292).  Defendant Birdwell has admitted that he

22   knew Shushok's debt-collection efforts were based on lease agreements that WMCV had with

23   its clients. *See, e.g.*, (Birdwell Deposition 22:20-23, 32:23-33:1).  Furthermore, Defendant

24   Birdwell testified, in detail, that he pursued the collections at issue despite knowing it was

25   wrong, and that he specifically directed the debtors to send payments to Shushok rather than

1    WMCV. (*Id.* at 72:4-11, 78:7-20).  As a result of Defendant Birdwell's actions, WMCV has

2    been left without a legal remedy to collect the amounts it was owed under the lease agreements.

3    *See* (Order on Stip., ECF No 186); (Judgment Order 10:9-17, ECF No. 209).  Therefore,

4    WMCV has satisfied its evidentiary burden as to each element of its intentional interference

5    with contractual relations claim.

6         Defendant Birdwell argues that this claim fails because the lease agreements at issue

7    were initially disrupted when Global Accents and Couture first refused to pay WMCV the full

8    amounts owed. (Birdwell Resp. 6:16-19).  Because Global Accents and Couture were already

9    in default, Defendant Birdwell asserts that his subsequent actions could not have interfered with

10   the lease agreements. (*Id.*).  However, this argument fallaciously assumes that Global Accents'

11   and Couture's defaults somehow relieved them of their obligations to WMCV.  In fact, even

12   after defaulting, Global Accents and Couture were still obligated to pay WMCV as provided in

13   the lease agreements, and WMCV was entitled to the full amounts owed.  It is undisputed that

14   WMCV lost its ability to recover from Global Accents and Couture as a result of Defendant

15   Birdwell's actions in this case.  Therefore, the fact that Global Accents and Couture had

16   defaulted on their contractual obligations prior to Defendant Birdwell's actions is immaterial to

17   WMCV's claim for intentional interference with contractual relations.

18        As Defendant Birdwell fails to raise a genuine dispute of material fact, the Court will

19   grant the Motion for Summary Judgment as to WMCV's claim for intentional interference with

20   contractual relations.

21              *4.    Damages*

22        In support of its calculation of damages, WMCV has submitted a declaration by its

23   corporate controller, Barrett Seitz, stating that it was owed $360,831.00 pursuant to Global

24   Accents' lease and $695,500.32 pursuant to Couture's lease following the defaults. (Seitz Decl.

25   2:4-6, Ex. 1 to Mot. for Summ. J., ECF No. 292-1).  Additionally, Mr. Seitz declared that

1  WMCV was unable to mitigate these damages by leasing the spaces designated for Global

2  Accents and Couture after the defaults. (*Id.* at 2:6-7).  WMCV concedes that it entered a

3  settlement with Couture in this matter under which it will receive payment of $150,000, which

4  must be subtracted from its total damages. (Settlement Agmt. at 1, Ex. 8 to Mot. for Summ. J.,

5  ECF No. 292-1).  In his Response, Defendant Birdwell does not dispute the calculation of

6  damages put forward by WMCV.  Accordingly, the Court finds that WMCV was damaged in

7  the amount of $906,331.32.

8      Therefore, for the reasons stated *supra*, the Court will deny WMCV's Motion for

9  Summary Judgment as it relates to the civil conspiracy claim but grant the Motion as it relates

10  to the conversion and intentional interference with contractual relations claims.  Additionally,

11  the Court finds that an award of $906,331.32 in favor of WMCV is warranted.

12  **III.**   **MOTION FOR DEFAULT JUDGMENT (ECF NO. 291)**

13      **A.**   **Legal Standard**

14      The process for entering a default judgment is provided by Rule 55 of the Federal Rules

15  of Civil Procedure, which permits a court to "conduct hearings or make referrals . . . when, to

16  enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount

17  of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other

18  matter." Fed. R. Civ. P. 55(b)(2).

19      As a general rule, "default judgments are ordinarily disfavored," and "[c]ases should be

20  decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470,

21  1472 (9th Cir. 1986).  "Factors which may be considered by courts in exercising discretion as

22  to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the

23  merits of plaintiff's claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in

24  the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

25  due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

1  Procedure favoring decisions on the merits." *Id*. at 1471-72.

2      "The general rule of law is that upon default the factual allegations of the complaint,

3  except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v.*

4  *Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (internal quotation marks omitted).

5  "However, a defendant is not held to admit facts that are not well-pleaded or to admit

6  conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (internal

7  quotation marks omitted).

8      **B.    Discussion**

9      In assessing WMCV's Motion for Default Judgment against Defendant Turner, the

10  Court will consider each of the *Eitel* factors in turn.

11      *1.    Possibility of Prejudice*

12      The first factor weighs in favor of granting the Motion.  Default was entered against

13  Defendant Turner on November 7, 2012, (ECF No. 148), and Defendant Turner has since made

14  no attempt to file an answer or otherwise appear in this case.  WMCV will certainly suffer

15  prejudice if the Motion is not granted, as it likely has no other recourse for recovery for its

16  claims against Defendant Turner. *See PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d

17  1172, 1177 (C.D. Cal. 2002).  Therefore, the possibility of prejudice to WMCV weighs in favor

18  of default judgment.

19      *2.    Sufficiency of the Complaint and Merits of Plaintiff's Claims*

20      As explained *supra*, WMCV has provided an abundance of evidence to support its

21  claims for relief, and is entitled to summary judgment as to its claims against Defendant

22  Birdwell.  WMCV's evidence shows that Defendants Shushok, Birdwell, and Turner converted

23  WMCV's property and interfered with its contractual relations.  Accordingly, the Court finds

24  that the merits of WMCV's claims weigh in favor of default judgment.

25  ///

*3.    The Sum of Money at Stake*

In regard to this factor, the Court considers "the amount of money at stake in relation to the seriousness of [the defendant's] conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).  WMCV seeks to hold Defendant Turner jointly and severally liable for the $906,331.32 it was rendered unable to collect from Global Accents and Couture due to Turner's alleged wrongful acts.  While this is a large sum, the evidence on the record indicates that Defendant Turner was or should have been aware of the full amounts due under the lease agreements, and therefore he likely performed his acts with full knowledge of the financial harm that would be imposed upon WMCV. *See, e.g.*, (Birdwell Deposition 22:20-23:19, 32:23-33:1) (testifying that WMCV communicated the full amounts due under defaulting tenants' leases to support Shushok's debt-collection efforts).  Accordingly, the Court finds that the amount of money at stake, in light of Defendant Turner's conduct, weighs in favor of default judgment.

*4.    The Possibility of Dispute Concerning Material Facts*

Despite the fact that over twenty-seven months have passed, Defendant Turner has made no attempt to appear in this matter or dispute WMCV's allegations since default was entered against him.  Moreover, even after reviewing the evidence on the record, the Court can identify no genuine dispute of material fact as to WMCV's claims for conversion and intentional interference with contractual relations against Defendant Turner.  Therefore, no material factual disputes exist in this case, and this factor weighs in favor of default judgment. *Vogel*, 992 F. Supp. 2d at 1013.

*5.    Possibility of Excusable Neglect*

The Court finds that there is no indication that Defendant Turner's failure to appear in this matter is a result of excusable neglect.  Defendant Turner previously filed an Answer to WMCV's Amended Complaint, (ECF No. 40), which was later stricken due to his repeated

1 | failures to appear, (ECF No. 146).  Therefore, it is apparent from the record that Defendant

2 | Turner has been made aware that this action is pending against him, yet Defendant Turner has

3 | not made any filings or appearances in this case since January 14, 2011.  As Defendant Turner

4 | has not made any attempt to participate in this action for over four years, the Court finds that

5 | this factor weighs in favor of default judgment.

6 |           *6.    Policy Favoring Decisions on the Merits*

7 |      "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782

8 | F.2d at 1472.  "Although default judgment is disfavored, a decision on the merits is impractical,

9 | if not impossible, when [a] defendant takes no part in the action." *Moroccanoil, Inc. v. Allstate*

10 | *Beauty Products, Inc.*, 847 F. Supp. 2d 1197, 1203 (C.D. Cal. 2012).  Therefore, this factor

11 | weighs minimally against default judgment.

12 |      As six of the *Eitel* factors weigh in favor of default judgment, the Court will grant

13 | WMCV's Motion and order that default judgment be entered against Defendant Turner, who

14 | will be held jointly and severally liable with Defendants Shushok and Birdwell in the amount of

15 | $906,331.32.

16 | **IV.  CONCLUSION**

17 |      **IT IS HEREBY ORDERED** that the Motion for Summary Judgment, (ECF No. 292),

18 | is **GRANTED IN PART AND DENIED IN PART, pursuant to the foregoing**.

19 |      **IT IS FURTHER ORDERED** that the Motion for Default Judgment, (ECF No. 291), is

20 | **GRANTED**.

21 |      **IT IS FURTHER ORDERED** that judgment be entered in the amount of $906,331.32

22 | in favor of Plaintiff WMCV Phase 3, LLC and against Defendants Richard Birdwell, Shushok

23 | & McCoy, Inc., and Matt Turner, jointly and severally.

24 |      **DATED** this 2nd day of March, 2015.

25 |

Gloria M. Navarro, Chief Judge
United States District Court